UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>   Plaintiff,<br><br>   v.<br><br>GEISINGER HEALTH, GEISINGER HEALTH SYSTEM FOUNDATION d/b/a GEISINGER HEALTH SYSTEM, GEISINGER WYOMING VALLEY MEDICAL CENTER, GEISINGER CLINIC, GEISINGER HEALTH PLAN, GEISINGER MEDICAL CENTER, and GEISINGER HOLY SPIRIT HOSPITAL,<br><br>   Defendants. | CIVIL ACTION NO. 21-4294<br><br>COMPLAINT<br><br>JURY TRIAL DEMAND |

NATURE OF THE ACTION

This is an action under Title I and Title V of the Americans with Disabilities Act of 1990, as amended (ADA), and Title I of the Civil Rights Act of 1991, to correct violations of the ADA and to provide appropriate relief to a class of aggrieved former and current employees, including but not limited to charging party Rosemary Casterline, whose rights secured by the ADA were violated by Geisinger Health, Geisinger Health System Foundation d/b/a Geisinger Health System, and/or the other named Defendants ("Geisinger").

As alleged with greater particularity below, Geisinger violated §12112(a) and (b) of the ADA when it discriminated against aggrieved persons in the class on the basis of disability in regard to hiring, discharge, and other terms and conditions and privileges of employment; by limiting employees in a way that adversely affects their opportunities or status because of disability; and by failing to make reasonable accommodations and denying employment

1

opportunities to employees based on the need to make reasonable accommodations. Further, Geisinger violated §12203(a) of the ADA when it subjected aggrieved persons in the class to unlawful retaliation and violated §12203(b) when it engaged in unlawful interference.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3) and 2000e-6, and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I and Title V of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and 2000e-6.

4. At all relevant times, Defendant, Geisinger Health, has been incorporated in Pennsylvania and has continuously been doing business in the State of Pennsylvania, including in the City of Langhorne and in the City of Wilkes-Barre, and has continuously had at least 15 employees.

5. At all relevant times, Defendant, Geisinger Health System Foundation d/b/a Geisinger Health System ("Geisinger Health System"), has been incorporated in Pennsylvania and has continuously been doing business in the State of Pennsylvania and the City of Wilkes-Barre, and has continuously had at least 15 employees.

6. At all relevant times, Defendant, Geisinger Wyoming Valley Medical Center, has been incorporated in Pennsylvania and has continuously been doing business in the State of Pennsylvania and the City of Wilkes-Barre, and has continuously had at least 15 employees.

7. At all relevant times, Defendant, Geisinger Clinic, has been incorporated in Pennsylvania and has continuously been doing business in the State of Pennsylvania and the City of Mountain Top, and has continuously had at least 15 employees.

8. At all relevant times, Defendant, Geisinger Health Plan, has been incorporated in Pennsylvania and has continuously been doing business in the State of Pennsylvania and the City of Danville, and has continuously had at least 15 employees.

9. At all relevant times, Defendant, Geisinger Medical Center, has been incorporated in Pennsylvania and has continuously been doing business in the State of Pennsylvania and the City of Danville, and has continuously had at least 15 employees.

10. "Geisinger Holy Spirit Hospital" refers to an entity formerly known as Holy Spirit Hospital of the Sisters of Christian Charity, Inc. d/b/a Geisinger Holy Spirit Hospital, from which EEOC seeks relief in this action for the period during which it operated as an integrated enterprise or single employer with Geisinger Health/Geisinger Health System, was under the control, supervision, coordination, or corporate parentage of Geisinger Health/Geisinger Health System, or otherwise subjected persons working for it to the Geisinger Health/Geisinger Health

System policies and unlawful employment practices described herein.[1]

11. At all relevant times, Defendant, Geisinger Holy Spirit Hospital, has been incorporated in Pennsylvania and has continuously been doing business in the State of Pennsylvania and the City of Camp Hill, and has continuously had at least 15 employees.

12. At all relevant times, Defendants have continuously been employers engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

13. At all relevant times, Defendants have been covered entities under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

14. At all relevant times, Geisinger Health/Geisinger Health System has coordinated, supervised, and controlled the activities of its affiliates, subsidiaries, and entities, concerning various employment matters such as granting or denying accommodations like medical leave, hiring, rehiring, termination, and requiring those entities and persons employed or seeking employment at their worksites to comply with Geisinger Health/Geisinger Health System employment policies including the policies identified herein.

15. At all relevant times, Geisinger Health/Geisinger Health System and its affiliates, subsidiaries, and entities, including but not limited to the other named Defendants, have operated in such a manner as to constitute an integrated enterprise or a single employer.

ADMINISTRATIVE PROCEDURES

16. More than thirty days prior to the institution of this lawsuit, Rosemary Casterline filed a charge with the Commission alleging that her employer discriminated against her in violation of the ADA.

---

[1] Upon information and belief, Holy Spirit Hospital of the Sisters of Christian Charity, Inc. is now known as Penn State Health Holy Spirit Medical Center.

17. On February 12, 2021, the Commission issued to Defendants a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

18. On June 1, 2021, the Commission issued to Defendants a Notice of Failure of Conciliation advising Defendants that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

19. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

20. Since at least January 1, 2018, Defendants violated Title I of the ADA, 42 U.S.C. §12112(a) and (b), when they discriminated against a class of aggrieved former and current employees and Casterline on the basis of disability in regard to hiring, discharge, and other terms and conditions and privileges of employment; by limiting employees in a way that adversely affects their opportunities or status because of disability; and by failing to make reasonable accommodations and denying employment opportunities to employees based on the need to make reasonable accommodations.

(a) EEOC seeks relief for violations of §12112(a) and (b) for a class of aggrieved persons who are current and former employees and who were subjected to the violations identified in the Complaint and are qualified individuals with a physical or mental impairment that substantially limits one or more major life activities; and/or have a record of such an impairment. The class includes Casterline who has an impairment, including recurring rotator cuff injuries and complications/impairments flowing from such injuries, that substantially limits major life activities, and/or has a record of such

impairments.

(b) Geisinger Health/Geisinger Health System has at all relevant times been a corporate parent to, and has coordinated and supervised the activities of, all Geisinger Health/Geisinger Health System affiliates, subsidiaries, and entities, including but not limited to Defendants Geisinger Wyoming Valley Medical Center, Geisinger Clinic, Geisinger Heath Plan, Geisinger Medical Center, and Geisinger Holy Spirit Hospital.

(c) Geisinger Health/Geisinger Health System maintained, and continues to maintain, employment policies that apply to its subsidiary corporate entities, which include or have included but are not limited to Defendants Geisinger Wyoming Valley Medical Center, Geisinger Clinic, Geisinger Heath Plan, Geisinger Medical Center, and Geisinger Holy Spirit Hospital; such policies governed all such Geisinger entities or facilities and persons working at those entities or facilities, including the class of aggrieved persons described herein and Casterline.

(d) Pursuant to the policies described above, ADA-covered employees must apply and compete for employment opportunities including reassignment, even where such opportunities constitute a reasonable accommodation.

(e) Pursuant to the policies described above, ADA-covered employees for whom an employment opportunity or reassignment would be a reasonable accommodation are fired unless Defendants conclude they are the "most qualified" person for an opportunity.

(f) Even if an employment opportunity exists for which an ADA-covered employee is qualified, and hiring or reassigning that employee to the position would constitute a reasonable accommodation, Defendants will not hire or reassign the

employee, or otherwise permit them to remain employed with Defendants, unless Defendants conclude that they are the "most qualified" person for the opportunity.

(g) Defendants provide misleading information and/or misrepresent and/or manipulate employment opportunities, interfere with the enjoyment or exercise of rights secured under the ADA, prevent persons from obtaining accommodations, and/or retaliate against persons for having exercised their rights, by manipulating or removing postings, altering or misrepresenting information about vacancies, changing departmental availability, selecting persons for vacancies on an expedited basis so as to deprive an ADA-covered person or a person who has engaged in protected activity from obtaining an employment opportunity, and otherwise reducing or eliminating employment opportunities for those whose rights are protected by the ADA.

(h) Defendants create and maintain records that associate negative tags or references, such as "litigation hold," with persons who have engaged in protected activity and/or those who have exercised their rights under the ADA such as seeking a reasonable accommodation or putting Defendants on notice that they may need to provide such an accommodation.  Such records are available to Defendants' personnel including persons who may be involved in the process of selecting persons for employment opportunities and accommodations, including reassignment.

(i) A class of aggrieved persons and Casterline were adversely affected by Defendants' policies and conduct, as described above.

(j) Casterline worked at Geisinger Wyoming Valley Medical Center as a Registered Nurse (RN) for more than 30 years.  Casterline was an excellent employee and had a variety of experience in different capacities and departments.

(k)     In October 2018, Casterline told Defendants that she had suffered a rotator cuff injury that required reverse shoulder replacement surgery and she took approved medical leave with an approximate return date of December 25, 2018.

(l)     In December 2018, Casterline suffered complications regarding her medical condition for which an additional four weeks of recovery time was needed. Accordingly, Casterline sought such leave consistent with her medical limitations.

(m)     In January 2019, shortly before Casterline was expected to return from leave, Defendants posted Casterline's position as vacant and available. On January 28, 2019, Casterline was cleared to return to work. Although Defendants were notified that Casterline was cleared to return to work they did not allow her to return to her position. Instead, Defendants told Casterline that if she wanted to continue working for Defendants she would have to apply for her own job.

(n)     Casterline engaged in protected activity, in part, by requesting accommodations or otherwise putting Defendants on notice that it may have to provide reasonable accommodations.

(o)     Defendants were on notice that Casterline was ready to return to work and that she would, in compliance with their directives, "apply" to remain employed with Defendants in her own position. However, when Casterline accessed Defendants' website to apply for her position, she discovered that Defendants had removed the posting. When Casterline asked Defendants about the change and her status, they told her that management decided to remove the posting for her job and would not reopen it or otherwise permit her to return to her position.

(p)     Defendants told Casterline that she would have to apply and compete for

8

another position and succeed in obtaining one within a limited period or be fired. Casterline applied for numerous positions but Defendants refused to hire, rehire, or reassign her, or otherwise comply with their obligations under the ADA.

(q)     Defendants advised Casterline in writing that she had not been selected for employment opportunities and purported to assert the reason for their action. However, nowhere in the written notification did Defendants say that Casterline was unqualified for any of the positions, that she was not the "most qualified" candidate, or even that Defendants had considered her for any position; instead, Defendants told Casterline that they were "moving on to consider other candidates. . . ."

(r)     On or about March 28, 2019, Defendants fired Casterline.

(s)     Defendants contend that Casterline was fired because she was not the "most qualified" person for an opportunity within a limited period.

(t)     The above facts, among others, demonstrate that Defendants discriminated against Casterline on the basis of disability when they failed to reassign Casterline or otherwise permit her to remain employed, failed to hire/rehire her for any employment opportunity or reassign her, deprived her of terms and conditions and privileges of employment such as the opportunity to return to her own vacant position, limited her opportunities to seek or obtain accommodations including reassignment such as manipulating her job posting to prevent Casterline from "applying" for her own job, failed to provide her with reasonable accommodations including leave combined with an opportunity to return to work with or without a reasonable accommodation, failed to interact with her about or provide her with other accommodations which, alone or in combination, were reasonable and would have facilitated her return to work, and denied

her employment opportunities based on the actual or perceived need to make reasonable accommodations.

(u) Defendants treated a class of aggrieved persons similarly to Casterline, as alleged above, by discriminating against them on the basis of disability in regard to hiring, discharge, and other terms and conditions and privileges of employment, including issuing performance improvement plans, deficiency notices, disciplinary action, and performance reprimands; by limiting them in a way that adversely affects their opportunities or status because of disability, such as compelling compliance with the "most qualified" policy; and by failing to make reasonable accommodations and denying employment opportunities to them based on the need to make reasonable accommodations, such as refusing to reassign/hire/rehire because of the actual or perceived potential for accommodation requests.

21. Since at least January 1, 2018, Defendants violated Title V of the ADA, 42 U.S.C. §12203(a), when they retaliated against persons who opposed any act or practice made unlawful by the ADA or because such person made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA.

(a) The class of aggrieved persons for whom EEOC seeks relief for violations of 42 U.S.C. §12203(a) are current and former employees who engaged in protected activity and were subjected to retaliation, as described herein.

(b) As if fully set forth in Paragraph 21, EEOC reasserts the allegations in Paragraphs 1-19 and 20(b) through (u).

(c) The above facts, among others, demonstrate that Defendants retaliated against Casterline because she engaged in protected activity as described in Paragraph

20(n).

  (d) Defendants treated a class of aggrieved persons similarly to Casterline, as alleged above, by retaliating against them.  The protected activities engaged in by a class of aggrieved persons include but are not limited to: opposing or complaining about/expressing disagreement with Defendants' conduct or policies described above; filing charges of discrimination or engaging in protected pre-filing communication with the EEOC; requesting or otherwise putting Defendants on notice that it may have to provide reasonable accommodations; and opposing or complaining internally about discrimination.

  (e) Defendants' unlawful retaliation against Casterline and the class of aggrieved persons included but was not limited to: failure to reassign, hire, rehire, or otherwise permit persons to retain or obtain employment opportunities; discharge; manipulating postings, misrepresenting or changing availability or vacancy status, or otherwise interfering with the process for retaining employment or "applying" for employment, as asserted in Paragraphs 20(g) an (h); and denying equal/favorable terms and conditions and privileges of employment, including issuing performance improvement plans, deficiency notices, disciplinary action, and performance reprimands.

22. Since at least January 1, 2018, Defendants violated Title V of the ADA, 42 U.S.C. §12203(b), when they interfered with any individual in the exercise or enjoyment of, or on account of their exercise or enjoyment of, any right granted or protected by the ADA.

  (a) The class of aggrieved persons for whom EEOC seeks relief for violations of 42 U.S.C. §12203(b) are current and former employees who were subjected to unlawful interference, as described herein.

(b) As if fully set forth in Paragraph 22, EEOC reasserts the allegations in Paragraphs 1-19 and 20(b) through (s).

(c) The above facts, among others, demonstrate that Defendants engaged in unlawful interference by: refusing to allow Casterline to return to her position, or any other position with Defendants, unless she "applied" and was the "most qualified" for an employment opportunity; compelling Casterline be the "most qualified" candidate for an employment opportunity within a limited period or be fired; and interfering with Casterline's efforts to apply for her own position by manipulating, misrepresenting, or interfering with her application process and the posting/filling of her position.

(d) Defendant treated a class of aggrieved persons similarly to Casterline, as alleged above and, more specifically, in Paragraphs 20(b) through (h), by engaging in unlawful interference.

23. The effect of the practices complained of above has been to deprive Casterline and the aggrieved class of current and former employees of equal employment opportunities and otherwise adversely affect their status as an employee, because of their disabilities and protected activity.

24. The unlawful employment practices complained of above were and are intentional.

25. The unlawful employment practices complained of above were and are done with malice or with reckless indifference to the federally protected rights of Casterline and the aggrieved class of current and former employees harmed by Defendants' unlawful policies and practices.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from: maintaining the policies described above which deprive rights secured by the ADA; compelling ADA-covered individuals to apply and compete for employment opportunities including reassignment, requiring them to be the "most qualified" person to retain or obtain employment opportunities, and firing them for allegedly failing to do so; failing to provide reasonable accommodations, including leave, reassignment, and/or other accommodations whether alone or in combination; operating without effective mechanisms that require managers and human resources personnel to engage in a good-faith interactive process to identify the need, if any, for accommodations; operating without effective training, monitoring, and incentives to ensure compliance with the ADA; engaging in practices which dissuade, deter, or chill persons from enjoying or exercising rights secured by the ADA or which punish or retaliate against them for doing so; refusing to reassign, hire, rehire, or otherwise permit ADA-covered individuals from remaining employed with Defendants or obtaining employment opportunities; firing employees on the basis of disability; discriminating, retaliating, and engaging in unlawful interference as described above.

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of their past and present unlawful employment practices.

C. Order Defendants to make whole Casterline and the aggrieved class harmed by Defendants' unlawful policies and practices, by providing appropriate backpay with prejudgment

interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to providing reasonable accommodations, reinstatement, and/or front pay.

D. Order Defendants to make whole Casterline and the aggrieved class harmed by Defendants' discriminatory unlawful employment practices by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

E. Order Defendants to make whole Casterline and the aggrieved class harmed by Defendants' unlawful policies and practices by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above in amounts to be determined at trial.

F. Order Defendants to pay Casterline and the aggrieved class harmed by Defendants' unlawful policies and practices punitive damages for their malicious and reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington, D.C.

GWENDOLYN Y. REAMS
Acting General Counsel

s/ Debra M. Lawrence
DEBRA M. LAWRENCE
Regional Attorney
Philadelphia District Office

s/ Kate Northrup
KATE NORTHRUP
Supervisory Trial Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Baltimore Field Office
GH Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
kate.northrup@eeoc.gov
Phone: 410-801-6702

s/ Jessi Isenhart
JESSI ISENHART (PA Bar No. 206504)
Senior Trial Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Cleveland Field Office
1240 E. 9th Street, Suite 3001
Cleveland, OH 44199
jessi.isenhart@eeoc.gov
Phone: 216-306-1121

s/ Sabrina Brown
SABRINA BROWN
Trial Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Cleveland Field Office
1240 E. 9th Street, Suite 3001
Cleveland, OH 44199
sabrina.brown@eeoc.gov
Phone: 216-306-1116

