**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | : |
| | : |
| | :   CIVIL ACTION NO. 2:21-cv-4294 |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| GEISINGER HEALTH, ET AL | : |
| | : |
| Defendants. | : |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY PC

*/s/ Anthony (T.J.) Andrisano*
Anthony (T.J.) Andrisano (PA 201231)
Jacob Sulzer (PA 313089)
409 N. Second Street, Suite 500
Harrisburg, PA 17101
anthony.andrisano@bipc.com
jacob.sulzer@bipc.com


Melissa Murphy Weber (PA 76959)
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
melissa.weber@bipc.com

*Counsel for Defendants*


Dated: March 8, 2022

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................... 1

II.  FACTUAL ALLEGATIONS ................................................................................ 3

III.  LEGAL ARGUMENT ........................................................................................ 6

  A.  Standard of Review ..................................................................................... 6

  B.  The EEOC's Complaint At Its Core Is An Attack On A Lawful Policy ............................. 7

  C.  The EEOC Has Failed To Sufficiently Plead A Plausible Pattern-Or-Practice Claim Under Either §706 Or §707 ................................................................ 11

    1.  Overview of §706 and 707 ..................................................................... 11

    2.  The EEOC Failed to Satisfy Its Pre-Suit Obligations ................................. 12

      a.  The EEOC Did Not Investigate The Pattern and Practice Claims Alleged in the Complaint ................................................................ 13

      b.  The Allegations in the Complaint Exceed the Scope of the ALOD ........................... 16

        i.  The ALOD Is Directed Only to GWVMC and GH ............................... 17

        ii.  The ALOD Is Limited to the MQA Policy ........................................ 19

        iii.  The ALOD Does Not Make Any Findings as to Retaliation or Interference ......... 20

    3.  The EEOC's Complaint Does Not Identify the Class of Aggrieved Current or Former Employees ................................................................ 20

  D.  The EEOC Has Failed To Plead A Plausible Claim Under Title I Of The ADA. .............. 23

  E.  The EEOC Has Failed To Plead Plausible Claims of Retaliation or Interference Under Title V of the ADA. ................................................................ 25

    1.  There are Insufficient Factual Allegations To Render an ADA Retaliation Claim Plausible on its Face ................................................................ 26

    2.  There are Insufficient Factual Allegations To Render an ADA Interference Claim Plausible on its Face ................................................................ 27

  F.  The EEOC's Claims on Behalf of Aggrieved Individuals Based on Activity Prior to March 26, 2019 are Time-Barred as a Matter of Law ............................. 29

IV.   CONCLUSION ................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Local 496, Laborers' Int'l Union of North Am.*, 177 F.3d 394 (6th Cir. 1999) ...... 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 6

*Bennett v. Calabrian Chemicals Corp.* 324 F.Supp.2d 815 (E.D. Tx. 2004) *aff'd* 126 Fed. Appx.171 (5th Circ. 2005) .......................................................................................... 23

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) ............................................... 6

*EEOC v. Allegheny Airlines*, 436 F. Supp. 1300 (W.D. Pa. 1977) .......................................... 13

*EEOC v. Bass Pro Outdoor World, LLC*, 884 F. Supp.2d 499 (S.D. TX 2012) .......................... 17

*EEOC v. Bloomberg L.P.*, 967 F.Supp.2d 802 (S.D. N.Y. 2013) .................................. 15, 16, 20

*EEOC v. CRST Van Expedited*, 2009 WL 2524402 (N.D. Iowa Aug. 13, 2009) ........................ 15

*EEOC v. CRST Van Expedited*, 679 F.3d 657 (8th Cir. 2012) .............................................. 14

*EEOC v. Delight Wholesale Co.*, 973 F.2d 664 (8th Cir. 1992) ............................................ 16

*EEOC v. Dillard's Inc.,* 2011 WL 2784516 (S.D. Cal. 2011) ................................................ 15

*EEOC v. FAPS, Inc.*, 2014 WL 4798802 (D. N.J. Sept. 26, 2014) .......................................... 29

*EEOC v. Fed. Reserve Bank*, 84 F.R.D. 337 (W.D. Tenn. 1979) ............................................ 21

*EEOC v. Freeman*, 2010 WL 1728847 (D. Md. Apr. 27, 2010) .............................................. 30

*EEOC v. International Profit Associates, Inc.*, 2007 WL 844555 (N.D. Ill. 2007) ............... 11, 12

*EEOC v. JBS USA, LLC*, 2015 WL 4506709 (D. Nev. 2015) ................................................. 12

*EEOC v. Jillian's of Indianapolis, IN, Inc.*, 279 F.Supp.2d 974 (S.D. Ind. 2003) ................. 14, 15

*EEOC v. Mitsubishi Motor,* 990 F.Supp. 1059 (C.D. Ill. 1998) ............................................ 12

*EEOC v. Prestige Care, Inc.*, 2018 WL 3473964 (E.D. Ca. 2018) ...................................... 23, 25

*EEOC v. Ruby Tuesday, Inc.*, 919 F.Supp.2d 587 (W.D. Pa. 2013) ......................................... 6

*EEOC v. Sara Lee Corp.*, 237 F.3d 349 (4th Cir. 2001) ....................................................... 8

*EEOC v. Scolari Warehouse Markets, Inc.*, 488 F.Supp.2d 1117 (D. Nev. 2007) ..................... 12

*EEOC v. Sears, Roebuck and Co.*, 650 F.2d 14 (2nd Cir. 1981) ................................................. 16

*EEOC v. St. Joseph's Hospital, Inc.*, 842 F.3d 1333 (11th Cir., 2016) ......................................... 9

*EEOC v. Sterling Jewelers Inc.*, 801 F.3d 96 (2d Cir. 2015) ...................................................... 14

*EEOC v. Target Corp.*, No. 02–C–146, 2007 WL 146128 (E.D.Wis. May 16, 2007) ................ 15

*EEOC v. United Parcel Service, Inc.*, 2013 WL 140604 (N.D. Ill. 2013) ................. 14, 21, 22, 23

*EEOC v. United States Steel Corp.*, 2012 U.S. Dist. LEXIS 101872, 2012 WL 3017869 (W.D. Pa. 2012) ...................................................................................................................... 11, 21, 29

*EEOC v. United States Steel Corporation*, 2013 WL 625315 (W.D. Pa. 2013) ............... 13, 14, 15

*Elledge v. Lowe's Home Centers*, 979 F.3d 1004 (4th Cir. 2020) .............................................. 2, 9

*Frakes v. Peoria School District No. 150*, 872 F.3d 545 (7th Cir. 2017) .................................... 28

*Hibbard v. Penn-Trafford School Dist.* 2014 WL 640253 (W.D. Pa 2014) ................................ 26

*Hills v. Borough of Colwyn*, 978 F. Supp. 2d 469 (E.D. Pa. 2013) ............................................. 18

*Hohider v. United Parcel Service, Inc.*, 574 F.3d 169 (3d Cir. 2009) ......................................... 24

*Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480 (8th Cir. 2007) ..................................................... 9

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ..................................... 7

*International Brotherhood of Teamsters v. United States* 431 U.S. 324 (1977) ......................... 12

*James v. City of Wilkes–Barre*, 700 F.3d 675 (3d Cir. 2012) ........................................................ 6

*Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012) ......................................................... 6

*Lincoln v. BNSF Railway Co.*, 900 F.3d 1166 (10th Cir., 2018) ................................................... 9

*Mach Mining, LLC v. EEOC*, 575 U.S. 480 135 S.Ct. 1645, 191 L.Ed.2d 607 (2015) .... 12, 13, 14

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) .............. 7

*Ramage v. Rescot Systems Group, Inc.*, 834 F.Supp.2d 309 (E.D. Pa. 2011) ............................ 23

*Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777 (W.D. Pa. 2000), *aff'd*, 276 F.3d 579 (3d Cir. 2001) ................................................................................................................................................ 7

*Schafer v. Board of Public Educ.*, 903 F.2d 243 (3d Cir.1990) ................................................... 18

*Stull v. Leedsworld*, 2018 WL 576241 (W.D. Pa. Jan. 26, 2018) ................................................. 7

*Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296 (3d Cir. 1999)....................................................... 24

*Tolliver v. Delmarva Foundation for Medical Care*, 2020 WL 4335521 (D. Del. 2020) ............ 26

*Tyson v. Access Services*, 158 F.Supp.3d 309 (E.D. Pa. 2016)...................................................... 26

**Statutes**

42 U.S.C. § 2000e-5(b), (f)(1) ...................................................................................................... 12

42 U.S.C. §12203(b) ..................................................................................................................... 28

***\*Unpublished opinions are attached hereto as Exhibit 8.***

Defendants, Geisinger Health ("GH"), Geisinger Health System Foundation D/B/A Geisinger Health System,[1] Geisinger Wyoming Valley Medical Center ("GWVMC"), Geisinger Clinic, Geisinger Health Plan, Geisinger Medical Center, and Geisinger Holy Spirit Hospital (collectively "Geisinger" or "Defendants"), by and through their undersigned counsel, herein file this Brief in Support of their Motion to Dismiss the Complaint of Plaintiff, Equal Employment Opportunity Commission's ("EEOC"), pursuant to Fed.R.Civ.P. 12(b)(6).

## I.    INTRODUCTION

A cursory review of the EEOC's Complaint illustrates three salient points. First, the EEOC's Complaint is, at best, a deliberately designed attack of Geisinger's nondiscriminatory Most Qualified Applicant Policy ("MQA Policy"). Second, to the extent the EEOC is attempting to raise claims beyond Geisinger's MQA Policy, the EEOC has failed to comply with the most EEOC-deferential administrative requirements regarding its pre-suit obligations, ranging from the EEOC's right to exercise broad investigative powers to its duty to confine the claims advanced in a lawsuit to those that were investigated and included in its reasonable cause determination. Third, the first two points emphasize that the EEOC's Complaint fails to satisfy the most basic and rudimentary pleading requirements.

The Complaint is essentially a 55-paragraph recitation of legal conclusions and conclusory statements cloaked under the expansive mantle of the Americans with Disabilities Act ("ADA").[2] Since the inception of the administrative action, this matter has been part of the EEOC's campaign

---

[1] There are no legal entities registered with the Commonwealth of Pennsylvania named "Geisinger Health System Foundation," "Geisinger Health System Foundation D/B/A Geisinger Health System," or "Geisinger Health System."

[2] The EEOC's Complaint is set out in 25 numbered paragraphs, but paragraph 20 includes sub-paragraphs labeled (a)–(u), paragraph 21 includes sub-paragraphs labeled (a)–(e), and paragraph 22 includes sub-paragraphs labeled (a)–(d).

to obtain a favorable appellate decision affirming the EEOC's long-standing, but legally unsupported stance that most qualified applicant policies violate the ADA. Understanding this is a losing battle[3] – especially against a health system responsible for providing patient care – the EEOC is now attempting to eclipse its criticisms of Geisinger's facially non-discriminatory MQA Policy by interpreting its Complaint to allege various ADA theories of discriminatory actions. In this regard, the EEOC elected to draft its Complaint without separately pled claims – titled "Count" or "Cause of Action" as is common pleading parlance. Instead, the EEOC opted to plead a nebulous "Statement of Claims" that fails to provide the requisite notice of the actual legal claims charged against Geisinger. This tactic is the EEOC's manufactured ploy to plead the kitchen sink of ADA claims to engage in a fishing expedition designed to cast a far-reaching net under the guise of exercising its discretionary authority. Geisinger is placed at a distinct and unfair disadvantage of being unable to actually prepare a defense, especially when the alleged claims go well beyond the issues involved in the administrative action.

Truly, the Complaint evidences the EEOC's brazen belief that it can commence an enforcement action that goes well beyond its administrative investigation and purported findings by merely pleading ill-defined baseless suspicions in complete derision of its statutory duty and the fundamental tenets of *Twombly/Iqbal*. Fortunately, there are limits to the EEOC's enforcement authority, and the EEOC is required to comply with traditional pleading requirements. Accordingly, for the reasons set forth herein, this Honorable Court must dismiss the Complaint.

---

[3] As outlined *infra*, appellate courts across the country have repeatedly upheld the most qualified applicant policies challenged by the EEOC, most recently in November of 2020, in *Elledge v. Lowe's Home Centers*, 979 F.3d 1004 (4th Cir. 2020). Interestingly enough, a mere eight weeks after the Fourth Circuit denied the EEOC's request for reconsideration in *Elledge*, the EEOC issued its first Letter of Determination in this matter.

## II.    FACTUAL ALLEGATIONS[4]

On January 20, 2020, Rosemary Casterline filed a Charge of Discrimination with the EEOC alleging GWVMC, her employer, discriminated against her in violation of the ADA.  *See* Complaint ("Doc. 1") at ¶16 and Charge of Discrimination, attached hereto as **Exhibit 1** ("Casterline Charge").  Geisinger responded to the Charge on April 17, 2020.  On February 10, 2021, the EEOC granted Geisinger's request to submit additional evidence and information in response to the Casterline Charge.[5]  *See* Email by and between Attorney Andrisano and Mr. Johnson, attached hereto as **Exhibit 2.**  For unknown reasons, that same day, the EEOC issued its original Letter of Determination ("OLOD"), only identifying GWVMC as the Respondent, and finding "[t]he totality of the evidence supports the conclusion that [GWVMC] has **a policy or practice of requiring disabled employees to compete for vacancies for reassignment**."  *See* OLOD dated February 10, 2021, attached hereto as **Exhibit 3** (emphasis added).

A mere two days later and, thus, clearly without the benefit of any additional investigation, the EEOC issued an Amended Letter of Determination ("ALOD") that added, for the first time, "Geisinger Health/Geisinger Health System" as a Respondent.  The ALOD also baldly added a claim that Geisinger "subjected a class of aggrieved persons" to an "ongoing pattern or practice" of ADA discrimination by: (1) "failing to engage in the interactive process sufficiently to provide *reassignment*…"; (2) "failing to provide reasonable accommodations, including *reassignment*...";
and (3) "failing to accommodate persons in the consideration, selection, and/or hiring for work

---

[4] Geisinger accepts any well-pled allegations in the Complaint as true for purposes of this Motion to Dismiss, but does not waive its right to challenge the truth of the allegations asserted and/or to assert any and all applicable affirmative defenses when appropriate and if necessary.

[5] Geisinger expands on the administrative process described by the EEOC in its Complaint, as the entire process is a matter of public record and relevant to this Honorable Court's analysis of the EEOC's claims.  *See* Section III.A., *infra*, detailing the legal authority for the same.

*assignments, placements, and/or positions with Respondents*..."  *See* ALOD dated February 12, 2021, attached hereto as **Exhibit 4**.  Both the OLOD and the ALOD focused solely on Geisinger's MQA Policy wherein Geisinger does not **automatically** "reassign" an employee, such as Casterline who provides direct patient care, to any open position; it hires the most qualified person for all of its open positions.  **Exhibits 3 & 4**.

On February 19, 2021, Geisinger submitted the evidence and information in accordance with the February 10th agreement, but, due to the EEOC's action of prematurely issuing the OLOD and ALOD, Geisinger was forced to file its submission as a Motion for Reconsideration ("MFR").  *See* GWVMC's MFR, attached hereto as **Exhibit 5**.  In its MFR, Geisinger addressed in detail the EEOC taking issue with its MQA Policy, specifically as it applies to Geisinger's "Other Leaves of Absence" Policy ("Policy 04.231").[6]  **Exhibit 5, at Exhibit A**.

As detailed in the MFR, Policy 04.231 is a policy that provides employees with a greater benefit than required by law.  **Exhibit 5, at Exhibit A**.  It provides employees ineligible for FMLA leave – either because such leave has been exhausted or because they do not meet the eligibility requirements under the statute – with the ability to take "Non-FMLA Medical Leaves of Absence".  Specifically, when an employee requires medical leave and is ineligible for FMLA leave, Geisinger will engage in an interactive process with the employee in accordance with the ADA.  If it is determined, after the interactive process, that the employee cannot be provided with job-protected leave, rather than potentially terminate the employee for requesting an unreasonable or unduly burdensome amount of leave, Policy 04.231 provides the basis for the employee to be

---

[6] Significantly, until Geisinger submitted its MFR, Policy 04.231 had not been produced and, thus, was not part of the EEOC's investigation into the Casterline Charge prior to the EEOC issuing the OLOD and ALOD.

4

placed on medical leave for up to one (1) year.[7]  When the employee is able to return to work, the employee engages in the interactive process with Geisinger to identify an open position for which they are the most qualified applicant without losing seniority and/or certain benefits.  **Exhibit 5, at Exhibit A**.

The EEOC, continuing to take the position that the ADA requires a disabled employee to be **<u>automatically</u>** placed in **<u>any</u>** open position for which the employee meets the minimum basic qualifications – even if the employee has not performed any job responsibilities for up to one (1) year and there may be other more qualified applicants – issued a generalized denial of Geisinger's MFR on May 17, 2021.  *See* May 17, 2021 EEOC Correspondence, attached hereto as **Exhibit 6**. The EEOC did not issue a revised Letter of Determination.

As argued in the MFR, the EEOC's position initially ignores the interactive process engaged in with the employee and which, if the parties had not reached such a reasonable accommodation, could have resulted in the termination of the employee.  **Exhibit 5**.  Even more troubling, however, is the EEOC's position that the ADA is an affirmative action statute and, as a result, Geisinger – responsible for the well-being and even the lives of patients – is not permitted to hire the most qualified candidate to provide patient care.  Instead, Geisinger must ignore those most qualified to provide patient care in favor of less qualified applicants.  **Exhibit 5**.

On June 1, 2021, the EEOC issued a Notice of Failure of Conciliation referring back to the same proposed Conciliation the EEOC presented when it issued the OLOD.  Doc. 1 at ¶18.

---

[7] The employee remains an "internal" candidate, which provides the employee with preferential treatment over external candidates with the same qualifications. **Exhibit 5, at Exhibit B**.

## III.  LEGAL ARGUMENT

### A.  Standard of Review

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of the pleading.  To survive, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In the context of an enforcement action, as is the matter here, the "EEOC is specifically cautioned that what it must plead is not a matter within *its* unilateral determination and it acts at its peril if it elects to apply only a very narrow interpretation of the scope of the plausible factual predicate that it must plead." *EEOC v. Ruby Tuesday, Inc.*, 919 F.Supp.2d 587, 593 (W.D. Pa. 2013)(emphasis in original) ("the level of plausible factual predicate notably rises" in the more complex and fact intensive cases") (citations and quotations omitted).

While courts are required to accept all well-pleaded factual allegations as true, "merely conclusory" allegations "are not entitled to the presumption of truth." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 n.2 (3d Cir. 2016); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *James v. City of Wilkes–Barre*, 700 F.3d 675, 679 (3d Cir. 2012) ("[W]e disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements."). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quotations omitted).

As a general rule, a district court may not consider matters outside of a complaint when ruling on a Rule 12(b)(6) motion to dismiss. However, for Rule 12(b)(6) purposes, courts may consider: (1) exhibits that are attached to the complaint; (2) matters of public record; and (3) any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if

the document is integral to or explicitly relied upon in the complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

 "[D]istrict courts within this circuit that have held an EEOC charge of discrimination and other related documents (*e.g.*, right to sue letter, intake questionnaire) are public records, and therefore, a court may consider these documents without converting a motion to dismiss into a motion for summary judgment". *Stull v. Leedsworld*, 2018 WL 576241, *3 n.2 (W.D. Pa. Jan. 26, 2018) (citations omitted); *see Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000), *aff'd*, 276 F.3d 579 (3d Cir. 2001) ("it is clear to us that under the applicable legal standard we may consider…documents including the letter from the EEOC summarizing its investigation...without converting this motion [to dismiss] to one for summary judgment").

### B.     The EEOC's Complaint At Its Core Is An Attack On A Lawful Policy

Bluntly stated, the EEOC initiated this matter as part of its campaign to obtain a favorable appellate decision affirming the agency's long-standing, but legally unsupported, stance that most qualified applicant policies violate the ADA.  Indeed, from its inception through the entire administrative phase, this matter has always been a dispute over Geisinger's MQA Policy. Specifically, the EEOC has taken the position that the ADA is an affirmative action statute requiring Geisinger to completely ignore its MQA Policy by reassigning disabled individuals to **<u>any</u>** open position without consideration of the individuals' overall qualifications for the position and even if a more qualified applicant applied for the same position.  Indeed, according to the EEOC, Geisinger – a health system responsible for the health and welfare of its patients – must

reassign an employee returning from a one-year non-FMLA medical leave with only a few months of experience as an ophthalmology nurse to an open emergency room nursing position instead of a nursing applicant with fifteen or twenty years of experience working as an emergency room nurse.

For obvious reasons, appellate courts across the country have repeatedly rejected the EEOC's position. Given this overwhelming and, quite frankly, commonsense caselaw, this Honorable Court must dismiss with prejudice the EEOC's challenge to Geisinger's MQA Policy for failure to state a claim upon which relief can be granted.

For at least twenty years, the EEOC, through enforcement actions or as an *Amicus Curiae*, has asked federal courts across the country to accept its interpretation of the ADA; that is, to require the automatic, unquestioned, noncompetitive reassignment of disabled individuals to any open position, without regard for the overall qualifications of the disabled individuals, the type of business engaged in by the employer (*i.e.*, healthcare), and/or whether there are more senior or more qualified applicants. Initially, the EEOC focused on seniority policies – asking courts to disregard employer seniority policies. *See EEOC v. Sara Lee Corp.*, 237 F.3d 349 (4th Cir. 2001) (affirming summary judgment and rejecting the EEOC's argument that employer must disregard its seniority policy and automatically transfer employee into a position over a more senior employee). This argument was ultimately rejected by the Supreme Court of the United States in *U.S. Airways v. Barnett*, 535 U.S. 391 (2002), which held the ADA does not require reassignment that would violate a seniority system.

After the Supreme Court's holding in *Barnett*, the EEOC switched its focus to employers implementing most qualified applicant policies, *i.e.*, policies wherein employers make hiring/reassignment decisions based on the most qualified applicant for the position. For years,

the EEOC has unsuccessfully roamed from circuit to circuit arguing, either as a party or an *Amicus Curiae*, that a most qualified applicant policy violates the ADA and that disabled employees must be **<u>automatically</u>** reassigned without regard to more qualified employees vying for the same position. *See, e.g., Elledge*, 979 F.3d at 1015 (upholding an employer's most qualified applicant policy and declaring the ADA requires the disabled employee be given the **<u>same</u>** opportunities, not preferential reassignment over others – despite the EEOC Amicus Brief arguing automatic reassignment is required and that there is no exception for competitive hiring policies); *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1205 (10th Cir., 2018) (disagreeing with EEOC Amicus Brief advocating reassignment without competition and ruling "the requirement to reassign a disabled employee to a vacant position for which he is qualified is not absolute. Reassignment may not be reasonable where it conflicts with an 'important employment policy'"); *EEOC v. St. Joseph's Hospital, Inc.*, 842 F.3d 1333, 1345 (11th Cir., 2016) ("[t]he EEOC appeals, arguing that the ADA mandates noncompetitive reassignment … [w]e agree that the ADA does **<u>not</u>** require reassignment without competition for, or preferential treatment of, the disabled." "**<u>In the case of hospitals, which is this case, the well-being and even the lives of patients can depend on having the best-qualified personnel. Undermining a hospital's best-qualified hiring or transfer policy imposes substantial costs on the hospital and potentially on patients.</u>**") (emphasis added); *Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, 483 (8th Cir. 2007) (ruling in a private action – "the ADA is not an affirmative action statute and does not require an employer to reassign a qualified disabled employment to a vacant position when such a reassignment would violate a legitimate nondiscriminatory policy of the employer to hire the most qualified candidate.").

Notwithstanding these clear and consistent holdings aligning with the Supreme Court's decision in *Barnett*, as well as the legislative history and plain text/purpose of the ADA, the EEOC

now seeks to ignore these earlier well-reasoned decisions and take its chances on the same issue in the Third Circuit. Indeed, a mere eight weeks after the *Elledge* Court denied the EEOC's Motion for Reconsideration in that matter, the EEOC issued the OLOD.

As outlined in more detail in Section II, *supra*, the EEOC is taking issue with Geisinger's MQA Policy, as it applies to Geisinger's "Other Leaves of Absence" Policy, Policy 04.231. Specifically, the EEOC is once again taking the position that the ADA requires an employee returning from this leave to be **<u>automatically</u>** placed in any open position for which the employee meets the minimum basic qualifications – even though the employee has not performed any job responsibilities for up to one (1) year and there may be other more qualified applicants. This position initially ignores the interactive process engaged in with the employee and which, if the parties had not reached such a reasonable accommodation, could have resulted in the termination of the employee. Again, Policy 04.231 provides the basis for employees to receive greater benefits than what is required by law. Even more troubling, however, is the EEOC's position that the ADA is an affirmative action statute and, as a result, Geisinger – responsible for the well-being and even the lives of patients – is not permitted to hire the most qualified candidate to provide patient care. Instead, they must ignore those most qualified to provide patient care in favor of less qualified applicants.

Such a result is not only illogical, but it directly contradicts the ADA's text, purpose, and legislative history as well as the Supreme Court's *Barnett* decision and its progeny. Accordingly, Geisinger's MQA policy is permissible and the EEOC's claim that its mere existence is a violation of the ADA fails as a matter of law.

And, since the EEOC cannot raise a claim that the policy was misapplied, the Complaint must be dismissed in its entirety with prejudice. As discussed in greater detail *infra* at Section

III.C.2., the EEOC had broad leeway to investigate the claims it now seeks to raise in this Complaint. At no point prior to issuing its Letters of Determination, however, did the EEOC investigate Geisinger's application of its MQA Policy to Casterline – or to any other current or former employee for that matter. Further, this Honorable Court need only look to the Letters of Determination to see that the EEOC did not render any finding as to the application of the policy; instead, the EEOC acted with the singular focus of attacking Geisinger's MQA Policy on its face. As a result of the EEOC's deliberate strategy, this Honorable Court is within its authority and must rule as a matter of law that the EEOC's Complaint fails to state a claim for which relief can be granted – dismissing the Complaint in its entirety with prejudice.

C. **The EEOC Has Failed To Sufficiently Plead A Plausible Pattern-Or-Practice Claim Under Either §706 Or §707**

It appears the EEOC is seeking to pursue pattern-or-practice claims, alleging violations of the ADA pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-5 ("§706") **and** 2000e-6 ("§707"), even though the Complaint is devoid of any §707 plausible predicate allegations. *See* Doc. 1 at ¶1. The fundamental legal framework for asserting either of these claims is the same and, as detailed below, the EEOC's Complaint fails to contain the necessary factual allegations for the EEOC to proceed under either theory.

1. **Overview of §706 and 707**

The objective of a §707 claim is to challenge an employer's systemic, wide-spread discrimination. *EEOC v. United States Steel Corp.*, 2012 U.S. Dist. LEXIS 101872 *11, 2012 WL 3017869 (W.D. Pa. 2012) (citations and quotation omitted). In bringing such a case, the EEOC must show the employer regularly engaged in purposeful discrimination of a protected group. *EEOC v. International Profit Associates, Inc.*, 2007 WL 844555 *6 (N.D. Ill. 2007). The EEOC must "prove more than the mere occurrence of isolated or accidental or sporadic discriminatory

acts" and, instead, "must prove, by a preponderance of the evidence, that discrimination was the company's standard operating procedure – the regular rather than the unusual practice." (citing *EEOC v. Mitsubishi Motor,* 990 F.Supp. 1059, 1070 (C.D. Ill. 1998) (quotations omitted). Thus, the focus in a §707 pattern or practice claim is whether the unlawful employment action constituted the standard operating procedure or regular practice of the company. *Id*.

Conversely, "a §706 claim involves the rights of aggrieved *individuals* challenging an unlawful employment practice on an individual *or* class-wide basis...." *EEOC v. JBS USA, LLC,* 2015 WL 4506709 *5 (D. Nev. 2015) (citing *EEOC v. Scolari Warehouse Markets, Inc.*, 488 F.Supp.2d 1117, 1143 (D. Nev. 2007) (emphasis in original)). "Under section 706, when a person claiming to be aggrieved files a charge with the EEOC alleging that an employer engaged in an unlawful employment practice, the EEOC is empowered to bring a civil action on the basis of the charge, so long as the prerequisites to suit are met." *International Profit Associates, Inc.*, 2007 WL 844555 at *7 (quoting *International Brotherhood of Teamsters v. United States,* 431 U.S. 324 (1977) and 42 U.S.C. § 2000e-5(b), (f)(1)). Nevertheless, regardless of the EEOC's intended framework, it must meet certain prerequisites before it brings suit. *Id.* at *9.

## 2. The EEOC Failed to Satisfy Its Pre-Suit Obligations

Before the EEOC may bring either a §706 or §707 claim, it must discharge certain administrative obligations. The EEOC must: (1) receive a formal charge of discrimination against the employer; (2) provide notice of the charge to the employer; (3) investigate the charge; (4) make and give notice of its determination that there was reasonable cause to believe that a violation occurred; and (5) make a good faith effort to conciliate the charges. *See* 42 U.S.C. § 2000e–5(b); *see also Mach Mining, LLC v. EEOC*, 575 U.S. 480 135 S.Ct. 1645, 1649–50, 191 L.Ed.2d 607 (2015); Commission Opinion Letter: Section 707, OLC Control No. EEOC-CVG-2020-2, Issued

09-03-2020, attached as **Exhibit 7**. These methods "necessarily involve communication between the parties, including the exchange of information and views." *Mach Mining, LLC,* 575 U.S. at 488. The EEOC must inform the employer about the specific allegation which it typically does through its Letter of Determination announcing its reasonable cause findings. *Id.* at 494. "Such notice properly describes both what the employer has done and which employees (or what class of employees) have suffered as a result." *Id.* In *Mach Mining*, the Supreme Court unequivocally held that the EEOC was required, *inter alia*, to tell the employer what practice was harmful and that it was a court's responsibility to ensure the EEOC complied with its statutory directives. *Id.* at 488-89. As the Supreme Court more fully stated:

> Absent such a review, the Commission's compliance with the law would rest in the Commission's hands alone. We need not doubt the EEOC's trustworthiness, or its fidelity to law, to shy away from that result. We need only know – and know Congress knows – that legal lapses and violations occur, and especially so when they have no consequence. This is why this Court has so long applied a strong presumption favoring judicial review of administrative action.

*Id.* at 488-89. (citations omitted). Every step in the statutory scheme, including notice, investigation, determination and conciliation "is intended to be a condition precedent to the following step and, ultimately, to suit." *EEOC v. United States Steel Corporation*, 2013 WL 625315 *7 (W.D. Pa. 2013) (citing *EEOC v. Allegheny Airlines*, 436 F. Supp. 1300, 1304 (W.D. Pa. 1977) (internal citations omitted)).

The EEOC ignored its administrative obligations before commencing this action against seven independent Geisinger entities.

      a.    <u>The EEOC Did Not Investigate The Pattern and Practice Claims Alleged in the Complaint</u>

Geisinger recognizes this Court cannot examine the sufficiency of an EEOC investigation; however, judicial review is permitted to determine whether the EEOC conducted an investigation.

*EEOC v. Sterling Jewelers Inc.*, 801 F.3d 96, 101 (2d Cir. 2015); *also see Mach Mining, LLC,* 575 U.S. at 488-489. The EEOC must show "that it took steps to determine whether there was reasonable cause to believe that the allegations in the charge are true." *Id.* (citations omitted). The EEOC is required to investigate claims (and conciliate) before filing a lawsuit. *See EEOC v. United Parcel Service, Inc.*, 2013 WL 140604 (N.D. Ill. 2013). The EEOC's failure to do so requires a dismissal of the charges. *See United States Steel Corporation*, 2013 WL 625315 at *8 (collecting cases); *EEOC v. CRST Van Expedited*, 679 F.3d 657 (8th Cir. 2012).

Here, the EEOC did not give ***any*** attention to charges of a pattern or practice of unlawful discrimination *before* the EEOC issued its OLOD or ALOD. Indeed, the EEOC's Complaint alleges Geisinger violated Title I of the ADA "when **they** discriminated against a class of aggrieved former and current employees and Casterline on the basis of a disability…..", violated Title V of the ADA "when **they** retaliated against persons who opposed any or practice made unlawful by the ADA…..", and violated Title V of the ADA when "**they** interfered with any individual in the exercise or enjoyment of, or on account of their exercise or enjoyment of, any right granted or protected by the ADA." (Doc. 1 at ¶¶20-22) (emphasis added). The "they" in these conclusory averments are seven Geisinger-related entities named as Defendants. As pled, this Complaint allegedly grew out of a Charge of Discrimination Casterline filed with the EEOC "alleging her employer discriminated against her in violation of the ADA." (*Id.* at ¶16) (emphasis added). The EEOC must show that it undertook to investigate whether there was a basis for alleging these claims against these entities before filing this lawsuit.

"It is well-settled that the EEOC's investigation must occur within the 'scope of the charge' – that is, it must reasonably grow out of the charge underlying it." *EEOC v. Jillian's of Indianapolis, IN, Inc.*, 279 F.Supp.2d 974, 979 (S.D. Ind. 2003). The EEOC may only seek relief

on behalf of individuals beyond the charging parties and for alleged wrongdoing beyond those originally charged if and when the EEOC discovers such information during its pre-litigation investigation. *Id.* There is a clear and important distinction between "facts gathered during the scope of an investigation and facts gathered during the discovery phase of an already-filed lawsuit." *Id* at 979; *EEOC v. CRST Van Expedited*, 2009 WL 2524402, *17 (N.D. Iowa Aug. 13, 2009) (quoting *EEOC v. Target Corp.*, 2007 WL 146128 (E.D.Wis. May 16, 2007)). Any lawsuit the EEOC eventually seeks to file must arise from the scope of the investigation. *Jillian's*, 279 F.Supp.2d at 979. The "EEOC may not use discovery in the resulting lawsuit as a fishing expedition to uncover more violations." *U.S. Steel Corp.* 2013 WL 625315 at *9 (citing *EEOC v. Dillard's Inc.,* 2011 WL 2784516 *8 (S.D. Cal. 2011) (quoting *Target Corp.*, 2007 WL 146128 at *3); *EEOC v. Bloomberg L.P.*, 967 F.Supp.2d 802, 811 (S.D. N.Y. 2013).

Here, this Honorable Court need only examine the fact that the EEOC did not request any information concerning the application of Geisinger's MQA Policy to Casterline (or any other employee) prior to issuing its OLOD and ALOD. Moreover, the policies the EEOC is relying on as the basis for naming seven separate Geisinger entities in this matter were not even provided to the EEOC prior to the issuance of the OLOD of ALOD.[8] Without this information, clearly the EEOC did not perform an investigation into these issues and, as such, the expansive "pattern and practice" allegations the EEOC outlines in the Complaint cannot reasonably be inferred as having

---

[8] As the EEOC advised this Honorable Court during oral argument on February 7, 2022, "the group of aggrieved employees are people who have been harmed by Geisinger's policy and practice of denying job-protected leave beyond a specified period and refusing to reassign as a reasonable accommodation." N.T. p. 20 lines 17–17. The EEOC further advised the Court that the other named defendants were included because "written policies on leave and on best qualified – the best qualified requirement attached to Geisinger's request for reconsideration, which is in the record, and on the face of each of those policies, it checks which location or puts an X, I think, for each location where the policies apply." N.T. p. 21, lines 1-7. In other words, only the policies – which were not provided prior to the OLOD and ALOD – connect the Geisinger entities.

15

grown out of the EEOC "investigation" of the Casterline Charge. As noted in Section III.C.2.b., *infra*, this is further evidenced by the absence of any factual findings within the OLOD or ALOD that would support a pattern or practice determination with respect to the **application** of Geisinger's MQA Policy and/or the identification of the seven Geisinger entities as defendants in this matter. Accordingly, the Complaint's allegations of a class of aggrieved current and former employees purportedly subjected to a pattern or practice of unlawful discrimination must be dismissed as a matter of law.

b.    The Allegations in the Complaint Exceed the Scope of the ALOD

Geisinger acknowledges that the EEOC enjoys significant latitude to investigate claims of discrimination and to thereafter allege claims in federal court that derive from its investigatory findings. However, it is not unbridled discretion. The permissible scope of an EEOC lawsuit is confined to "the discrimination stated in the charge or *developed during a reasonable investigation of the charge so long as the additional allegations of discrimination are included in the reasonable cause determination and subject to a conciliation proceeding.*" *CRST Van Expedited, Inc.*, 679 F.3d 657 at 674 (emphasis in original) (quoting *EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 668 (8th Cir. 1992)). Accordingly, the claims that were not addressed in the ALOD are subject to dismissal on the basis that the EEOC failed to satisfy its pre-litigation obligations to bring those claims. *EEOC v. Bloomberg L.P.*, 967 F. Supp.2d 802, 812-813 (S.D.N.Y. 2013) (dismissing claim after noting that the claim was new and "nowhere mentioned in the [letter of determination]). *See also EEOC v. Sears, Roebuck and Co.*, 650 F.2d 14, 19 (2nd Cir. 1981) (explaining the EEOC cannot "attempt conciliation on one set of issues and having failed, litigate a different set").

The EEOC's Complaint goes well beyond what the EEOC purportedly investigated and published in the OLOD and ALOD. First, the ALOD was limited to two of the seven named

Geisinger entities: GWVMC (Casterline's employer) and GH. Second, the ALOD was limited to Geisinger's MQA Policy. Third, neither the OLOD nor the ALOD detailed any findings as to claims for retaliation or interference.

i.    *The ALOD Is Directed Only to GWVMC and GH*

The pre-suit obligations extend to parties named in a civil suit. A corollary of this general rule is that a party must be named in the EEOC charge before that party may be sued, unless there is a clear identity of interest between the unnamed party and a party named in the EEOC charge. *See EEOC v. Bass Pro Outdoor World, LLC,* 884 F. Supp.2d 499 (S.D. TX 2012) (citations omitted). One test finds an identity of interest if the unnamed party has been provided with adequate notice of the charge and received the opportunity to engage in conciliation. *Id.* (citing *Alexander v. Local 496, Laborers' Int'l Union of North Am*., 177 F.3d 394, 412 (6th Cir. 1999) (internal citations omitted)).

GWVMC was the only entity named in the OLOD. *See* **Exhibit 3**. Geisinger Health and GWVMC were the only parties named in the ALOD. *See* **Exhibit 5**. The other five entities – Geisinger Health Foundation, Geisinger Clinic, Geisinger Health Plan, Geisinger Medical Center, and Geisinger Holy Spirit Hospital – neither received adequate notice of the charge nor received the opportunity to engage in conciliation. In fact, the EEOC is attempting to use the policies attached to Geisinger's MFR – and the suggestion that they apply to all seven entities named in the Complaint – as the sole factual allegation (other than bald legal conclusions) to link these entities together and overcome the EEOC's failure to name all seven entities in the Charge and/or the ALOD. Again, these policies were not provided to the EEOC prior to its issuance of the OLOD or the ALOD and, thus, were not part of the EEOC investigation. Therefore, they cannot serve as the basis for placing these entities on notice or to link these entities together.

Even more fatal to the EEOC's attempt to bring these five entities into this case is the EEOC's failure to allege any facts to establish an integrated enterprise which meets its pleading requirements.[9] First, the EEOC avers that Geisinger Health/Geisinger Health System "has coordinated, supervised, and controlled the activities of its affiliates, subsidiaries, and entities, concerning various employment matters such as granting or denying accommodations like medical leave, hiring, rehiring, termination, and requiring those entities and persons employed or seeking employment at their worksite to comply with Geisinger Health/Geisinger Health System employment policies including the policies identified herein." *See* Doc. 1 at ¶14. This averment is nothing more than a formulaic recitation of the elements necessary to try to establish either an integrated enterprise or single employer. The EEOC follows with the averment that "Geisinger Health/Geisinger Health System and its affiliates, subsidiaries, and entities, including but not limited to the other named Defendants, have operated in such a manner as to constitute an integrated enterprise or single employer." *See* Doc. 1 at ¶15. The EEOC must allege more than labels and conclusions to justify each defendant's involvement in this action.

The EEOC has both failed to comply with its pre-suit obligations and to plead facts establishing an "identity of interest" or "integrated enterprise" with respect to the five Geisinger Defendants not identified in the ALOD and, thus, they must each be dismissed from this case.

---

[9] "Generally, if a plaintiff does not name a defendant in his/her administrative charge, he/she is precluded from later bringing an action against that defendant in court." *See Hills v. Borough of Colwyn*, 978 F. Supp. 2d 469, 479 (E.D. Pa. 2013) (citing *Schafer v. Board of Public Educ.*, 903 F.2d 243, 251 (3d Cir. 1990)). "The Schafer Court held that a case against an unnamed party may proceed 'when the unnamed party received notice and when there is a shared commonality of interest with the named party.'" *Id*. (quoting *Schafer*, 903 F.2d at 252).

As discussed in Section II, *supra*, the Charge of Discrimination and the ALOD render it clear that the EEOC was singularly focused on attacking Geisinger's MQA Policy. Both the OLOD and the ALOD were focused on the MQA Policy, and the EEOC has readily admitted that it is naming additional Geisinger entities not involved in the administrative action simply because Geisinger's "written policies on leave and on best qualified" illustrate on their face that they apply at those locations. *See*, n.8, *supra*.

The Complaint continues the EEOC's focus on the MQA Policy, which is the only policy or practice the Complaint mentions with any level of specificity or with any attempt to articulate facts that would meet the pleading requirements under the rules. *See* Doc. 1 at ¶20(c)-(f), (q), (s) (u); ¶22(c). Furthermore, in its Prayer for Relief, the first item the EEOC is asking the Court to redress is to enjoin Defendants from "maintaining the policies described above which deprive rights secured by the ADA" and from "requiring [employees] to be the 'most qualified' person to retain or obtain employment opportunities." *See* Doc. 1 at Prayer for Relief – A. The only "policy described above" in the Complaint is the "most qualified" person policy. No other policy is set forth in the ALOD or the Complaint; certainly no other policy has been alleged.

Insofar as the ALOD and the Complaint itself are limited to the MQA Policy, the EEOC cannot now go outside the four corners of these documents and attempt to claim it is bringing a challenge to some other policy or practice. The EEOC's ALOD makes no reference, with any level of specificity, to any other policy or practice. The EEOC has failed to plead any facts in the Complaint to support claims to redress any other policy or practice. The EEOC's attempt to make this litigation about anything other than the MQA Policy is improper, and any such claims – to the

extent this Honorable Court finds any to be articulated – must be dismissed. *See Bloomberg L.P.*, 967 F.Supp.2d at 812-813.

> iii. *The ALOD Does Not Make Any Findings as to Retaliation or Interference*

On its face, the ALOD fails to make any finding as to retaliation or interference. Again, it is focused on Geisinger's MQA Policy. Indeed, the ALOD does not contain the word "interference" and it only uses the word "retaliation" once, when summarizing the Charge. In other words, the EEOC's claims of retaliation and interference are "new" – "nowhere mentioned in the [ALOD]" and, thus, must be dismissed as a matter of law. *Bloomberg L.P.,* 967 F.Supp.2d at 812-813.

The EEOC's engineered tactics in bringing forth this kind of Complaint, representing that it complied with its pre-suit obligations, is the kind of "legal lapse" or "violation" the Supreme Court in *Mach Mining* cautioned against when noting the important need for judicial review of the administrative process. The EEOC's deliberate act of filing a Complaint in complete contravention to the established statutory framework compels an order of dismissal.

> ## 3. The EEOC's Complaint Does Not Identify the Class of Aggrieved Current or Former Employees

The EEOC's recurring catch phrase "a class of aggrieved persons" fails to sufficiently raise the possibility of relief above the speculative level, notwithstanding the latitude the EEOC is already given when pleading claims regarding unidentified class members. This Court cannot make any reasonable inference on the face of the Complaint that Geisinger discriminated against other individuals on the basis of a disability.[10]

---

[10] More specifically, and as addressed in greater detail in Section D, the EEOC does not plead any factual allegations allowing this Court to infer that members of the class (including Casterline) are qualified individuals as defined by the ADA.

The EEOC is not limited to the charge as originally filed but instead may enlarge the scope during its investigation. *U.S. Steel Corp.*, 2012 U.S. Dist. LEXIS 101872 at *29 (collecting and citing to cases holding the EEOC need not identify all potential class members). When the investigation results in a lawsuit, the "EEOC must merely plead factual content that allows the court to draw reasonable inference that [an employer] violated provisions of the ADA as to the unidentified individuals. *UPS*, 2013 WL 140604 at *6. "[T]he proper standard is to require the EEOC to identify the general outlines of the membership of the class at the outset of the litigation." *U.S. Steel*, at *31 (citing *EEOC v. Fed. Reserve Bank*, 84 F.R.D. 337, 340 (W.D. Tenn. 1979)) (quotations omitted).

The court's analysis in *United Parcel Service, Inc.* ("*UPS*") is instructive here. The *UPS* court granted the employer's motion to dismiss the EEOC's complaint because the court could not reasonably infer that the charging party or proposed class had "a plausible basis for claiming to be 'otherwise qualified to perform the essential functions of the job with or without reasonable accommodation.'" *UPS*, 2013 WL 140604 at *1. The EEOC amended to circumscribe the class around a specific policy, ultimately filing an amended complaint alleging "UPS maintained an inflexible 12-month leave policy which does not provide for reasonable accommodation of qualified individuals with disabilities and which instead provides for termination of their employment, in violation of 42 U.S.C. §§ 12112(a) and 12112 (b)(3)(A) and (b)(5)(A)" and further alleged "the same policy [applied to the named charging complainants] was applied across the board to other employees." *Id,* at *5 (bracketed text in original).

The *UPS* court found that – as amended – the court could reasonably infer that UPS discriminated against other qualified individuals when it enforced its policy because the complaint "identifies the statutes that UPS allegedly violated; the time frame in which the alleged violations

occurred; the names of presently two identified victims; a general description of the class of aggrieved persons; the specific claims alleged and their elements as to the charging party and the class of aggrieved persons; the types of conduct to which the named claimants and the unidentified class were subjected; and the remedies being sought." *Id, *6.* The same cannot be said for the EEOC's Complaint in this case.

The EEOC's Complaint, here, is akin to the initial complaint dismissed by the *UPS* court. It is so threadbare, conclusory, and formulaic that it does not even allow the Court to reasonably infer the specific universe of potential class members. The EEOC does not limit the potential class in any fashion, rendering it impossible to determine whether there is anything more than a speculative belief of potential relief for the unidentified class members. As pled, the purported class of aggrieved persons could conceivably include every current and former employee (regardless of position) at every named Geisinger facility who is or was disabled and ever sought an accommodation of any kind (including those that received a reasonable accommodation) for a four (4) year period. In other words, the EEOC is asking to perform a complete HR Audit – an ADA review – of every single ADA decision made by Geisinger. It is patently unreasonable to believe that such a claim reasonably grew out of the scope of the EEOC's purported investigation of a single charge, particularly when the EEOC's focus was on Geisinger's MQA Policy. Like *UPS*, the scope in this case should, at best, be limited to employees of GWVMC similarly situated to Casterline.[11] In other words, to other nurses employed by GWVMC.[12]

---

[11] Such a narrowing of the class would only be appropriate if this Court were to find – which it should not – that the EEOC satisfied its pre-suit obligations and that the Complaint was not otherwise deficient for the various other reasons argued in this Brief.

[12] The pleading deficiencies in regard to the scope of the purported class of aggrieved persons extends also to the geographic scope of the class. As discussed in Section III.C.2.b.i., *supra,* the EEOC seeks to include employees at Geisinger entities who never employed Casterline. Furthermore, although the EEOC fails to acknowledge in either of its Letters of Determination and

**D.** **The EEOC Has Failed To Plead A Plausible Claim Under Title I Of The ADA.**

Initially, it appears the EEOC is claiming Geisinger "violated Title I of the ADA, 42 U.S.C. § 12112(a) and (b)." *See* Doc. 1 at ¶20. Regardless of what kind of ADA claim the EEOC is actually trying to assert, it has failed to sustain the threshold requirement of pleading sufficient allegations for this Honorable Court to find Casterline was a qualified individual and suffered from discrimination because of that disability.

"When pursuing class claims [under Title I of the ADA], the EEOC must plausibly allege that at least one charging party is a 'qualified individual' who is 'disabled.'" *EEOC v. Prestige Care, Inc.*, 2018 WL 3473964 *2 (E.D. Ca. 2018) (citing *UPS*, 2013 WL 140604). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* §12111(8).

A person qualifies as disabled under the ADA if he/she: (1) has a physical or mental impairment that substantially limits one or more of her major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *Ramage v. Rescot Systems Group, Inc.*, 834 F.Supp.2d 309 (E.D. Pa. 2011). The ADA defines "major life activities" as including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending ... and working." *See Bennett v. Calabrian Chemicals Corp.,* 324 F.Supp.2d 815 (E.D. Tx. 2004) *aff'd* 126 Fed. Appx.171 (5th Circ. 2005) (holding that a person who fully recovered from surgery and was released to return to work without restrictions was no longer impaired as a result of his condition and, therefore, was not disabled) "A temporary,

---

Complaint, Casterline was a member of a collective bargaining unit and as such, the terms of her leave and application of the MQA Policy are the subject of a collective bargaining agreement.

transient, or nonpermanent impairment is not a disability that substantially limits a major life activity." *Seibert v. Lutron Electronics*, 2009 WL 4281474, at *5 (E.D.Pa. Nov. 30, 2009).

The EEOC fails to plausibly plead Casterline was a qualified individual with a disability at the time an adverse action was allegedly taken against her. The EEOC pleads Casterline "has an impairment, including recurring rotator cuff injuries and complications/impairments flowing from such injuries, and/or has a record of such impairments" and then goes on to plead she underwent surgery, suffered complications, but was then "cleared to return to work." Doc. 1 at ¶20(a) and (k)-(m). There are no factual allegations plausibly supporting the conclusion that she was impaired as a result of her injury or surgery at the time she was released to return to work. In fact, the EEOC acknowledges Casterline was released to return to work and, thus, no longer disabled. *Id.* at ¶20 (m). Accordingly, the EEOC has not and cannot meet its burden of showing Casterline is disabled under the ADA.

A further examination of the elements of the EEOC's failure to accommodate claims lends additional evidence exposing the fatal defects in the EEOC's Complaint. In construing §12112(b)(5), the Third Circuit has held that, for a covered entity to be found liable for discrimination on the basis of failure to accommodate, a plaintiff must prove he/she: (1) is a disabled person within the meaning of the ADA; (2) are otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation(s); and (3) have suffered an otherwise adverse employment decision as a result of discrimination by refusing to make reasonable accommodations for a plaintiff's disabilities. *Hohider v. United Parcel Service, Inc.*, 574 F.3d 169 (3d Cir. 2009) (citations and internal quotations omitted)." *Id.* (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311 (3d Cir. 1999) (quotations omitted).

The EEOC's claim for disability discrimination again misses the pleading mark, as the Complaint is devoid of any allegations sufficient for this Honorable Court to reasonably infer Casterline was qualified, with or without reasonable accommodation, for her position or for the other positions to which she applied. Indeed, the EEOC does not plead any factual allegations about Casterline's position or any of the positions she "applied" to upon being cleared to return to work. Instead, the EEOC only pleads the language outlined in Policy 04.231 and the MQA Policy (although not referring to these policies by name or with any specificity). *See* Doc. 1 at ¶¶20(o)-(q). The EEOC further fails to plead any nexus between Casterline and any named Geisinger entity except GWVMC.

As pled, Casterline "worked at [GWVMC] as a Registered Nurse (RN) for more than 30 years." Doc. 1 at ¶(20(j). The EEOC merely pleads that "Casterline was an excellent employee and had a variety of experience in different capacities and departments." *Id.* There are no other allegations as to her experience or qualifications. Thus, the EEOC's Title I claim is nothing more than a series of contrived subparagraphs rife with conclusory allegations that fail to include the factual averments necessary to establish at least one employee is a "qualified individual" who is "disabled". *Prestige Care*, 2018 WL 3473964 at *2. Accordingly, the EEOC has failed to sufficiently plead a claim for Title I ADA Discrimination, and the Complaint must be dismissed in its entirety with prejudice.

## E. The EEOC Has Failed To Plead Plausible Claims of Retaliation or Interference Under Title V of the ADA.

The EEOC attempts to assert that Geisinger retaliated against Casterline and the "class of aggrieved persons" (Doc. 1 at ¶21) and interfered with the class of aggrieved persons' exercise of their respective ADA rights. (*Id.* at ¶22). A plain reading of the Complaint yields no other conclusion than these supposed claims for retaliation and interference are nothing more than "tack

on" theories of liability focused on the same underlying issue; namely, the EEOC's mistaken belief that Geisinger's MQA Policy does not pass muster under the law. The EEOC has not met its burden to plead plausible claims for retaliation or interference under the ADA.[13]

### 1. There are Insufficient Factual Allegations To Render an ADA Retaliation Claim Plausible on its Face

It is unclear what the EEOC is attempting to plead as its ADA retaliation claim. In a rather circular argument, it appears that the EEOC is alleging that Casterline was terminated because she requested an accommodation and/or put Geisinger on notice that she would need an accommodation. As pled, the EEOC appears to be improperly intermingling a retaliation claim with an accommodation claim. *See Tolliver v. Delmarva Foundation for Medical Care*, 2020 WL 4335521 (D. Del. 2020) (citing a collection of cases).

To establish an ADA retaliation claim a plaintiff must allege: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Tyson v. Access Services*, 158 F.Supp.3d 309, 315 (E.D. Pa. 2016). To establish the requisite causal connection, a plaintiff usually must prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link. *Hibbard v. Penn-Trafford School Dist.,* 2014 WL 640253 (W.D. Pa 2014) ("Temporal proximity is sufficient to establish the causal link. A plaintiff can also establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period.").

---

[13] As discussed *infra* at Section III.C.2.b.iii, the EEOC's failure to investigate or make findings in its ALOD as to claims of ADA retaliation and interference is also fatal to these claims.

Notwithstanding the circuitous nature of the EEOC's manner of pleading a retaliation claim, the most crucial defect surrounds the absence of sufficient factual allegations for this Honorable Court to reasonably infer a causal connection. The EEOC pleads that Casterline was released to return to work in January 2019, at which time she requested a reasonable accommodation. Doc. 1 at ¶20(m)-(n). However, the EEOC does not plead what accommodation Casterline requested. The EEOC pleads that Casterline was terminated on or about March 28, 2019 – three months later. (Doc. 1 at ¶20(r)). The EEOC does not allege Geisinger engaged in a pattern of antagonistic behavior. To the contrary, the EEOC pleads that Geisinger's conduct was the result of its MQA Policy. *Id*, at ¶20(c)-(f). The EEOC fails to allege any facts to support a causal connection between Casterline's termination, her undefined request for reasonable accommodation, and Geisinger's adoption of a MQA Policy. As such, EEOC has failed to state a claim for Retaliation.[14]

### 2. There are Insufficient Factual Allegations To Render an ADA Interference Claim Plausible on its Face

The specifics of the EEOC's ADA interference claim are as unclear as its retaliation claim. On the face of the Complaint, there does not appear to be an appreciable difference between the EEOC's discrimination claim and its interference claim. The interference claim is a rehashing of the EEOC's main issue – the MQA Policy:

> The above facts, among others, demonstrate that Defendants engaged in unlawful interference by: refusing to allow Casterline to return to her position, or any other position with Defendants, unless she "applied" and was the "most qualified" for an employment opportunity; compelling Casterline be the "most qualified" candidate for an employment opportunity within a limited period or be fired; and interfering with Casterline's efforts to apply for her own position by manipulating, misrepresenting, or interfering with her application process and the posting/filling of her position.

---

[14] The EEOC's Retaliation claim – like its ADA claim – is also a class claim. Doc. 1 at ¶21(d). As discussed *infra* at Section III.C.3., the purported class claims fail as a matter of law.

Doc. 1 at ¶20(c). Again, the MQA Policy does not violate the ADA. Other than refer to the allegations relating to the MQA Policy, the EEOC makes zero factual allegations to support its interference claim.

The ADA prohibits an employer from interfering with an individual's exercise or enjoyment of rights granted or protected under the ADA. *See* 42 U.S.C. §12203(b). Neither the Supreme Court nor the Third Circuit has yet outlined a legal test for an interference claim under the ADA. The Seventh Circuit has held a plaintiff alleging an ADA interference claim must demonstrate that: "(1) she engaged in activity statutorily protected by the ADA; (2) she was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) the defendants were motivated by an intent to discriminate." *Frakes v. Peoria School District No. 150*, 872 F.3d 545, 550-551 (7th Cir. 2017).

At the very least, the EEOC fails to meet its pleading requirements for elements (3) and (4). The Complaint does not allege Geisinger coerced, threatened or intimidated Casterline or any of the "aggrieved class." As stated above, the EEOC's focus was on Geisinger's MQA Policy. *See* Doc. 1 at ¶20(c). The EEOC alleges Geisinger "treated a class of aggrieved persons similarly to Casterline"; again, referring to the MQA Policy. *See* Doc. 1 at ¶23. The alleged "interference" is applying the MQA Policy – a neutral nondiscriminatory policy – to Casterline, and ostensibly to others. Applying its MQA Policy to Casterline and others similarly situated cannot constitute unlawful interference as a matter of law.

In addition, the EEOC has failed to plead any facts under element (4) – that Geisinger was "motivated by an intent to discriminate." The Complaint does not allege any "motivations" Geisinger may have had, likely because Geisinger (or any other employer), in utilizing its MQA

Policy, evinces zero intent to discriminate.  Having completely failed to plead any facts to satisfy this element, the EEOC's interference claim must be dismissed.

### F.    The EEOC's Claims on Behalf of Aggrieved Individuals Based on Activity Prior to March 26, 2019 are Time-Barred as a Matter of Law

To the extent this Honorable Court finds any of the asserted claims survive, any claims on behalf of aggrieved individuals based on activity prior to March 26, 2019 (300 days before Casterline filed her Charge on January 20, 2020) are time barred and must be dismissed.  The EEOC can only seek relief on behalf of those individuals who were allegedly subjected to unlawful employment practices during the 300 days before the filing of the triggering charge. *See EEOC v. FAPS, Inc.*, 2014 WL 4798802 (D. N.J. Sept. 26, 2014); *see also EEOC v. U.S. Steel*, 2012 WL 3017869 (W.D. Pa. July 23, 2012) (holding the EEOC's look-back period was restricted to the 300 days prior to when the original charge giving rise to the EEOC's claim was filed and granting motion to dismiss as to any claim based on events arising outside of the 300 days); *see also* **Exhibit 7**.  Thus, any individuals who were allegedly subjected – prior to March 26, 2019 – to the alleged ADA violations in the Complaint cannot be part of the purported aggrieved class as a matter of law.

Both the *FAPS, Inc.* and the *U.S. Steel* courts relied on the "plain language" statutory analysis set forth in *Freeman*, a District of Maryland case:

> The Court need not look any farther than the plain language of Section 706(e)(1) to conclude that the class of individuals for whom the EEOC can seek relief is limited to those who could have filed an EEOC charge during the filing period. Section 706(e)(1) clearly bars claims from individuals who failed to timely file charges. *See* 42 U.S.C. § 2000e–5(e)(1) ("[A] charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred...."). Nothing in the text of Section 706 or 707 suggests that the EEOC can recover for individuals whose claims are otherwise time-barred. If Congress intended to make an exception for the EEOC to revive stale claims under Sections 706 and 707, it should have said so. The plain

language of Section 706(e)(1), which is incorporated into Section
707 via subsection (e), precludes the EEOC from seeking relief for
individuals who were not subjected to an unlawful employment
practice during the 300 days before the filing of the triggering
charge.

*EEOC v. Freeman*, 2010 WL 1728847, at *4 (D. Md. Apr. 27, 2010). The courts within the Third

Circuit considering this issue have concluded that claims outside the 300-day lookback period are

time barred. Applying this common sense, "plain language" statutory analysis here compels

dismissal of the EEOC's claims for activity prior to March 26, 2019 as time barred.

## IV.    CONCLUSION

For the foregoing reasons, Geisinger respectfully requests this Honorable Court grant the

relief requested in its Motion to Dismiss.

<div style="margin-left:45%">

Respectfully submitted,
BUCHANAN INGERSOLL & ROONEY PC

*/s/ Anthony (T.J). Andrisano*
Anthony (T.J.) Andrisano (PA 201231)
Jacob Sulzer (PA 313089)
409 N. Second Street, Suite 500
Harrisburg, PA 17101
anthony.andrisano@bipc.com
jacob.sulzer@bipc.com

Melissa Murphy Weber (PA 76959)
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA  19102-2555
melissa.weber@bipc.com

</div>

Dated: March 8, 2022                         *Counsel for Defendants*

## CERTIFICATE OF CONFERENCE

The undersigned counsel hereby certifies that the parties met and conferred extensively with counsel of record for the Equal Employment Opportunity Commission ("EEOC") on the substance of Geisinger's Motion by telephone in November and December 2021, through written submissions to this Court including the parties Rule 26 Report and the filings on Geisinger's request to limit and/or bifurcate discovery, and in a subsequent discussion in February 2022. The EEOC does not concur in this Motion.

Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY PC

*/s Anthony (T.J.) Andrisano*
Anthony (T.J.) Andrisano (PA 201231)
Jacob Sulzer (PA 313089)
409 N. Second Street, Suite 500
Harrisburg, PA 17101
anthony.andrisano@bipc.com
jacob.sulzer@bipc.com

Melissa Murphy Weber (PA 76959)
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
melissa.weber@bipc.com

*Counsel for Defendants*

Dated: March 8, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of the foregoing document was transmitted

by Electronic Mail upon the following parties this day:


Jessi D. Isenhart, Esq.
Sabrina Brown, Esq.
U.S. Equal Employment Opportunity Commission
Cleveland Field Office
1240 E. 9th Street, Suite 3001
Cleveland, OH 44199
JESSI.ISENHART@EEOC.GOV
SABRINA.BROWN@EEOC.GOV




_Melissa M. Weber_
Melissa Murphy Weber



Dated:  March 8, 2022