**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | **CIVIL ACTION** |
| Plaintiff, | **NO. 21-4294-KSM** |
| *v.* | |
| **GEISINGER HEALTH, et al.,** | |
| Defendants. | |

## MEMORANDUM

**Marston, J.**                                                    **October 17, 2022**

The Equal Employment Opportunity Commission ("EEOC") brings this enforcement action against Defendants Geisinger Health System Foundation, Geisinger Wyoming Valley Medical Center, Geisinger Clinic, Geisinger Health Plan, Geisinger Medical Center, and Geisinger Holy Spirit Hospital (collectively, "Defendants" or "Geisinger") on behalf of Charging Party Rosemary Casterline, a former nurse at Geisinger Wyoming Valley Medical Center, and a class of aggrieved former and current employees.  (Doc. No. 1.)  The EEOC alleges that Geisinger violated Title I of the Americans with Disabilities Act ("ADA") by discriminating against and failing to accommodate Casterline and others who took medical leave by requiring them to re-apply and compete for employment opportunities to return to work and requiring them to be the "most qualified" applicant.  (*Id.*)  For similar reasons, the EEOC claims that Geisinger retaliated against Casterline and other employees and interfered with their rights as protected by the ADA, in contravention of Title V of the ADA.  (*Id.*)

Presently before the Court is Defendants' motion to dismiss.  (Doc. No. 25.)  The EEOC

opposes the motion.  (Doc. No. 28.)  The Court held oral argument on September 7, 2022.  For the reasons that follow, the Court grants in part and denies in part the motion.

## I.     Factual Background

Accepting the allegations in the Complaint as true, the relevant facts are as follows.

### A.     *Casterline Takes Leave Following Rotator Cuff Surgery*

For thirty years, Casterline worked as a registered nurse for Geisinger Wyoming Valley Medical Center "in different capacities and departments."  (Doc. No. 1 at ¶ 20(j).)

In October 2018, Casterline informed Geisinger that she had suffered a rotator cuff injury that required reverse shoulder replacement surgery.  (*Id.* at ¶ 20(k).)  She took approved medical leave, with an approximate return date of December 25, 2018.[1]  (*Id.*)   In December 2018, before returning to work, Casterline experienced complications from surgery and needed an additional four weeks of recovery time.  (*Id.* at ¶ 20(l).)  Accordingly, Casterline sought additional leave, and her request was approved.  (*Id.*)

### B.     *Casterline Is Forced to Reapply for Her Job*

In January 2019—shortly before Casterline was expected to return from leave—Geisinger posted Casterline's position on their website as vacant and available.  (*Id.* at ¶ 20(m).)

At the end of the month, on January 28, Casterline was cleared to return to work.  (*Id.*)  Instead of allowing Casterline to return to her position, Geisinger informed her that "if she wanted to continue working for [Geisinger] she would have to apply for her own job."  (*Id.*)

When Casterline went to apply for her position, she learned that Geisinger had removed

---

[1] For purposes of background, the Court notes that Casterline took this leave under Geisinger's other medical leaves policy because she had taken leave under the Family Medical Leave Act ("FMLA") in 2017 and 2018 and had not accrued enough time to take additional FMLA leave by October 2018.  The Court does not rely on this fact in its analysis, as it is not pleaded in the Complaint.

the posting.  (*Id.* at ¶ 20(o).)  Casterline inquired about this change, and Geisinger responded that "management decided to remove the posting for her job and would not reopen it or otherwise permit her to return to her position." (*Id.*)

### C.     *Casterline Applies for Other Positions and Is Ultimately Terminated*

Geisinger advised Casterline that "she would have to apply and compete for another position and succeed in obtaining one within a limited period [i.e., by March 28, 2019] or be fired."  (*Id.* at ¶¶ 20(p), 20(s).)  Casterline applied for "numerous" positions but was not selected for any of them.  (*See id.* at ¶¶ 20(p)–(q).)  In the written notification, Geisinger told Casterline they were "moving on to consider other candidates" but never stated that she was unqualified for the positions she applied for or that she was not the most qualified candidate.  (*Id.* at ¶ 20(q).)

On March 28, Geisinger fired Casterline for having not obtained another position in the requisite period of time.  (*Id.* at ¶ 20(r); *see also id.* ("Defendants contend that Casterline was fired because she was not the 'most qualified' person for an opportunity within a limited period of time").)

### D.     *Geisinger's Most Qualified Applicant Policy*

Geisinger has a most qualified applicant policy, meaning that it hires only the applicant it believes to be the "most qualified" for the position.  (*See* Doc. No. 25-5 at 22.)  Specifically, the policy provides:  "Departments may recruit internally and externally in order to identify and hire the most qualified individual.  Preference to internal employees is required when the internal employee is the most qualified, as qualified as external applicants, or the situation is governed by the organization's Workforce Adjustment Plan and Summary Plan Description."[2]  (*Id.*)

---

[2] The policy may come into play when Geisinger employees, like Casterline, take non-FMLA medical leave.  (*See* Doc. No. 25-5 at 15 ("If an employee cannot return to work after they have exhausted their entitled to leave under this policy [the non-FMLA medical leaves of absence policy], Geisinger will engage in the interactive process with the employee to determine if additional leave would constitute a

###### E.     *Casterline Files a Charge with the EEOC and the EEOC Investigates*

On January 20, 2020, Casterline filed a Charge of Discrimination with the EEOC, alleging that Geisinger Wyoming Valley Medical Center retaliated and discriminated against her on the basis of her disability and age.  (Doc. No. 28-1.)

A little over a year later, on February 10, 2021, the EEOC issued a Letter of Determination (the "LOD"), which lists Casterline as the Charging Party and Geisinger Wyoming Valley Medical Center as the sole Respondent.  (*See* Doc. No. 25-3 (issuing a "determination as to the merits of the subject charge filed under the Age Discrimination in Employment Act of 1967, as amended (ADEA) and Title I of the [ADA], as amended").)  Following a "thorough examination and weighting of the evidence in the investigative file," the EEOC concluded that Geisinger Wyoming Valley Medical Center failed to provide Casterline with reasonable accommodations and discharged her in violation of the ADA.  (*Id.* at 1.)  The LOD states, "The evidence demonstrates that Respondent failed to hold Charging Party's position while she was on an approved medical leave of absence.  There is insufficient evidence that it was an undue hardship for the Respondent to hold Charging Party's position."  (*Id.*)  The LOD continues, "Respondent also failed to reassign Charging Party to a comparable vacant position and subsequently discharged her.  The ADA specifically lists reassignment as a form of reasonable accommodation."  (*Id.*)  Accordingly, the EEOC found that "the totality of the evidence support[ed] the conclusion that Respondent has a policy or practice of requiring disabled employees to compete for vacancies for reassignment."  (*Id.* at 1–2.)  As to the ADEA claim, the EEOC concluded that there was insufficient evidence of age discrimination.

---

reasonable accommodation.  Geisinger cannot guarantee that the employee's position will be held, although Geisinger will take reasonable efforts to hold the employee's position through the expiration of his or her leave.").

Two days later, on February 12, 2021, the EEOC issued an Amended Letter of Determination (the "ALOD"), which again lists Casterline as the Charging Party and Geisinger Wyoming Valley Medical Center as a respondent.  (Doc. No. 25-4, Doc. No. 28-1.)  However, this time, the EEOC added Geisinger Health/Geisinger Health System as a respondent.  (See Doc. No. 25-4 at 1.)  The EEOC also broadened its prior conclusion, stating, "The totality of the evidence supports the conclusion that Respondent maintained, and continues to maintain, a policy or practice that violates the ADA in that Respondent fails to provide reasonable accommodations, such as reassignment or other employment opportunities, and that Respondent unlawfully requires disabled persons to compete for reassignments or such opportunities."  (*Id.* at 2.)  In addition, the EEOC found, for the first time, "reasonable cause to believe that since at least January 1, 2018, and continuing through the present, Respondent has subjected a class of aggrieved persons" to an "ongoing pattern or practice of discrimination" under the ADA by, *inter alia*, "failing to engage in the interactive process sufficiently to provide reassignment or other employment opportunities; [and] failing to provide reasonable accommodations including reassignment or other employment opportunities, including failing to provide sufficient time/leave periods for such accommodations to be sought or provided."  (*Id.*)

On February 29, 2021, Geisinger moved for reconsideration. (Doc. No. 25-5 at 1.)  The EEOC denied the motion on May 17, 2021.  (Doc. No. 25-6 ("The EEOC will reconsider an EEOC determination where substantial new relevant evidence is presented that would warrant a change in the determination, or if the EEOC's decision was contrary to the law or facts.  We have considered the issues raised in your letter and the documents produced.  After review, we have decided that a change in the determination is not warranted, nor is the EEOC's decision contrary to the law or facts.").)

On June 1, 2021, the EEOC issued a Notice of Conciliation Failure, which states that conciliation efforts were unsuccessful.  (Doc. No. 28-1 at 12.)

\* \* \*

On September 29, 2021, the EEOC initiated this enforcement action against seven Geisinger Defendants, alleging violations of Titles I and V of the ADA.  (Doc. No. 1.)  Geisinger asked to bifurcate discovery[3] (*see* Doc. Nos. 10, 13), and the Court held a hearing on the bifurcation issue on February 17, 2022 (Doc. No. 16).  Declining to decide the bifurcation issue at the time (Doc. No. 18 at 46–47), the Court set a briefing schedule on Geisinger's prospective motion to dismiss (Doc. No. 17).  Geisinger filed its motion to dismiss (Doc. No. 24), and the Court stayed the case pending a ruling on the motion (Doc. No. 32).  The EEOC opposes the motion.  (Doc. No. 28.)  The Court held oral argument on the motion on September 7, 2022.

## II.     Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  "However an exception to the general rule is that a document *integral to or*

---

[3] Geisinger wants to conduct discovery in two phases.  In the first phase Geisinger proposes, the parties would complete discovery on the allegedly discriminatory practices, at the conclusion of which Geisinger could move for summary judgment on liability (i.e., whether Defendants' policies violate the ADA).  In the second proposed phase, the parties would conduct discovery on the individuals allegedly impacted by the policies.  (Doc. No. 10 at 9–10.)

*explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.* (quotation marks and alterations omitted). Similarly, the Court "may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Here, the Court considers the LOD and ALOD, which are matters of public record, and Geisinger's most qualified applicant policy, which is integral to the complaint and the EEOC's ADA claims. (*See* Doc. No. 1 at ¶ 20(u) (alleging that Geisinger discriminated against a class of aggrieved persons by "compelling compliance with the 'most qualified' policy"); *id.* at ¶ 20(s) ("Defendants contend that Casterline was fired because she was not the 'most qualified' person for an opportunity within a limited period."); *id.* at ¶ 21(c) ("Defendants engaged in unlawful interference by: refusing to allow Casterline to return to her position, or any other position with Defendants, unless she 'applied' and was the 'most qualified' for an employment opportunity; compelling Casterline be the 'most qualified' candidate for an employment opportunity within a reasonable time or be fired.").) *See EEOC v. Bimbo Bakeries USA, Inc.*, Civil No. 1:09-CV-1872, 2010 WL 598641, at *1 n.2 (M.D. Pa. Feb. 17, 2010) ("In deciding a motion to dismiss, district courts are permitted to consider the charge filed with the EEOC, and related EEOC documents, including the letter from the EEOC summarizing its investigation, the right to sue letter, and intake questionnaire. These are either undisputed documents referenced in the complaint or are central to Plaintiff's claim, or are information which is a matter of public record. The court may consider these documents without converting the defendant's motion to dismiss to one for summary judgment."); *see also EEOC v. U.S. Steel Corp.*, Civil Action No. 10-1284, 2012 WL 3017869, at *11 (W.D. Pa. July 23, 2012) ("In evaluating a Rule 12(b)(6)

motion to dismiss, the Court is limited to considering the allegations in the Amended Complaint (viewed in the light most favorable to the plaintiff), exhibits attached to the Amended Complaint, matters of public record, and documents that form the basis of a claim.").

## III.   Discussion

In their motion to dismiss, Defendants argue that:

- The EEOC did not satisfy administrative prerequisites prior to bringing suit.  Namely,

  - The ALOD was only directed to two Geisinger Defendants and as such, the five Geisinger Defendants not named in the ALOD should be dismissed.

  - The EEOC did not make any findings as to retaliation and interference in the ALOD and therefore the Complaint is beyond the scope of the ALOD.[4]

- The EEOC does not plead a plausible claim under Title I of the ADA because it fails to allege that Casterline was a qualified individual with a disability.

- The EEOC fails to adequately plead a retaliation claim under Title V of the ADA because it does not allege that Casterline engaged in protected activity or that there was a causal connection between the protected activity and her termination.

- The EEOC fails to adequately plead an interference claim under Title V of the ADA because it does not plead intent.

- The EEOC has insufficiently identified the class of aggrieved persons.

- Claims by class members based on activity that occurred more than 300 days before Casterline filed her charge are time-barred and the continuing violation doctrine does not apply.

- The most qualified applicant policy is lawful.

(Doc. Nos. 25, 30.)  The Court addresses each contention in turn below.

---

[4] Defendants also argue that the EEOC did not investigate any "pattern and practice" claims.  (Doc. No. 25 at 16, 18–21.)  However, the Court need not consider this argument because the EEOC acknowledges that it is not bringing a pattern or practice claim.  (Doc. No. 28 at 10–11 n.1.)

**A.      At This Stage, the EEOC Has Pleaded that It Satisfied Some, but Not All, Administrative Prerequisites**

### 1. Background

The ADA incorporates, by reference, Section 706 of Title VII of the Civil Rights Act of 1964.  42 U.S.C. § 12117(a); *see also U.S. Steel Corp.*, 2012 WL 3017869, at *3.  Therefore, under Section 706, the EEOC may sue on behalf of one or more persons aggrieved by an unlawful employment practice.  42 U.S.C. § 2000(e)–5(f)(1); *see also U.S. Steel Corp.*, 2012 WL 3017869, at *3.  "When EEOC sues in its own name, it may litigate only those claims which have been subjected to the complete administrative processing required by Title VII."  *U.S. Steel Corp.*, 2012 WL 3017869, at *10 (cleaned up).

Before the EEOC can initiate suit, it is required to: "(1) receive a charge from an individual and notify the employer of the charge; (2) investigate that charge and related charges; (3) determine that reasonable cause exists to believe that discrimination occurred; and (4) attempt conciliation of all charges against the employer."  *Id.* (citing 42 U.S.C. § 2000(e)–5(b)).  "Every step in the statutory scheme, including notice, investigation, determination and conciliation is intended to be a condition precedent to the following step and, ultimately, to suit."  *Id.* (cleaned up).

### 2. Other Geisinger Defendants

As noted, only *three* Geisinger entities were named as Respondents in the ALOD— Geisinger Wyoming Valley Medical Center and Geisinger Health/Geisinger Health System.[5]

---

[5] Defendants argue that the ALOD was limited to two of the seven named Defendants:  Geisinger Wyoming Valley Medical Center and Geisinger Health.  But because the ALOD technically lists "Geisinger Health/Geisinger Health System" as a Respondent and the Complaint names Geisinger Health and Geisinger Health System Foundation d/b/a Geisinger Health System as defendants, the Court finds that the EEOC has exhausted and provided adequate notice to *both* Geisinger Health and Geisinger Health System.

(*See* Doc. No. 25-3.)  But the Complaint names *seven* Geisinger entities as Defendants.  (*See* Doc. No. 1.)  The four entities that are named, for the first time, in the Complaint are Geisinger Clinic, Geisinger Health Plan, Geisinger Medical Center, and Geisinger Holy Spirit Hospital. Defendants argue that the claims against these Defendants must be dismissed because they were not identified in the LOD or ALOD.  (Doc. No. 25 at 22–23.)  The EEOC counters that these Defendants received notice because the Complaint pleads that all of the Geisinger entities are either a single employer or integrated enterprise.  (Doc. No. 28 at 19–21; *see also* Doc. No. 1 at ¶ 15 ("At all relevant times, Geisinger Health/Geisinger Health System and its affiliates, subsidiaries, and entities, including but not limited to the other named Defendants, have operated in such a manner to constitute an integrated enterprise or a single employer.").)

"A Title VII action ordinarily may be brought only against a party previously named in an EEOC action."  *Schafer v. Bd. of Pub. Educ.*, 903 F.2d 243, 251 (3d Cir. 1990); *see also Smith v. Del. River Stevedores*, Civil Action No. 07-1864, 2008 WL 4890135, at *3 (E.D. Pa. Nov. 10, 2008) ("To properly exhaust administrative remedies with respect to a particular defendant, that defendant must ordinarily have been named in the EEOC's charge.").

"[T]he 'single employer' theory[ ] is used to determine whether 'two nominally distinct companies' should be treated as a single entity for purposes of antidiscrimination laws." *Anderson v. Finley Catering Co.*, 218 F. Supp. 3d 417, 422 (E.D. Pa. 2016) (quoting *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 84 (3d Cir. 2003)).  Courts find that separate entities constitute a single employer if one of the following three circumstances is met:  (1) where the company splits itself into entities with fewer than fifteen employees intending to evade Title VIII's reach, (2) where a parent company has directed the subsidiary's discriminatory act of which the plaintiff is complaining; and (3) where "two or more entities' affairs are so

interconnected that they collectively caused the alleged discriminatory practice."  *Nesbit*, 347 F.3d at 85–86.

The EEOC argues that it has alleged enough to proceed under the second prong of *Nesbit*: that Geisinger Health and/or Geisinger Health System, the parent company or companies, directed the Geisinger subsidiaries to engage in a discriminatory practice.  (Doc. No. 28 at 20–21.)  The Court disagrees—the EEOC's allegations to this end are entirely conclusory.

The EEOC alleges that "[a]t all relevant times, Geisinger Health/Geisinger Health System has coordinated, supervised, and controlled the activities of its affiliates, subsidiaries, and entities, concerning various employment matters such as granting or denying accommodations like medical leave, hiring, rehiring, termination, and requiring those entities and persons employed or seeking employment at their worksites to comply with Geisinger Health/Geisinger Health System employment policies[.]"  (Doc. No. 1 at ¶ 14.)  Critically, this does not tell us *anything* about whether Geisinger Health or Geisinger Health System directed the Geisinger subsidiaries to act in a *discriminatory* manner.  To the extent the EEOC wishes to argue that applying the most qualified applicant policy to those returning from medical leave is a discriminatory act, and that Geisinger Health and/or Geisinger Health System required the subsidiaries to implement that policy, it should have pleaded facts saying as much.  But it did not.  Rather, it pleads only generalities (i.e., how Geisinger Health/Geisinger Health System controlled "various employment matters" and required compliance of "employment policies").

The EEOC's other allegations fare no better.  (*See id.* at ¶ 20(b) ("Geisinger Health/Geisinger Health System has at all relevant times been a corporate parent to, and has coordinated and supervised the activities of, all Geisinger Health/Geisinger Health System affiliates, subsidiaries, and entities, including but not limited to Defendants Geisinger Wyoming

Valley Medical Center, Geisinger Health Clinic, Geisinger Health Plan, Geisinger Medical Center, and Geisinger Holy Spirit Hospital."); *id.*("Geisinger Health/Geisinger Health System maintained, and continues to maintain, employment policies that apply to its subsidiary corporate entities, which include or have included but are not limited to Defendants Geisinger Wyoming Valley Medical Center, Geisinger Clinic, Geisinger Health Plan, Geisinger Medical Center, and Geisinger Holy Spirit Hospital; such policies governed all such Geisinger entities or facilities and persons working at those entities or facilities[.]").)  Similarly, these general statements, which are lacking in any factual specificity, do not shed any light on *how* Geisinger Health/Geisinger Health System directed the Geisinger subsidiaries' alleged *discriminatory* acts.

Because the EEOC has failed to allege that Defendants were a single employer under the second prong of the *Nesbit* test, we consider whether it can satisfy the first or third prongs.  It cannot.  As to the first prong, there is no allegation that Defendants split themselves into entities of less than fifteen employees each to evade the reach of the ADA/Title VII.  To the contrary, the EEOC alleges that each Defendant continuously employed at least fifteen employees.  (*See* Doc. No. 1 at ¶¶ 4–9, 11.)  As for the third prong, courts consider "the degree of operational entanglement—whether operations of the companies are so united that nominal employees of one company are treated interchangeably with those of another."  *Id.* at 87.  The relevant operational factors include:

> (1) the degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions (e.g., hiring and personnel matters);
>
> (2) whether they present themselves as a single company such that third parties dealt with them as one unit;
>
> (3) whether the parent company covers the salaries, expenses, or losses of its subsidiary; and

(4) whether one entity does business exclusively with the other.

*Id.*

Here, the Complaint is devoid of facts to plausibly allege that Defendants' operations are so entangled that "nominal employees of one company are treated interchangeably with those of another." Although the EEOC pleads that Geisinger Health/Geisinger Health System is the "corporate parent" of the other Geisinger Defendants, nowhere in the Complaint does the EEOC allege whether the entities share the same management (e.g., officers and directors) or business functions (e.g., hiring and personnel matters). The bare allegations that Geisinger Health/Geisinger Health System "controlled and supervised the activities of" its subsidiaries and maintained employment policies that applied to all Geisinger entities do not suffice. Moreover, the Complaint includes *no* allegations from which the Court could plausibly infer that Defendants present themselves as one entity such that third parties treat them as one unit; that Geisinger Health/Geisinger Health System covers the salaries, expenses, or losses of the other Defendants' employees; or that Defendants exclusively do business with one another.

The two cases on which the EEOC relies are inapposite, as the plaintiffs in those cases set forth far more detailed allegations. *See Lloyd-Bragg v. Axis Ins. Co.*, No. 20-8559 (SDW) (AME), 2021 WL 2010580, at *3 (D.N.J. May 20, 2021) (finding that the plaintiff adequately alleged facts supporting the assertion that the defendants "acted as a single employer" where she pleaded that the defendants shared common leadership and their principal place of business, logo, marketing materials, and internal documents such as employee handbooks, policies, and conditions of employment; that her direct and second-level supervisors were held out as employees of the parent company, particularly in press releases to investors; and that she was instructed to hold herself out as an employee of the parent company, including in her email

signature); *Dixon v. Allegheny Intermediate Unit 3*, Civil Action No. 17-1679, 2018 U.S. Dist.
LEXIS 88342, at *8–9 (W.D. Pa. May 24, 2018) (finding that the plaintiff demonstrated the
likelihood of common management and operations, as well as centralized control of human
resources, sufficient to give rise to a reasonable inference that the defendants, MissionOne and
S4Teachers, qualified as a single employer where he averred that he received staffing
assignments through MissionOne and had been directed to contact the MissionOne human
relations department and that the two companies shared the same phone numbers, websites to
obtain available assignments and payroll information, general counsel, corporate staff, and
human resources staff).

Likewise, the Court is unpersuaded by the EEOC's position that it is premature to decide
the issue at the motion to dismiss stage.  None of the cases the EEOC cites to support that
contention are precedential, and each includes additional detail beyond what the EEOC has
pleaded here.  *See Buka v. Allegheny County*, 2:20-CV-00669-RJC, 2021 WL 1197343, at *4–5
(W.D. Pa. Mar. 30, 2021) (denying motion to dismiss where the plaintiff alleged that "[a]t all
relevant times, the County and the County Council . . . both had and exercised the authority to
hire, fire, transfer and promote employees, including Buka; to set conditions of employment,
including compensation, benefits, and hours; to control employee records, including payroll,
insurance, and taxes; and to monitor and attempt to comply with obligations arising under state
and federal employment law"); *Anderson v. Finley Catering Co.*, 218 F. Supp. 3d 417, 422–23
(E.D. Pa. 2016) (denying motion to dismiss where the plaintiff pleaded that the two defendants,
Finley Catering and Union Trust, were both owned by the same individual, "share[d] common
management and operations, and ha[d] centralized control of labor relations and common
financial controls"); *Hartman v. Chestnut Hill Coll.*, No. Civ.A. 00-1400, 2000 WL 1016655, at

*1–2 (E.D. Pa. July 7, 2000) (denying defendant Chestnut Hill College's motion to dismiss where the plaintiff alleged that she was removed from her position at the request of Chestnut Hill College and that Chestnut Hill College caused her termination with defendant Follett and/or Follett Corporation because "th[o]se allegations, when taken in a light most favorable to plaintiff, could lead a reasonable mind to believe that defendant Chestnut Hill College was in fact a single employer or joint employer [with the other defendants]").

In making this determination, the Court does not consider Geisinger's other policy regarding leaves of absence, which was attached to Geisinger's motion for reconsideration at the agency level (Doc. No. 25-5) and which the EEOC argues illustrates the control Geisinger Health/Geisinger Health System exercises over the other Defendants (Doc. No. 28 at 21 n.2 ("Geisinger's own extra-Complaint submissions also evidence the control Geisinger Health/Geisinger Health System exercises over the other Defendants). As the Court has already noted, *see supra* n.1, this document is not integral to or relied upon in the Complaint, nor does it form the basis for Plaintiffs' claims. Here, the Complaint is replete with references to the most qualified applicant policy (*see, e.g.*, Doc. No. 1 at ¶ 20(u) (alleging Geisinger discriminating against Casterline and a class by "compelling compliance with the 'most qualified' policy"); *id.* at ¶ 22(c) (alleging that Defendants "engaged in unlawful interference by refusing to allow Casterline to return to her position, or any other position with Defendants, unless she 'applied' and was the 'most qualified' for an employment opportunity" and "compelling [her] to be the 'most qualified' candidate for an employment opportunity within a limited period or be fired"), but it does not refer to the other leaves of absence policy.

Because Geisinger Clinic, Geisinger Health Plan, Geisinger Medical Center, and Geisinger Holy Spirit Hospital were not named in the LOD or ALOD, and because the EEOC

has not sufficiently alleged that Defendants constituted a single employer, the Court dismisses the Complaint against those four Defendants.[6]

### 3. **Retaliation and Interference Claims**

Next, the Court turns to Defendants' argument that the Complaint exceeds the scope of the ALOD because neither the retaliation nor the interference claim was mentioned in the ALOD.

In the ALOD, the EEOC stated that the "[t]he evidence demonstrate[d] that Respondent failed to hold Charging Party's position while she was on approved medical leave of absence" and failed to reassign her "to a comparable position and subsequently discharged her." (Doc. No. 25-4 at 1.) Then, the EEOC found that "[t]he totality of the evidence support[ed] the conclusion that Respondent maintained, and continues to maintain, a policy or practice that violates the ADA in that Respondent fails to provide reasonable accommodations, such as reassignment or other employment opportunities, and that Respondent unlawfully requires disabled persons to compete for reassignments or such opportunities." (*Id.* at 2; *see also id.* at 1 ("A thorough examination and weighting of the evidence in the investigative file . . . supports the conclusion that Respondent failed to provide reasonable accommodations to Charging Party and discharged her in violation of the ADA.").) Nowhere in the ALOD does the EEOC mention retaliation or interference by name. (*See generally id.*) Nor does it even reference the Title of

---

[6] Relying on a Northern District of Illinois case, the EEOC asserts that because Geisinger did not respond to the EEOC's single employer theory in its reply brief, Geisinger waived its argument that the Geisinger entities not named in the ALOD should be dismissed as Defendants. (Doc. No. 31 at 5 (citing *In re Honey Transshipping Litig.*, 87 F. Supp. 3d 855, 868 (N.D. Ill. 2015)).) We are unpersuaded. First, the EEOC fails to cite binding precedent or even persuasive authority within this Circuit. Second, the Court notes that Defendants' reply brief was subject to a page limit of ten pages, in accordance with Judge Marston's Policies and Procedures, and therefore could not have addressed all of the issues discussed in the EEOC's response brief. At oral argument, Geisinger explained it did not respond to the EEOC's argument in its reply given the page limit and that, in any event, the EEOC's allegations as to the integrated and single employer theories were conclusory. (Doc. No. 36 at 27:12–28:5.)

the ADA that encompasses retaliation and interference claims—which is *different* from the Title that governs claims for failure to accommodate and discrimination.   (*See id.* (only mentioning Title I of the ADA, and not Title V).)   *Compare* Title I of the ADA, 42 U.S.C. § 12112(a) and (b) (failure to accommodate and discrimination), *with* Title V of the ADA, 42 U.S.C. § 12203(a) and (b) (retaliation and interference).

The EEOC asserts that its ALOD is nonetheless sufficient because it put Defendants on notice of the conduct at issue (i.e., failure to reassign, forcing employees to compete, and discharging them for failing to obtain another position in a limited window of time) and that because it identified the *conduct* in the ALOD, it need not identify each *claim* it intended to bring based on that conduct.   (*See* Doc. No. 36 at 59:13–22 ("That is a requirement that EEOC tell the employer what conduct it engaged in that was harmful.   It is not a requirement that the EEOC tell the employer all of the claims that EEOC might bring in subsequent litigation or all of the theories of relief under which EEOC may sue the employer for that conduct that violates the statute.   So even if retaliation wasn't within the definition of discrimination under the ADA, I would still argue that EEOC's LOD was sufficient because EEOC's LOD identified the conduct that Geisinger engaged in that violated the ADA."); *id.* at 60:3–6 ("The Court: So your position is that the EEOC does not have an obligation to put defendants on notice of claim[s] just as to conduct?  [The EEOC]: That's right, Your Honor."); *see also id.* at 66:2–12 ("You know, first, they knew the conduct and, you know, so they could have worked to change the conduct in the conciliation process and they also, you know, knew the conduct and they knew that it was identified as having harmed a class of persons at all the facilities.   And so, you know, that, I think, provides a basis for resolving the issue, resolving the conduct, and providing relief to the person that's harmed and that could actually be done without knowing all of the theories of relief

that EEOC might pursue in litigation, all of the specific claims that EEOC might pursue in litigation.").)

As both parties recognize, judicial review of the EEOC's conciliation efforts (which encompasses notice to employers) is extremely limited. *See Mach Mining, LLC v. EEOC*, 575 U.S. 480, 495 (2015) (emphasizing that the scope of judicial review of administrative action "is narrow"). In *Mach Mining*, the Supreme Court explained the "proper scope of judicial review" as to whether the EEOC satisfied its statutory conciliation obligation was "relatively barebones," and that courts should determine only whether the EEOC has satisfied two requirements. The EEOC must (1) "inform the employer about the specific allegation, as the Commission typically does in a letter announcing its determination of reasonable cause," and (2) "try to engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory practice." *Id.* at 494. Proper notice "describes both what the employer has done and which employees (or what class of employees) have suffered as a result." *Id.* The Court underscored that "judicial review of these [two] requirements (and nothing else) ensures that the Commission complies with" its statutory obligations. *Id.* The Court also explained that a sworn affidavit from the EEOC, representing that it fulfilled those two obligations but that its efforts failed, "will usually suffice to show that it has met the conciliation requirement." *Id.* "If, however, the employer provides credible evidence of its own, in the form of an affidavit or otherwise, indicating that the EEOC did not provide the requisite information about the charge or attempt to engage in a discussion about conciliating the claim," a court must then "conduct the factfinding necessary to decide that limited dispute." *Id.* at 495.

Here, the EEOC contends that *Mach Mining* requires no more than what the EEOC did in

this case:  outlining the conduct that formed the allegedly discriminatory practice in the ALOD

and engaging in discussion with Geisinger about said conduct.  (Doc. No. 36 at 59:13–21, 60:3–

6, 66:2–12.)  In contrast, Geisinger argues that the EEOC's interpretation of *Mach Mining* is

convoluted because it is impossible for an employer to correct the unlawful employment practice

if the claims are not identified.  (*See id.* at 77:9–15 ("[I]f it's meant to correct an unlawful

employment practice, right, before pre-suit, . . . how can you not identify the claims that are

going to be coming in that suit?").)

 The Court acknowledges that, on one hand, the language in *Mach Mining* might suggest

that the EEOC must seek to conciliate "claims," not merely "conduct."  *See Mach Mining*, 575

U.S. at 494 ("If, however, the employer provides credible evidence of its own, in the form of an

affidavit or otherwise, indicating that the EEOC did not provide the requisite information about

the charge or attempt to engage in a discussion about conciliating the *claim*, a court must conduct

the factfinding necessary to decide that limited dispute." (emphasis added)); *id.* ("Nothing in

Title VII withdraws the courts' authority to determine whether the EEOC has fulfilled its duty to

attempt conciliation of *claims*." (emphasis added)); *see also EEOC v. MJC, Inc.*, 306 F. Supp. 3d

1204, 1217 (D. Haw. 2018) ("The documents establish that the EEOC told Defendants 'about the

claim.'" (quoting *Mach Mining*, 575 U.S. at 488)).

 On the other hand, the Court notes that courts have broadly interpreted the notice

requirement as set forth in *Mach Mining* (albeit in slightly different contexts).  *See, e.g.*, *EEOC v.

Amsted Rail Co.*, 169 F. Supp. 3d 877, 885 (S.D. Ill. 2016) (finding the notice requirement was

satisfied even where "the relevant documents" were "notably devoid of specifics," "imprecis[e],"

and "ambigi[ous]," including by failing to explicitly identify that the plaintiff's disability was

carpel tunnel syndrome, because the letter of determination stated that the EEOC "believed [the

employer] had discriminated against a class of chipper applicants based on the outcome of a

nerve conduction test and that this constituted discrimination on the basis of disability" and the

EEOC previously said its "investigation concerned people who were not hired because of a

record of carpel tunnel syndrome or because they failed a nerve conduction test").

Although a close call, the Court declines to decide whether the retaliation and

interference claims exceed the scope of the ALOD at the motion to dismiss stage.  In declining to

decide the issue at this early stage, the Court emphasizes that Geisinger has not identified a

single case in which this same issue was ruled on at the motion to dismiss stage.[7]  (*See* Doc. No.

25 at 21 (citing *EEOC v. Bloomberg*, 967 F. Supp. 2d 802 (S.D.N.Y. 2013), which was decided

at summary judgment); Doc. No. 36 at 20:19–21:3 ("I have not seen a case where this was

brought up in a motion to dismiss stage that addressed that specific argument that we're making

. . . I have not seen a similar case where under those facts, a determination was made one way or

the other.").)  And the Court notes that the ALOD *did* allege the conduct underlying the

---

[7] Geisinger repeatedly states that it is not challenging the sufficiency of the investigation.  (*See, e.g.*, Doc. No. 36 at 10:22–25 ("I'm not challenging the sufficiency of their investigation.  I've told you that left and right . . . We are not."); *id.* at 16:3–4 ("And, again, I reemphasize we are not challenging the sufficiency of the investigation.").)  But by arguing that the EEOC failed to investigate whether the most qualified policy's application to Casterline was unlawful, Geisinger *is* challenging the sufficiency of part of the EEOC's investigation, not merely whether *an* investigation occurred.  *See EEOC v. Sterling Jewelers Inc.*, 801 F.3d 96, 101 (2d Cir. 2015) ("*Mach Mining* did not address the EEOC's obligation to investigate, but we conclude that judicial review of an EEOC investigation is similarly limited:  The sole question is whether the EEOC conducted an investigation. . . [C]ourts may not review the *sufficiency* of an investigation; only whether an investigation occurred."); *id.* at 103 ("The nature and extent of an EEOC investigation into a discrimination claim is a matter within the discretion of that agency.  For a court to second guess the choices made by the EEOC in conducting an investigation 'is not to enforce the law Congress wrote, but to impose extra procedural requirements.  Such judicial review extends too far.'" (quoting *Mach Mining*, 575 U.S. at 492)).  Here, Geisinger's claim that the notice was insufficient because the EEOC did not have any information to support its allegations (i.e., that the most qualified policy as applied to Casterline was unlawful) before issuing the ALOD is a challenge of the sufficiency of the investigation and cannot be considered.  (Doc. No. 36 at 16:6–11 ("[What] Your Honor can do is say whether or not we had notice of the allegations that were being made against us and who they were against, and the fact of the matter is there was no part of an investigation that was done prior to the issuance of the amended Letter of Determination *as to the application of that policy*." (emphasis added)).)

retaliation and interference claims—namely, the alleged discriminatory practice Geisinger

maintained (failing to hold Casterline's position open and failing to reassign her to a comparable

position and forcing her to compete for reassignment pursuant to the most qualified applicant

policy) and what Casterline suffered as a result (termination).

* * *

For these reasons, the Court finds that the EEOC failed to exhaust its administrative

remedies as to Defendants Geisinger Clinic, Geisinger Health Plan, Geisinger Medical Center,

and Geisinger Holy Spirit Hospital and dismisses those defendants.  However, we decline to

decide whether the Complaint exceeded the scope of the ALOD as to the retaliation and

interference claims at this stage.

### B.     The EEOC Has Not Pleaded that Casterline Was Disabled

Next, the Court addresses Defendants' argument that the EEOC failed to plead that

Casterline was a qualified individual with a disability.

"[E]ven when pursuing class claims, the EEOC must plausibly allege that at least one

charging party is a 'qualified individual' who is 'disabled.'"  *EEOC v. Prestige Care, Inc.*, Case

No. 1:17-CV-1299 AWI SAB, 2018 WL 3473964, at *2 (E.D. Cal. July 17, 2018).  Title I of the

ADA prohibits discrimination "against a qualified individual on the basis of disability in regard

to . . . the hiring, advancement, or discharge of employees . . . and other terms, conditions, and

privileges of employment."  42 U.S.C. § 12112(a).  To assert a prima facie case of disability

discrimination, the EEOC must plead that Casterline (1) is disabled within the meaning of the

ADA; (2) is otherwise qualified for the job, with or without reasonable accommodations; and

(3) was subjected to an adverse employment decision as a result of discrimination.  *See Sally-

Harriet v. N. Children Servs.*, Civil Action No. 17-4695, 2019 WL 1384275, at *4 (E.D. Pa. Mar.

26, 2019) (citing *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010)).  As to the

first element, an individual is considered disabled if he or she has (1) "a physical or mental impairment that substantially limits one or more major life activities;" (2) "a record of such impairment;" or (3) is "regarded as having such an impairment."  42 U.S.C. § 12102(1).

The EEOC proceeds under the first and second definitions, alleging that Casterline "has an impairment, including recurring rotator cuff injuries and complications/impairments flowing from such injuries, that substantially limits major life activities, and/or has a record of such impairments."  (Doc. No. 1 at ¶ 20(a).)  We address each in turn below.

First, however, we address Geisinger's argument that Casterline is not disabled because she was released to return to work.  (Doc. No. 25 ("There are no factual allegations plausibly supporting the conclusion that she was impaired as a result of her injury or surgery at the time she was released to return to work.  In fact, the EEOC acknowledges Casterline was released to return to work, and, thus, no longer disabled."); Doc. No. 36 at 21:4–10 ("You have a factual allegation she's released to return to work.  So the Court can certainly . . . you can make the determination that based upon that, they're not disabled when the reassignment decisions happen subsequent to that.").)  During oral argument, the EEOC disagreed, arguing that just because Casterline was released to return to work does not automatically mean that she was no longer disabled.  (Doc. No. 36 at 37:14–25 ("Released to return to work doesn't mean you're not disabled anymore.  People work with disabilities all the time . . . The allegations do not say that she was recovered, you know, the allegations do not say she didn't have an injury anymore, that she didn't have a disability anymore.  They simply say she was released to return to work.").)  Taking this allegation as true and in the light most favorable to the Plaintiff, the Court agrees with the EEOC that Casterline's release to return to work is not dispositive of the disability issue.  But regardless, for the reasons discussed below, the Court finds that the EEOC has failed to

plead facts showing that the Casterline was disabled at the time she was released to return to work.

### 1. The EEOC Has Failed to Plead that Casterline's Impairment Substantially Limits One or More Major Life Activities

Under the first definition (actual disability), a plaintiff must plead that she has a physical or mental impairment and that the impairment substantially limits one or more major life activities. A physical or mental impairment is defined as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory, cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630(2)(h)(1). The EEOC pleads that Casterline suffered from recurring rotator cuff injuries and complications. (Doc. No. 1 at ¶ 20(a).) For purposes of surviving a motion to dismiss, the Court is satisfied that the EEOC has pleaded that Casterline suffered from a physical impairment.

The Court now must consider whether the EEOC has alleged facts sufficient to show that Casterline's impairment substantially limited one or more major life activities. "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." § 12102(2). Here, the EEOC merely pleads that Casterline's impairment "substantially limits major life activities." ((Doc. No. 1 at ¶ 20(a).) This is an entirely conclusory allegation and is insufficient to withstand a motion to dismiss. *See Onely v. Redner's Mkts., Inc.*, Civil Action No. 21-4785, 2022 WL 1773606, at *5 (E.D. Pa. June 1, 2022) ("A complaint based on actual disability . . . need not provide detail about the life activities affected by the alleged disability or about the nature of the plaintiff's substantial limitations. However, it must plausibly suggest that that the plaintiff has substantial

limitations due to a disability . . . Plaintiff has not alleged that her conditions restrict her activity at all."); *Hector v. Blue Cross of Ne. Pa.*, Civil Action No. 3:16-0293, 2016 WL 4990397, at *4 (M.D. Pa. Sept. 19, 2016) ("[W]hile it is not required that the plaintiff plead the specifics of the life activity affected by her disability or detail the nature of her substantial limitations, the plaintiff has not alleged <u>any</u> facts that would plausibly suggest a substantial limitation in a major life activity.  The plaintiff simply alleges the legal conclusion that she is a 'qualified individual with a disability' because she is substantially limited in one or more major life activities, and that she is successfully being treated for an anxiety disorder.  Nowhere in her complaint does the plaintiff allege facts to support the inference that she is substantially limited in any major life activity."); *Karipidis v. ACE Gaming LLC*, Civil Action No. 09-3321, 2010 WL 2521209, at *8 (D.N.J. June 9, 2010) ("By simply stating that the plaintiff lives with an injury, illness or impairment without alleging that the impairment substantially limits a major life activity creates a defect in the Complaint.  The Court acknowledges that Karipidis does not need to set forth a detailed description of the limitations his alleged disability presents; however, he still must provide facts that state a claim of disability under the law."); *cf. Sally-Harriet*, 2019 WL 1384275, at *6 ("Plaintiff's Amended Complaint alleges that her abdominal issues, stomach issues, gastrointestinal issues, and gallbladder issues, have 'at times, limited her ability to perform some daily life activities, including but not limited to working, sleeping, bending, walking, breathing, controlling bowel movements, and performing manual tasks . . .'  However, Plaintiff does not include any facts explaining how these activities are limited, let alone, how they are substantially limited, which she is required to do.  Plaintiff's conclusory statements, without any factual support, are not sufficient.").

The EEOC's failure to allege that Casterline was "substantially limited" *at the time she*

*was released to return to work (and ultimately terminated)* also proves fatal to its discrimination

claim based on an actual disability. *See Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp.

2d 502, 514–15 (E.D. Pa. 2012) (dismissing disability discrimination claim because the plaintiff

"failed to adequately plead the existence of an impairment that would rise to the level of

'substantially' limiting one or more of [his] major life activities" where the plaintiff pleaded

"that the temporary pain and medication post-surgery hindered—not substantially limited—his

ability to stay awake and alert two weeks after the surgery" and that "two weeks after the

surgery, he had difficulty moving and driving, but was able to come to work" but made "no

allegations regarding his physical condition at the time of termination").

  The cases the EEOC cites do not move the needle. *Fowler v. UPMC Shadyside*, 578 F.3d

203 (3d Cir. 2009) is distinguishable because the plaintiff in that case pleaded *at least some facts*

from which the court could infer she was substantially limited in a major life activity.  Namely,

the plaintiff pleaded that she was limited to sedentary work, which the Third Circuit found

"plausibly suggest[ed] that she might be substantially limited in the major life activity of

working." *Id.* at 213.  In contrast, the EEOC has failed to plead *any* facts that suggest Casterline

was substantially limited in any major life activity at the time she was released to return to work.

And the EEOC admits that Casterline was released to return to work without any limitations, so

unlike the Third Circuit in *Fowler*, we cannot infer that she was substantially limited in the major

life activity of work.  (*See* Doc. No. 36 at 38:4–6 ("I believe that's correct, she was released

without limitations, but, again, that still doesn't in itself mean she didn't have limitations relating

to her job at that time.").)  And *Martinez v. UPMC Susquehanna*, 986 F.3d 261 (3d Cir. 2021)

and *Donnelly v. Capital Vision Services, L.P.*, Civil Action No. 20-4189, 2021 WL 3367271

(E.D. Pa. Aug. 2, 2021) are likewise inapposite. *See Martinez*, 986 F.3d at 266–67 (finding that

the plaintiff pleaded a plausible age discrimination claim where he pleaded that his replacement was "significantly younger"); *Donnelly*, 2021 WL 3357271, at *3 (finding that the plaintiff adequately pleaded that her employer "regarded her" as disabled).

Accordingly, the Court finds that the EEOC has not pleaded that Casterline had an actual disability at the time she was released to return to work and/or terminated.

### 2. The EEOC Has Failed to Plead that Casterline Has a Record of an Impairment

The EEOC has not pleaded that Casterline had a record of an impairment (the second definition) either. An individual has a record of a disability if she has a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment. 29 C.F.R. § 1630.2(k)(1). "Congress included 'record of' disability claims in the ADA to ensure that employees could not be subjected to discrimination because of a recorded history of a disability." *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 436–37 (3d Cir. 2009). Here, the EEOC's *only* allegation in the Complaint concerning a record of an impairment is conclusory. (*See* Doc. No. 1 at ¶ 20(a) (alleging that Casterline "had a record of such an impairment").) This conclusory allegation fails to sufficiently plead that Geisinger terminated Casterline because she had a record of having an impairment that substantially limited a major life activity. *See Koller*, 850 F. Supp. 2d at 514 (dismissing disability discrimination claim where the plaintiff made "no allegation that his termination was the result of any record of impairment"); *Nguyen v. Quick Check, Store No. 129*, Civil Action No. 12-cv-3300 (JAP), 2013 WL 6623923, at *4 (D.N.J. Dec. 16, 2013) (dismissing the plaintiff's disability discrimination claim where the plaintiff "made no allegation that her termination was the result of any record of her alleged impairment").

\* \* \*

Because the EEOC failed to plead that Casterline had an actual disability or a record of an impairment, the Court grants Geisinger's motion to dismiss the disability discrimination claim.  For the same reasons, the Court also dismisses the failure to accommodate claim.  *See Sally-Harriet*, 2019 WL 1384275, at *5 ("To state a claim for failure to accommodate under the ADA, Plaintiff must allege that:  (1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job; and (3) she has suffered an adverse employment decision as a result of discrimination . . . As we noted above, Plaintiff has failed to allege that she suffers from a disability under the ADA.  Therefore, her claim for failure to accommodate also fails.").

### C.     The EEOC Fails to Plead a Retaliation Claim

The Court now turns to Geisinger's argument that the EEOC has failed to plead an ADA retaliation claim.  To state a prima facie case of ADA retaliation, a plaintiff must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence that (1) he engaged in protected activity; (2) his employer took an adverse employment action against him; and (3) there was a causal connection between the protected activity and the adverse employment action.  *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  Here, Geisinger challenges the first and third elements.  We address each in turn.[8]

### 1.   The EEOC Has Pleaded that Casterline Engaged in Protected Activity

To state a prima facie case of disability discrimination, a plaintiff must plead that she

---

[8] In conducting our analysis below, the Court is mindful of the Third Circuit's instruction that "for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss."  *Id.* at 788; *see also id.* at 789 ("A *prima facie* case is 'an evidentiary standard, not a pleading requirement,' and hence is 'not a proper measure of whether a complaint fails to state a claim.'" (citation omitted)).  Nonetheless, the EEOC still must plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements," *id.*, and, for the reasons discussed below, it has not done so with respect to causation.

engaged in protected activity.  *Connelly*, 809 F.3d at 789.  In the Complaint, the EEOC pleads a

myriad of legal conclusions baldly stating that Casterline engaged in protected activity, without

identifying what said protected activity was and what accommodations she sought.  (*See, e.g.*,

Doc. No. 1 at ¶ 20(n) ("Casterline engaged in protected activity, in part, by requesting

accommodations or otherwise putting Defendants on notice that it may have to provide

reasonable accommodations."); *see also id.* at ¶ 21(c) ("The above facts, among others,

demonstrate that Defendants retaliated against Casterline because she engaged in protected

activity as described in Paragraph 20(n).").)  Notwithstanding these conclusory assertions (which

we must disregard), the Court finds that EEOC has ultimately pleaded facts from which the

Court can infer that Casterline engaged in protected activity.

Specifically, the EEOC pleads "in December 2018, Casterline suffered complications

regarding her medical condition for which an additional four weeks of recovery time was

needed.  Accordingly, Casterline sought such leave consistent with her medical limitations."

(Doc. No. 1 at ¶ 20(l).)  In addition, the EEOC alleges that when she sought to return to work and

her former position was unavailable, Casterline "applied for numerous [other] positions."  (*Id.* at

¶ 20(n).)  Reasonable accommodations may include medical leave and reassignment.  *See* 42

U.S.C. § 12111(9)(B) ("The term 'reasonable accommodation' may include . . . job restructuring,

part-time or modified work schedules, reassignment to a vacant position . . ."); *McCall v. Carbon

Schuykill Cmty. Hosp.*, Civil Action No. 3:19-2052, 2022 WL 3598035, at *11 (M.D. Pa. Aug.

23, 2022) ("A leave of absence for medical treatment may constitute a reasonable

accommodation under the ADA." (cleaned up)); *Schneider v. Works*, 223 F. Supp. 2d 308, 317

(E.D. Pa. 2016) ("[R]equests for limited periods of medical leave are considered reasonable

accommodations, whereas requests for indefinite medical leave are unreasonable").  And seeking

reasonable accommodations constitutes protected activity. *See Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 42 (3d Cir. 2018) ("Ruggiero's good faith request for an accommodation—i.e., her exemption from the vaccine requirement—was protected activity under the ADA sufficient to support a retaliation claim."); *see also Sowell v. Kelly Servs., Inc.*, 139 F. Supp. 3d 684, 702 (E.D. Pa. 2015) ("Requesting an accommodation is a protected employee activity under the ADA . . . A request for additional leave can be a protected activity under the ADA." (cleaned up)). Therefore, the EEOC has adequately pleaded that Casterline engaged in protected activity.

### 2. The EEOC Has Failed to Plead a Causal Connection

Although the EEOC pleaded facts supporting the inference that Casterline engaged in protected activity, the Court cannot find that it has done the same with respect to causation.

To state a prima facie case of disability discrimination, a plaintiff must plead that there is a causal connection between her protected activity and the adverse employment action she suffered. *Connelly*, 809 F.3d at 789. To establish the requisite causal connection, a plaintiff usually must show either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Oden v. SEPTA*, 137 F. Supp. 3d 778, 791 (E.D. Pa. 2015) (citation omitted). However, other evidence may also support a causal link. *See Farrell*, 206 F.3d at 280–81 ("Although timing and ongoing antagonism have often been the basis for the causal link, our case law clearly has allowed a plaintiff to substantiate a causal connection for purposes of the prima facie case through other types of circumstantial evidence that support the inference. For example, a plaintiff may establish the connection by showing that the employer gave inconsistent reasons for terminating the employee . . . Moreover, we have been willing to explore the record in search of evidence, and our caselaw has set forth no limits on what we have been willing to

consider.").

The EEOC is incorrect to the extent it is arguing that it need not plead causation.  (*See* Doc. No. 28 at 13 ("[A]ll that is required to allege a retaliation claim is that employees engaged in protected activity and their employer took adverse actions against them as a result."); *id.* at 15 ("EEOC's Complaint alleges that Casterline and other employees with disabilities engaged in protected activity and that Geisinger took adverse action against them as a result.  EEOC is not required to allege temporal proximity or a pattern of antagonism to plead a retaliation claim"). In so arguing, the EEOC misreads *Connelly*.

In *Connelly*, the district court found that the plaintiff's retaliation claim fell short of plausibility because she failed to plead that there was no temporal proximity and no pattern of antagonism. *Id.* at 792.  The Third Circuit reversed. *Id.* at 791–92.  The Third Circuit questioned the district court's reliance on temporal proximity, given that the plaintiff was a seasonal worker. *Id.* at 792 ("Because [the defendant] only hired [the plaintiff] during construction seasons, traditionally laying workers off in October or November and then rehiring them in March or April of the following year, it may be that a retaliatory decision to not rehire her would not become apparent until after the off-season that ran from October 2010 to March 2011.").  It also reasoned that the plaintiff's retaliation claim was not facially implausible because she alleged that after she complained of her supervisor's unwanted advances, her relationship with her supervisors and male co-workers became "increasingly strained." *Id.*  The Third Circuit therefore found that the plaintiff had "*alleged facts* that could support a reasonable inference of a causal connection between her protected activity in May 2010 and the gradual deterioration of her relationship with her employer until she was laid off in October 2010." *Id.* at 792–93 (emphasis added).  In a footnote, the Third Circuit also noted that it could reasonably

infer that the defendant gave the plaintiff "inconsistent and false reasons for declining to rehire her" from the plaintiff's "factual allegations about her union seniority, the defendant's past hiring practices, the company's traditional distribution of labor, and her personal observations of [the defendant's] workforce."  *Id.* at 792 n.11.

As Defendants repeatedly pointed out during oral argument, the EEOC never identifies *what* the adverse action is.  However, the Court notes that termination and the denial of a request for reasonable accommodation are both adverse actions.  *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) ("Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities."); *see also Mercer v. Se. Pa. Transit Auth.*, 26 F. Supp. 3d 432, 440 (E.D. Pa. 2014) ("[F]ailure to accommodate is a separately actionable 'unlawful employment practice' akin to wrongful termination or failure to hire."); *Sharbaugh v. W. Haven Manor, LP*, Civil Action No. 14-1723, 2016 WL 6834613, at *8 (W.D. Pa. Nov. 21, 2016) ("An employer's failure to reasonably accommodate the disabilities of an otherwise qualified employee constitutes an adverse employment action under the third element of the prima facie case of generic disability discrimination." (citing 42 U.S.C. § 12112)). Therefore, the Court considers whether the EEOC has pleaded facts supporting a reasonable inference that there is a causal connection between Casterline's protected activities—requesting additional medical leave in December 2018 and seeking reassignment in the first quarter of 2019—and either her termination or Geisinger's alleged failure to accommodate her.

First, the Court finds that the temporal proximity between Casterline's request for additional leave in December 2018 and her termination at the end of March 2019 is not unusually suggestive.  *See Groeber v. Friedman & Schuman, P.C.*, 555 F. App'x 133, 136 (3d Cir. 2014)

("The three-month period between the time Groeber complained to DeMaio and the time she was fired is not 'unusually suggestive' of retaliatory motive."); *Mclaughlin v. Fisher*, 277 F. App'x 207, 219 (3d Cir. 2008) (noting that the Third Circuit "has held that two days between a protected activity and an adverse action is 'unusually suggestive' of retaliatory motive but that three months is not"). Further, the Court cannot infer that the temporal proximity between Casterline's request for reassignment and her termination is unusually suggestive because the EEOC does not plead *when* Casterline applied for other positions. And for similar reasons, we cannot infer that the temporal proximity between Casterline requesting reassignment and the denial of that request was unusually suggestive. Namely, the EEOC does not plead *when* Casterline applied for reassignment/other positions, nor does it plead *when* she was "advised in writing that she had not been selected for [those] employment opportunities."

Second, unlike *Connelly*, where the plaintiff pleaded that her relationship with her employer became "increasingly strained" following her complaints (suggesting that the plaintiff was subjected to a pattern of antagonism) and facts about the company's hiring practices and distribution of labor from which one could infer that the company gave inconsistent reasons for failing to rehire her, the EEOC does not allege any facts from which we can infer that Casterline was subjected to a similar pattern of antagonism nor does it allege facts indicating that Geisinger's reasons for terminating Casterline were inconsistent.[9]  *See Groeber*, 555 F. App'x at 136 ("The problem with Groeber's retaliation claim lies with the element of causation. She suggested that the temporal proximity between her complaint to DeMaio on March 16, 2007, and

---

[9] The Court notes that the EEOC has pleaded that Geisinger "manipulated" the job posting for Casterline's position. Although a close call, the Court finds that, as pleaded, there is just one act, which by its very nature cannot be illustrative of a "pattern." Should the EEOC choose to file an Amended Complaint, with additional facts pleaded, there very well could be a finding of causation.

her termination on June 8, 2007, demonstrates a causal connection between the two events. . . . The three-month period between the time Groeber complained to DeMaio and the time she was fired is not 'unusually suggestive' of retaliatory motive.  Nor did Groeber allege that anything otherwise nefarious occurred between the time she complained to DeMaio and the time her employment was terminated."); *Kortyna v. Lafayette Coll.*, 726 F. App'x 934, 938 (3d Cir. 2018) (finding that the plaintiff failed to allege a causal link because the "timing of his firing, more than three weeks after his last complaint, does not by itself support an inference of retaliation" and he "allege[d] no facts showing a 'pattern of antagonism' between the complaints and the firing").

And, more generally, the EEOC has not pleaded any facts supporting a reasonable inference that there is a causal connection between her request for additional leave in late December 2018 or her applications for other positions (of which the approximate dates are unknown), and her termination in late March 2019 or Geisinger's denial of Casterline's request for accommodations (where, again, the time frame has not been pleaded).  *Cf. Oberdorf v. Penn Vill. Facility Ops., LLC*, Case No. 4:15-cv-01880, 2016 WL 1752732, at *4 (M.D. Pa. May 3, 2016) (concluding that the plaintiff failed to plead sufficient facts to support his retaliation claim, particularly a causal link, because he merely alleged that he was fired "shortly after" his last complaint but did "not provide any dates of his complaints or even say the date of his termination").

Because the EEOC has failed to plead causation, the Court grants Geisinger's motion to dismiss the ADA retaliation claim.

### D.      The EEOC Has Sufficiently Pleaded an Interference Claim

The Court now turns to Geisinger's contention that the EEOC has failed to plead an interference claim.  The EEOC's primary argument is that "pleading a plausible retaliation claim

is sufficient to plead an interference claim"[10] and because it has adequately alleged retaliation, the interference claim cannot be dismissed.  (Doc. No. 28 at 14.)  But because the Court dismisses the retaliation claim, this argument is unavailing.  Nonetheless, for the reasons below, the Court cannot conclude that the EEOC has failed to state an ADA interference claim.

42 U.S.C. § 12203(b) renders it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed . . . any right granted or protected by this chapter."  There is scant case law on ADA interference claims.  The Third Circuit has not ruled on what a plaintiff must plead to state an ADA interference claim.  *See Piotrowski v. Signature Collision Ctrs., LLC*, Case No. 2:21-cv-02115-JDW, 2021 WL 4709721, at *2 (E.D. Pa. Oct. 8, 2021) ("It does not appear that the Third Circuit has set forth the elements for an ADA interference claim.").  As one district court in this Circuit has noted, "cases from other Circuits" have adopted the test for anti-interference claims under the Fair Housing Act [("FHA")]" in determining whether a plaintiff has stated an ADA interference claim.  *Id.*  In turn, the Third Circuit "has held that under the FHA, courts should give the word 'interference' its dictionary definition:  'the act of meddling in or hampering an

---

[10] In its brief, the EEOC asserts that the Third Circuit "has held that the ADA's interference prohibition is broader than the retaliation prohibition."  (Doc. No. 28 at 14.)  But that it is misleading and not an accurate statement of the law cited by the EEOC.  Rather, in *Mondezelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 788–89 (3d Cir. 1998), the Third Circuit merely stated that the district court did not address the interference provision § 12203(b), which it noted "arguably sweeps more broadly than § 12203(a)" (the retaliation provision) and remanded the case.  Similarly, in *Fogleman v. Mercy Hospital*, 283 F.3d 561, 570 (3d Cir. 2002), the Third Circuit stated, "We have noted that the scope of this second anti-retaliation provision of the ADA 'arguably sweeps more broadly' than the first.  In particular, unlike the first provision, the text of this provision does not explicitly limit a cause of action to the particular employee that engaged in protected activity."  The Third Circuit went on to hold that the plaintiff could state a third-party retaliation claim through the interference provision.  *See id.* at 570–71 ("Greg may assert his third-party retaliation claim under this section of the ADA just as he would be able to do under the NLRA.  Accordingly, we will reverse the District Court's order granting summary judgment to Mercy to the extent that it was based on the Court's view that Greg's third-party retaliation claim was not cognizable under the ADA's second anti-retaliation provision.").

activity or process.'"  *Id.* (quoting *Revock v. Cowpet Bay W. Condo. Ass'n.*, 853 F.3d 96, 112–13 (3d Cir. 2017)).

Viewing the facts alleged as true and drawing all inferences in the EEOC's favor, the Court finds that the EEOC has pleaded that Geisinger interfered with Casterline's rights under the ADA.  In particular, the EEOC pleaded that Geisinger "create[d] and maintain[ed] records that associate negative tags or references, such as 'litigation hold,' with persons who have engaged in protected activity and/or those seeking a reasonable accommodation or putting [Geisinger] on notice that they may need a reasonable accommodation."  (Doc. No. 1 at ¶ 20(h).) The EEOC also alleges that these records are readily available to Geisinger personnel who may be involved in hiring or rehiring decisions.  (*Id.*)  In addition, the EEOC pleads that Geisinger told Casterline to reapply for her own position but then removed the job posting when she went to apply for the position.  (*Id.* at ¶ 20(o); *see also id.* at ¶ 20(o) (alleging Geisinger discriminated against Casterline by "manipulating her job posting to prevent [her] from 'applying' for her own job"); *id.* ¶ 22(c) (alleging Geisinger "interfere[ed] with Casterline's efforts to apply for her own position by manipulating, misrepresenting, or interfering with her application process and the posting/filling of her position).)  Taken together, these allegations raise a plausible inference that Geisinger "meddles" when employees attempt to exercise their rights under the ADA. Accordingly, the Court denies Geisinger's motion to dismiss the ADA interference claim.

### E.   *The EEOC Has Not Sufficiently Identified a Class of Aggrieved Persons*

Next, the Court considers Geisinger's argument that the Complaint fails to sufficiently identify "the specific universe of potential class members."  (Doc. No. 25 at 27; Doc. No. 30 at 11.)  Specifically, Geisinger contends that the EEOC is attempting to "perform a complete HR audit – an ADA review – of every single ADA decision made by Geisinger."  (Doc. No. 25 at 27 ("As pled, the purported class of aggrieved persons could conceivably include every current and

former employee (regardless of position) at every named Geisinger facility who is or was disabled and ever sought an accommodation of any kind (including those that received a reasonable accommodation) for a four (4) year period.").)

The EEOC is not required to identify or name every potential class member in its complaint. *See, e.g.*, *U.S. Steel Corp.*, 2012 WL 3017869, at *9–10. Nor is the EEOC required "to plead detailed factual allegations supporting the individual claims of every potential member of a class." *EEOC v. United Parcel Serv. ("UPS")*, No. 09-cv-5291, 2013 WL 140604, at *6 (N.D. Ill. Jan. 11, 2013). Courts have found *Twombly/Iqbal* and Federal Rule of Civil Procedure 8 satisfied where the EEOC's complaint identifies: (1) the statutes that the employer allegedly violated; (2) the time frame in which the alleged violations occurred; (3) the names of at least one presently identified victim; (4) a general description of the class of aggrieved persons; (5) the specific claims alleged and their elements as to the charging party and the class of aggrieved persons; (6) the types of conduct to which the named claimants and the identified class members were subjected; and (7) the remedies being sought. *See, e.g.*, *EEOC v. JBS USA, LLC*, 481 F. Supp. 3d 1204, 1216 (D. Colo. 2020); *UPS*, 2013 WL 140604, at *6; *EEOC v. 5042 Holdings Ltd.*, Civil No. 3:09-CV-61, 2010 WL 148085, at *2 (N.D. W. Va. Jan. 11, 2010).

For example, in *UPS*, the EEOC alleged that UPS "maintained an inflexible 12-month leave policy which [did] not provide for reasonable accommodation of qualified individuals with disabilities and which instead provide[d] for termination of their employment in violation of [the ADA]." 2013 WL 140604, at *5. The EEOC also "offer[ed] detailed factual allegations as to how the policy affected two employees . . . and alleged that the same policy was applied across the board to other employees." *Id.* In deciding that the allegations for the unidentified class members were sufficient, the court found that that EEOC's complaint "identifie[d] the statutes

that UPS allegedly violated; the time frame in which the alleged violations occurred; the names

of two presently identified victims; a general description of the class of aggrieved persons; the

specific claims alleged and their elements as to the charging party and the class of aggrieved

persons; the types of conduct to which the named claimants and the unidentified class were

subjected; and the remedies being sought." *Id.* at *6.  The court explained:  "EEOC must merely

'plead factual content that allows the court to draw the reasonable inference' that UPS violated

provisions of the ADA as to the unidentified individuals.  It has done that.  On the face of the

facts pleaded in EEOC's amended complaint, the Court can reasonably infer that UPS

discriminated against other 'qualified' individuals' when it enforced its leave policy." *Id.*

      The Court finds that the facts of this case are distinguishable from those in *UPS*.  Here,

the EEOC pleads that the class encompasses qualified individuals with disabilities who were

either not hired, not reassigned to a different position, or discharged because they were subjected

to Geisinger's most-qualified applicant policy.  But because the EEOC has not properly pleaded

that Casterline is a qualified individual with a disability, the EEOC has not identified at least one

aggrieved member of the class.  Accordingly, the Court finds that the EEOC has not sufficiently

identified a class.

    **F.**    ***The 300-Day Rule Applies to the EEOC and the Continuing Violation Doctrine Does Not Apply***

      The Court now turns to Geisinger's argument that any claims the EEOC brings on behalf

of aggrieved individuals based on activity that occurred more than 300 days before Casterline

filed her charge are time-barred because (1) the 300-day rule applies to the EEOC and (2) the

continuing violation doctrine does not apply here.  The Court addresses each in turn.

    **1.**   <u>**The 300-Day Rule Applies to the EEOC**</u>

Section 706 of Title VII, which the ADA incorporates by reference, sets forth a charge-

filing requirement.  42 U.S.C. § 2000(e)–5(e)(1); *id.* § 12117(a).  In Pennsylvania, an individual

seeking to challenge an employment practice must file a charge with the EEOC within 300 days

after the alleged unlawful practice occurred.  *See id.* § 2000(e)–5(e)(1); *Mandel v. M & Q*

*Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013).  Here, the parties disagree on whether the

300-day charge filing requirement applies to the EEOC.

　　　At least two other district courts in this Circuit have held that it does, relying on the plain

language of the statute.  *See EEOC v. FAPS, Inc.*, Civil No. 10-3095 (JAP)(DEA), 2014 WL

4798802, at *24 (D.N.J. Sept. 26, 2014) ("Like the majority of the courts that have reviewed this

issue, the Court is convinced that Section 706 applies to claims brought by the EEOC.  The plain

language of Section 706(e)(1) clearly precludes the EEOC from seeking relief for individuals

who could not have filed an EEOC charge during the filing period."); *id.* ("[J]ust as nothing in

the statute indicates that an EEOC commissioner is exempt from the procedural requirements of

Section 706, 'nothing in the statute indicates that Congress intended to allow the EEOC to revive

otherwise stale individual damage claims.'" (citation omitted)); *U.S. Steel Corp.*, 2012 WL

3017869, at *6 ("[T]he EEOC's claim grew out of DeSimone's charge of discrimination, which

was filed on June 6, 2009.  As a result, any claims of discrimination based on events that

occurred before August 10, 2007 (which is 300 days before the June 6, 2008 charge that gave

rise to EEOC's instant lawsuit) are time-barred and should, therefore, be dismissed.").  Several

other district courts across the country have held similarly.  *See, e.g.*, *EEOC v. Discovering*

*Hidden Haw. Tours, Inc.*, Civil No. 17-00067 DKW-KSC, 2017 WL 4202156, at *6 (D. Haw.

Sept. 21, 2017) ("Recent district court decisions agree that Section 706 limits the class of

employees on whose behalf the EEOC may seek relief to those individuals who were allegedly

subjected to unlawful employment practices during the 300 days before the date of the initial

Charge." (collecting cases)); *EEOC v. Freeman*, No. RWT 09cv2573, 2010 WL 1728847, at *4 (D. Md. Apr. 27, 2010) ("The Court need not look any farther than the plain language of Section 706(e)(1) to conclude that the class of individuals for whom the EEOC can seek relief is limited to those who could have filed an EEOC charge during the filing period."). *But see EEOC v. Sterling Jewelers*, 08-CV-00706(A)(M), 2009 U.S. Dist. LEXIS 122102, at *12–13 (E.D.N.Y. Oct. 1, 2009) ("[T]he sole limitation on the EEOC's ability to proceed with an enforcement action is that *a* charge be filed with the EEOC within 300 days of *a* violation, and it is undisputed that one or more charges were filed within that time period by the affected employees . . . . [S]ince at least one administrative charge was filed with the EEOC within the 300-day period, EEOC's complaint need not be limited in scope to violations occurring within that period.").

The Court is persuaded by this line of cases and agrees that the plain language of the statute clearly shows that the 300-day rule applies to the EEOC.  Because Casterline filed her charge on January 20, 2020, to the extent the EEOC seeks to assert claims on behalf of aggrieved individuals based on activity prior to March 26, 2019, those claims are time-barred.

The Supreme Court case relied upon by the EEOC, *Fort Bend County v. Davis*, 139 S. Ct. 1843 (2019), is inapposite and, contrary to what the EEOC suggests, does not stand for the proposition that the 300-day rule is inapplicable to the EEOC.  In *Fort Bend*, the Supreme Court held that the Title VII charge-filing requirement is procedural, not jurisdictional.  *Id.* at 1851–52. The Court noted that Title VII's charge-filing provisions "require complainants to submit information to the EEOC and to wait a specified period of time before commencing a civil action."  *Id.* at 1851.  At oral argument in this case, the EEOC claimed that the Supreme Court's reference to "complainants" indicates that the Court does not intend for the charge-filing provision to apply to the Commission.  (*See* Doc. No. 36 at 67–68 ("The Court's explanation of

that as something that applies to complainants and when they have to submit information to the EEOC I think maybe makes more clear today . . . that the 300-day filing period is not something that limits the EEOC when EEOC brings suit in an enforcement action for folks who may have been harmed outside the 300-day filing period that precedes the charging party's charge.").) This Court is not persuaded and finds the EEOC's interpretation requires too large of a leap. Moreover, the EEOC has not pointed to a single case that supports its interpretation of *Fort Bend*. At bottom, nowhere in the *Fort Bend* decision does the Supreme Court excuse the EEOC from the 300-day rule—the question presented to this Court.

Given the plain language of the statute, the Court finds the 300-day rule applies to the EEOC.

### 2.   **The EEOC Has Not Alleged a Continuing Violation**

The EEOC argues that to the extent the 300-day rule does apply to it, Geisinger's conduct constitutes a continuing violation, presenting an equitable exception to the statute of limitations. The Court disagrees.

"The continuing violation doctrine creates an equitable exception to the statute of limitations, as it renders actionable incidents that predate the 300-day charging period, so long as a plaintiff can demonstrate an ongoing practice of discrimination and that at least one act of discrimination occurred during the charging period."  *U.S. Steel Corp.*, 2012 WL 3017869, at *6; *see also FAPS, Inc.*, 2014 WL 4798802, at *25 ("When a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." (cleaned up)).  However, the continuing violation doctrine does not apply to discrete discriminatory acts.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) ("A discrete retaliatory or discriminatory act 'occurred' on

the day that it 'happened.'  A party, therefore, must file a charge within either 180 or 300 days of

the date of the act or lose the ability to recover it."); *id.* at 113 ("[D]iscrete discriminatory acts

are not actionable if time barred, even when they are related to acts alleged in timely filed

charges. Each discrete act starts a new clock for filing charges alleging that act.").  Failure to

accommodate, refusal to hire, and termination are discrete acts.  *See, e.g.*, *Mercer v. SEPTA*, 608

F. App'x 60, 63 (3d Cir. 2015) ("A reasonable accommodation request is a one-time occurrence

rather than a continuing practice, and therefore, does not fit under the continuing violations

theory."); *Mandel*, 706 F.3d at 165 ("Discrete acts include, for example, termination, failure to

promote, denial of transfer, or refusal to hire."); *Emmell v. Phoenixville Hosp. Co., LLC*, 303 F.

Supp. 3d 314, 326 (E.D. Pa. 2018) ("An employer's denial of a request for a reasonable

accommodation also constitutes a discrete act of discrimination.").

 Here, the EEOC pleads that Defendants discriminated against Casterline when they failed

to accommodate her, failed to hire her for a new position, and terminated her. (*See, e.g.*, Doc.

No. 1 at ¶ 20(p) ("Defendants told Casterline that she would have to apply and compete for

another position and succeed in obtaining one within a limited period or be fired.  Casterline

applied for numerous positions but Defendants *refused to hire, rehire, or reassign her*, or

otherwise comply with their obligations under the ADA." (emphasis added)); *id.* at ¶ 20(r) ("On

or about March 28, 2019, Defendants fired Casterline."); *id.* at ¶ 20(t) ("The above facts, among

others, demonstrate that Defendants discriminated against Casterline on the basis of disability

when they failed to reassign Casterline or otherwise permit her to remain employed, failed to

hire/rehire her for any employment opportunity or reassign her, deprived her of terms and

conditions of her employment such as the opportunity to return to her own vacant position,

limited her opportunities to seek or obtain accommodations including reassignment such as

manipulating her job posting to prevent Casterline from applying for her own job, failed to provide her with reasonable accommodations including leave combined with an opportunity to return to work with or without a reasonable accommodation . . .").)  These are discrete discriminatory acts to which the *Morgan* continuing violation doctrine does not apply.  *See FAPS, Inc.*, 2014 WL 4798802, at *26 ("Therefore, the Court rules that the continuing violation [doctrine] does not apply to discrete acts of unlawfully failing to hire a particular applicant if the decision not to hire is made outside the limitations period.  Accordingly, applicants for employment who FAPS did not hire before December 22, 2006 are not members of the class for whom the EEOC may seek relief."); *U.S. Steep Corp.*, 2012 WL 3017869, at *7 (holding that the continuing violation doctrine did not apply because drug tests and screenings and termination of employment "are discrete acts as they occur on a readily identifiable date certain and each constitutes and a separate employment practice"); *see also Freeman*, 2010 WL 1728847, at *6 (concluding the continuing violation doctrine did not apply because "the refusal to hire an applicant with an unacceptable criminal history or credit history is undoubtedly a discrete act of discrimination").

The EEOC seeks to represent a class of aggrieved individuals dating back to January 1, 2018.  (*See, e.g.*, Doc. No. 1 at ¶ 20 ("Since at least January 1, 2018, Defendants violated Title I of the ADA when they discriminated against a class of aggrieved former and current employees and Casterline on the basis of disability . . .").)  But Casterline is the *only* individual whom the EEOC has alleged Geisinger wrongly discharged, failed to rehire, and did not accommodate in that time period.  (*Id.* at ¶¶ 20(m)–(r).)  Based on this conduct, Casterline filed a Charge of Discrimination with the EEOC on January 20, 2020.  Because the continuing violation doctrine does not apply, the EEOC cannot bring claims on behalf of a class members based on aggrieved

activity before March 26, 2019. *See Discovering Hidden Haw. Tours*, 2017 WL 4202156, at *7

("The Commission here is seeking to provide relief for individuals who did not themselves

experience any unlawful employment actions during the 300-day filing window. . . . [U]sing the

continuing violation doctrine under the circumstances alleged here would expand the doctrine

beyond its traditional boundaries. . . . The continuing violation doctrine should not be expanded

to cover individuals who did not suffer any act of discrimination, harassment, or retaliation

within the 300-day limitation period.").

The EEOC relies on an Eastern District of New York case, *Liss v. Nassau County*, 425 F.

Supp. 2d 335 (E.D.N.Y. 2006), to support its contention that the continuation violation applies

under these circumstances.  In *Liss*, the court stated that "[i]f the actions complained of in the

complaint [fell] outside of the 300-day period, the person can recover for that conduct if it is

demonstrated that *there was a continuous policy and practice of discrimination*, and that one act

in furtherance of the policy and practice fell within the 300-day period."  *Id.* at 340 (emphasis

added).  The court found that, in the alternative, a plaintiff may establish a 'continuing violation'

by identifying specific and related incidents of discrimination that an employer permitted to

continue unremedied for some time."  *Id.*  Notably, although the EEOC relies on *Liss* for the

proposition that an employer's continuous policy or practice may trigger the continuing violation

doctrine, the *Liss* court's ultimate holding was not based on that theory.  Rather, the court's

holding was based on the alternative presented.  *See id.* at 341 ("On six separate occasions the

plaintiff advised the defendants that he suffered from a condition that prevented him from

working at heights and/or in hot temperatures.  Each refusal by the defendant to re-assign the

plaintiff or otherwise accommodate his disability, and every subsequent occasion on which the

plaintiff was assigned to tasks that involved working at heights or in high temperatures may

fairly constitute a discrete act of discrimination.  Thus, drawing all inferences in the plaintiff's favor, these refusals potentially constitute 'specific and related incidents' of discrimination that the defendants permitted to continue from September, 1999 through July, 2002.  Two of these incidents, occurring on July 8 and 9, 2003, are within the 300-day limitations period.  Also, the plaintiff's July 17, 2003 on-the-job injury, which the plaintiffs alleges was a result of the defendants' failure to accommodate his disability, occurred within the limitation period.  Accordingly, defendants' motion to dismiss the plaintiff's disability discrimination claims as timebarred is denied.").  Furthermore, another Eastern District of New York judge explicitly stated that *Liss* is "an outlier" and declined to follow it.  *See Ugactz v. United Parcel Serv., Inc.*, No. 10-CV-1247 (MKB), 2013 WL 1232355, at *5 n.10 (E.D.N.Y. Mar. 26, 2013).  The Court is likewise unpersuaded by the other case the EEOC relies on, which was also decided by a court outside of this Circuit.  *See Melton ex rel. Mosier v. Cal. Dep't of Developmental Disabilities*, Case No. 20-cv-06613-YGR, 2021 WL 633866, at *6 (N.D. Cal. Feb. 18, 2021) (holding that the plaintiff's claims were not time-barred as they were promised on the defendant's ongoing failure to reasonably accommodate deaf clients).

### G.   It Is Premature to Decide Whether Geisinger's Most Qualified Applicant Policy Is Lawful

Last, the Court addresses the argument that pervades all of Geisinger's briefing—that the most qualified applicant policy is lawful and because the Complaint is an attack on that policy, the Complaint must be dismissed.

Although the Court appreciates Geisinger's arguments concerning the high costs of discovery that it will be forced to expend, the Court finds it premature to decide whether the policy is lawful at this early stage in the litigation.  Significantly, *none* of the cases Geisinger cites in support of its position that its most qualified applicant policy is lawful were decided at

the motion to dismiss stage.  To the contrary, *each* decision was decided at summary judgment or

after trial, and, therefore, the court making the decision had the benefit of discovery.  *See U.S.*

*Airways, Inc. v. Barnett*, 535 U.S. 391, 394 (2002) ("In our view, the seniority system will

prevail in the run of cases.  As we interpret the statute, to show that a requested accommodation

conflicts with the rules of a seniority system is ordinarily to show that the accommodation is not

'reasonable.'  Hence such a showing will entitle an employer/defendant *to summary judgment* on

the question—unless there is something more.  The plaintiff remains free to present evidence of

special circumstances that make 'reasonable' a seniority rule exception in the particular case.

And such a showing will defeat the employer's demand for summary judgment." (emphasis

added)); *id.* at 406 ("Hence, a showing that the assignment would violate the rules of a seniority

system *warrants summary judgment* for the employer—unless there is something more."

(emphasis added)); *EEOC v. St. Joseph's Hosp.*, 842 F.3d 1333, 1347 (11th Cir. 2016) ("For

these reasons, this Court concludes that the district court *did not err by failing to instruct the jury*

that the ADA requires reassignment without competition." (emphasis added)); *see also Elledge v.*

*Lowe's Home Ctrs.*, 979 F.3d 1004, 1007, 1016, 1018 (4th Cir. 2020) (affirming the district

court's grant of summary judgment to the employer); *Lincoln v. BSNF Ry. Co.*, 900 F.3d 1166,

1214 (10th Cir. 2018) (affirming vast majority of district court's summary judgment order);

*Dunderdale v. United Airlines*, 807 F.3d 849, 855 (7th Cir. 2015) ("We initially note that there is

*no evidence* of global disregard for the seniority system at United, *nor is there a record* that

United regularly ignored Union complaints that the Matrix position should be subjected to

bidding during that time." (emphases added)); *Medrano v. City of San Antonio*, 179 F. App'x

897, 903–04 (5th Cir. 2006) (affirming the district court's decision to grant judgment as a matter

of law notwithstanding the verdict in favor of the employer); *Office of the Architect of the*

*Capitol v. Office of Compliance*, 361 F.3d 633, 635 (Fed. Cir. 2004) ("Because *substantial evidence* shows that a reasonable accommodation of Johnson was possible without causing any undue burden to AOC, we affirm." (emphasis added)).  Accordingly, Geisinger's motion to dismiss is denied on this basis.

**IV.    Conclusion**

For the foregoing reasons, the Court grants in part and denies in part Geisinger's motion to dismiss.

An appropriate Order follows.