**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | **CIVIL ACTION** |
| Plaintiff, | **NO. 21-4294-KSM** |
| *v.* | |
| **GEISINGER HEALTH, et al.,** | |
| Defendants. | |

**<u>MEMORANDUM</u>**

**Marston, J.**                                                    **March 27, 2025**

The Equal Employment Opportunity Commission ("EEOC") brings this enforcement action against Defendants Geisinger Health, Geisinger Health System Foundation d/b/a Geisinger Health System, Geisinger Wyoming Valley Medical Center, Geisinger Clinic, Geisinger Health Plan, Geisinger Medical Center, and Geisinger Holy Spirit Hospital (collectively, "Defendants" or "Geisinger") on behalf of Charging Party Rosemary Casterline, a former nurse at Geisinger Wyoming Valley Medical Center, and a class of aggrieved former and current Geisinger employees. (Doc. No. 41.) The EEOC alleges that Defendants violated Title I of the Americans with Disabilities Act ("ADA") by discriminating against Casterline and other employees who took medical leave by requiring them to reapply and compete for employment opportunities to return to work and requiring them to be the "most qualified" applicant. (*Id.*) For similar reasons, the EEOC claims that Defendants retaliated against Casterline and other employees and interfered with their rights as protected by Title V of the ADA. (*Id.*)

Earlier in this case, Defendants moved to dismiss the EEOC's original Complaint. (Doc. Nos. 24, 25.) The Court partially granted Defendants' motion but gave the EEOC the opportunity to fix its pleading deficiencies. (Doc. Nos. 38, 39.) The EEOC filed an Amended Complaint on January 27, 2023. (Doc. No. 41.) Defendants now move to dismiss the Amended Complaint. (Doc. No. 57; *see* Doc. No. 60.) The EEOC opposes the motion. (Doc. Nos. 59, 61.) The Court held oral argument on March 13, 2025.

While the Court would have preferred that the EEOC decisively push its claims across the line from conceivable to plausible in its Amended Complaint, just a nudge will do, and, for the most part, just a nudge was done. For the reasons below, the Court grants in part and denies in part Defendants' motion.

## I.    Factual Background

Accepting the allegations in the Amended Complaint as true, the relevant facts are as follows.

### A.    *Geisinger's Leave and Most Qualified Applicant Policies*

Through their policies and practices, Geisinger limits the amount of time that they will hold an employee's position open when that employee takes leave. (Doc. No. 41 at 1.) For disability-related leave under the Family Medical Leave Act ("FMLA"), Geisinger will hold the employee's position open for twelve weeks. (*Id.*) But for non-FMLA leave, they will hold the position open for only eight weeks. (*Id.*) In addition, Geisinger maintains a "most-qualified applicant policy," which requires disabled employees in need of reassignment to compete for and be selected as the most qualified candidate for the vacant position that they seek. (*Id.* at 2.)

### B.    *Casterline Takes Leave Following Rotator Cuff Surgeries*

For over thirty years, Casterline worked as a registered nurse for Geisinger Wyoming Valley Medical Center "in different capacities and departments, including the ophthalmology

department, where she was last employed by Geisinger, [and] the cardiac care department." (Doc. No. 41 ¶ 54.)  Casterline has suffered from injuries to her left shoulder, since at least October 2017, and to her right shoulder, since at least early 2018, both of which "have caused her to have substantial limitations in the use of her arms and shoulders, including but not limited to substantial limitations to her ability to lift, reach, bear weight with her arms, dress herself, and maintain her household by activities such as doing laundry and grocery shopping."  (*Id.* ¶¶ 55–56; *see id.* ¶ 57.)  "At all relevant times, Geisinger has been aware of the injuries to both of Casterline's shoulders and the limitations they caused."  (*Id.* ¶ 59.)

In October 2017, Casterline had surgery to repair a torn left rotator cuff, for which she took twelve weeks of approved medical leave.  (*Id.* ¶ 60.)  Within a few months of that surgery, Casterline tore her right rotator cuff and re-tore her left rotator cuff.  (*Id.* ¶ 61.)  In October 2018, Casterline had reverse shoulder replacement surgery, for which she again took approved medical leave with an approximate return date of December 25, 2018.[1]  (*Id.* ¶ 62.)  Before returning to work, Casterline experienced complications from surgery in December 2018, which required an additional four weeks of recovery time.  (*Id.* ¶ 64.)  So, Casterline sought an additional four weeks of leave, but Geisinger "refused to provide [her] with additional job-protected leave and informed her that it would not hold her position for her for the additional time she needed."  (*Id.*)

### C.    *Casterline Is Forced to Reapply for Her Job*

On January 18, 2019—shortly before Casterline was expected to return from leave—Geisinger posted Casterline's ophthalmology nursing position on their website as vacant and

---

[1] For purposes of background, the Court notes that Casterline took this leave under Geisinger's other medical leaves policy because she had taken leave under the FMLA in 2017 and 2018 and had not accrued enough time to take additional FMLA leave by October 2018.  The Court does not rely on this fact in its analysis, as it is not pleaded in the Amended Complaint.

available. (*Id.* ¶ 66.) Six days later, Casterline told Geisinger that she had an appointment with her surgeon scheduled for January 25 and expected to be cleared to return to work at that time. (*Id.* ¶ 67.) On January 25, Casterline was cleared to return to work effective January 28 and immediately informed Geisinger.[2] (*Id.* ¶ 68.)

Although Casterline sought to return to work in her same ophthalmology nursing position at Geisinger Wyoming Valley Medical Center, Geisinger informed her that "if she wanted to continue working for [Geisinger] she would have to apply for her [former ophthalmology nursing position]." (*Id.* ¶ 72.) By January 25, when Casterline told Geisinger that she had been medically cleared to return to work, Geisinger was "on notice that Casterline . . . would, in compliance with [Geisinger's] directives, 'apply' to remain employed with [Geisinger] in her [former ophthalmology nursing] position." (*Id.* ¶ 73.) But on or about January 25, the posting for that position was taken down from Geisinger's website "at the request of management over the department." (*Id.* ¶ 74.) And on January 26, "management over Casterline's department expressed disinterest in returning Casterline to work in her [former ophthalmology nursing] position, complaining of how much medical leave she had taken since 2017." (*Id.* ¶ 75.)

Nevertheless, Casterline still tried to apply for her former position via Geisinger's website on January 26 and 27. (*Id.* ¶ 76.) When she inquired about the status of the position, Geisinger told her that "management decided to remove the posting for her job and would not reopen it or otherwise permit her to return to her position"—even though allegedly Geisinger had not filled the position at that time. (*Id.* ¶¶ 77–78.)

---

[2] Since being cleared to return to work, Casterline allegedly "has continued to have substantial limitations in the use of her arms and shoulders." (*Id.* ¶ 69.) For example, "her range of motion with her left arm is substantially and permanently reduced," and she "continues to be substantially limited at least in her abilities to lift or reach items above her, bear weight of more than a few pounds with her arms, dress herself, and maintain her household." (*Id.* ¶ 70.)

### D.    *Casterline Applies for Other Positions and Is Ultimately Terminated*

After removing the posting of Casterline's former ophthalmology nursing position, Geisinger told Casterline that "she would have to apply and compete for another position and succeed in obtaining one within a limited period or be fired." (*Id.* ¶ 78.) Between February and July 2019, Casterline repeatedly asked Geisinger's recruiter to refer her to vacant positions for which she was qualified. (*Id.* ¶ 81; *see id.* ¶ 80.) Geisinger's recruiter did so, and Casterline ultimately applied for "at least 19 nursing positions." (*Id.*) Although Geisinger's recruiter "confirmed that Casterline was qualified for [those positions]," Casterline was not selected for any of them. (*Id.* ¶¶ 83–84.) Geisinger never responded to some of Casterline's job applications. (*Id.* ¶ 85.) When she did receive a response, Geisinger said that she had not been selected and that they were "moving on to consider other candidates." (*Id.* ¶¶ 86–87.) But Casterline was never told that she was unqualified or not the "most qualified" candidate for any of the positions. (*Id.*)

In her communications with Geisinger's human resources personnel and her union from January through May 2019, Casterline "repeatedly objected to the discrimination Geisinger was subjecting her to." (*Id.* ¶ 88.) A grievance meeting between the union, management over Casterline's former department at Geisinger Wyoming Valley Medical Center, and human resources regarding Casterline's allegations of discrimination, "including but not limited to the loss of her position," was scheduled for late February or early March 2019. (*Id.* ¶ 89.)[3]

On May 16, 2019, Geisinger notified Casterline that her employment had been terminated effective March 28 because "she was not the 'most qualified' person for an opportunity within a limited period." (*Id.* ¶¶ 90–91.) However, as of March 28, at least two of the nursing positions

---

[3] It is not clear from the Amended Complaint whether this grievance meeting took place as scheduled. (*See id.* ¶¶ 89–90.)

for which Casterline had applied were still vacant and available.  (*Id.* ¶ 92; *see also id.* ("The person ultimately selected for one of the positions was not even interviewed until May 2019, and the person selected for the other position did not accept an offer until the end of April 2019.").)

###### E.    Casterline Files a Charge with the EEOC and the EEOC Investigates[4]

On January 20, 2020, Casterline filed a Charge of Discrimination with the EEOC, alleging that Geisinger Wyoming Valley Medical Center discriminated and retaliated against her based on her disability and age.  (Doc. No. 25-1.)

A little over a year later, on February 10, 2021, the EEOC issued a Letter of Determination (the "LOD"), which lists Casterline as the Charging Party and Geisinger Wyoming Valley Medical Center as the sole Respondent.  (*See* Doc. No. 25-3 (issuing a "determination as to the merits of the subject charge filed under the Age Discrimination in Employment Act of 1967, as amended (ADEA) and Title I of the [ADA], as amended").)  Following a "thorough examination and weighting [sic] of the evidence in the investigative file," the EEOC concluded that Geisinger Wyoming Valley Medical Center failed to provide

---

[4] The Court considers the charge filed with the EEOC, the EEOC's letter and amended letter of determination, Defendants' motion for reconsideration, and the EEOC's notice of conciliation failure as matters of public record and integral to the Amended Complaint and the EEOC's claims.  (*See* Doc. No. 41 ¶¶ 36–39.)  *See EEOC v. Bimbo Bakeries USA, Inc.*, No. 09-cv-1872, 2010 WL 598641, at *1 n.2 (M.D. Pa. Feb. 17, 2010) ("In deciding a motion to dismiss, district courts are permitted to consider the charge filed with the EEOC, and related EEOC documents, including the letter from the EEOC summarizing its investigation, the right to sue letter, and intake questionnaire.  These are either undisputed documents referenced in the complaint or are central to Plaintiff's claim, or are information which is a matter of public record.  The court may consider these documents without converting the defendant's motion to dismiss to one for summary judgment."); *see also EEOC v. U.S. Steel Corp.*, No. 10-cv-1284, 2012 WL 3017869, at *11 (W.D. Pa. July 23, 2012) ("In evaluating a Rule 12(b)(6) motion to dismiss, the Court is limited to considering the allegations in the Amended Complaint (viewed in the light most favorable to the plaintiff), exhibits attached to the Amended Complaint, matters of public record, and documents that form the basis of a claim.").  Defendants attached the EEOC's amended letter of determination to their motion to dismiss.  (Doc. No. 57-5.)  But the rest of the materials were not attached to the Amended Complaint or the parties' briefing on the motion to dismiss, so the Court cites to the materials docketed as attachments to the parties' previous motion to dismiss the original Complaint (Doc. Nos. 25-1, 25-3, 25-5–25-6, 28-1).

Casterline with reasonable accommodations and discharged her in violation of the ADA. (*Id.* at 1.) The LOD states, "The evidence demonstrates that Respondent failed to hold Charging Party's position while she was on an approved medical leave of absence. There is insufficient evidence that it was an undue hardship for the Respondent to hold Charging Party's position." (*Id.*) The LOD continues, "Respondent also failed to reassign Charging Party to a comparable vacant position and subsequently discharged her. The ADA specifically lists reassignment as a form of reasonable accommodation." (*Id.*) Accordingly, the EEOC found that "the totality of the evidence support[ed] the conclusion that Respondent has a policy or practice of requiring disabled employees to compete for vacancies for reassignment." (*Id.* at 1–2.) As to the ADEA claim, the EEOC concluded that there was insufficient evidence of age discrimination. (*Id.* at 2.)

Two days later, on February 12, 2021, the EEOC issued an Amended Letter of Determination (the "ALOD"), which again lists Casterline as the Charging Party and Geisinger Wyoming Valley Medical Center as a Respondent. (Doc. No. 57-5.) However, this time, the EEOC added "Geisinger Health/Geisinger Health System" as a Respondent. (*See id.* at 1.) The EEOC also broadened its prior conclusion, stating, "The totality of the evidence supports the conclusion that Respondent maintained, and continues to maintain, a policy or practice that violates the ADA in that Respondent fails to provide reasonable accommodations, such as reassignment or other employment opportunities, and that Respondent unlawfully requires disabled persons to compete for reassignments or such opportunities." (*Id.* at 2.) In addition, the EEOC found, for the first time, "reasonable cause to believe that since at least January 1, 2018, and continuing through the present, Respondent has subjected a class of aggrieved persons" to an "ongoing pattern or practice of discrimination" under the ADA by, *inter alia*, "failing to engage in the interactive process sufficiently to provide reassignment or other employment

opportunities; failing to provide reasonable accommodations including reassignment or other employment opportunities, including failing to provide sufficient time/leave periods for such accommodations to be sought or provided; and failing to accommodate persons in the consideration, selection, and/or hiring for work assignments, placements, and/or positions with Respondent, at its facilities at which the above referenced policy or practice apply." (*Id.*)

On February 19, 2021, Geisinger moved for reconsideration. (Doc. No. 25-5 at 1.) The EEOC denied the motion on May 17, 2021. (Doc. No. 25-6.) And on June 1, 2021, the EEOC issued a Notice of Conciliation Failure, which states that conciliation efforts were unsuccessful. (Doc. No. 28-1 at 12.)

## II.    Procedural History

On September 29, 2021, the EEOC initiated this enforcement action against seven Geisinger Defendants, alleging violations of Titles I and V of the ADA, on behalf of Casterline and a class of aggrieved former and current Geisinger employees. (Doc. No. 1.) Defendants filed a motion to dismiss the Complaint (Doc. Nos. 24, 25), which the Court granted in part and denied in part on October 17, 2022 (Doc. Nos. 38, 39). The EEOC filed an Amended Complaint on January 27, 2023. (Doc. No. 41.)[5] At the parties' request, the Court extended Defendants' response deadline to give the parties time to engage in settlement efforts, granting the parties' five requests for additional time to engage in good faith settlement discussions and/or mediation.

---

[5] In its Amended Complaint, the EEOC identifies four former Geisinger employees as members of the class in addition to Casterline: Jodi Britton; Christina Carpenter; Michelle Glynn; and Marceline Ngassa. (*Id.* ¶¶ 95, 112, 132, 142.) Like Casterline, these individuals worked at Geisinger, requested reasonable accommodations for their disabilities, including job-protected disability leave and/or reassignment, and were subsequently terminated or forced to resign after Geisinger refused to reasonably accommodate them. (*See id.* ¶¶ 95–156, 159–61, 163.) Geisinger allegedly failed to reasonably accommodate these employees by refusing to transfer them to vacant positions that would accommodate their disabilities and by forcing them to reapply for their former positions and/or apply for new positions and then not selecting them for those positions because they were not the "most qualified" candidates. (*See id.*)

(Doc. Nos. 42, 43, 45, 46, 48.)  Unfortunately, these settlement efforts proved unsuccessful.  (*See* Doc. No. 50.)

Defendants filed their instant motion to dismiss the Amended Complaint on May 31, 2024.  (Doc. No. 57; *see* Doc. No. 60.)  The EEOC opposes the motion.  (Doc. Nos. 59, 61.)  The Court held oral argument on the motion on March 13, 2025.

## III.    Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  And a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).  Accordingly, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  "However, an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to

dismiss into one for summary judgment." *Id.* (cleaned up and internal quotations omitted). Similarly, the court "may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

As discussed *supra*, section I.E n.4, the Court considers Casterline's charge filed with the EEOC, the LOD, ALOD, and related documentation as matters of public record and integral to the Amended Complaint and the EEOC's claims. (*See* Doc. No. 41 ¶¶ 36–39 (alleging the administrative procedures that the EEOC exhausted as conditions precedent to the instant action).) *See Bimbo Bakeries USA, Inc.*, 2010 WL 598641, at *1 n.2; *see also U.S. Steel Corp.*, 2012 WL 3017869, at *11.

## IV.    Discussion

As noted above, the EEOC brings class claims against Defendants for violations of both Title I and Title V of the ADA. (Doc. No. 41 ¶¶ 40–41, 93–94, 156–163.) With respect to the Title I claims, the EEOC alleges that Defendants discriminated against Casterline and similarly situated current and former Geisinger employees based on their disabilities by: failing to reasonably accommodate them, including by refusing to provide them with job-protected leave and refusing to reassign them to vacant positions for which they were qualified; manipulating or misrepresenting job postings to prevent them from applying; refusing to permit them to return to work after taking disability-related leave; discharging them; and failing to transfer or hire/rehire them for available employment opportunities. (*Id.* ¶¶ 93–94.) Based on these same actions, the EEOC also alleges that Defendants retaliated against Casterline and similarly situated current and former Geisinger employees for engaging in protected activity, including requesting

reasonable accommodations and lodging internal complaints about discrimination, and interfered with their ADA rights in violation of Title V.  (*Id.* ¶¶ 156–63.)

Defendants seek dismissal of the Amended Complaint in its entirety on the following bases:

A. The EEOC does not plead a plausible disability discrimination claim under Title I of the ADA because it fails to allege that Casterline, as the charging party, is a qualified individual.  With respect to any disability discrimination claim premised on a failure to accommodate, the EEOC also fails to allege that Defendants breached their duty to provide a reasonable accommodation to Casterline.

B. The EEOC does not plead a plausible retaliation claim or interference claim under Title V of the ADA because it fails to allege that Casterline or any of the other identified members of the purported class are qualified individuals.

C. The EEOC fails to sufficiently identify a class of aggrieved persons.

D. The five Geisinger Defendants not named in the ALOD should be dismissed because the EEOC does not plead that they constitute a single employer along with the two Geisinger Defendants named in the ALOD.

(Doc. No. 57; *see* Doc. No. 60.)  The Court addresses each argument in turn below.

### A.    *The EEOC Has Pleaded Plausible Disability Discrimination Claims under Title I of the ADA as to Casterline.*

Title I of the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Accordingly, to assert a *prima facie* disability discrimination claim under Title I, the EEOC must plead factual allegations that raise a reasonable expectation that discovery will reveal evidence that Casterline:  (1) is disabled within the meaning of the ADA; (2) is otherwise qualified for the job, with or without reasonable accommodations; and (3) was subjected to an adverse employment decision as a result of discrimination.  *See Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010).

11

Defendants challenge the sufficiency of the second and third elements of the EEOC's Title I claims as alleged with respect to Casterline, the charging party. First, they argue that the EEOC has not pleaded any plausible Title I claims as to Casterline because the EEOC fails to sufficiently allege that she is a "qualified individual." (Doc. No. 57-2 at 12–16; Doc. No. 60 at 2–6.) Second, they contend that the EEOC has not pleaded a plausible Title I claim premised on Defendants' failure to accommodate Casterline because the EEOC fails to sufficiently allege that Defendants breached their duty to provide a reasonable accommodation to Casterline. (Doc. No. 57-2 at 16–20; Doc. No. 60 at 6–7.)

While the EEOC's Amended Complaint "is not as rich with detail as some," including this Court, "might prefer, it need only set forth sufficient facts to support plausible claims." *Fowler*, 578 F.3d at 211–12. Accepting as true the allegations in the Amended Complaint and all reasonable inferences therefrom, the Court finds that the EEOC has sufficiently alleged that Casterline is a "qualified individual" and that Defendants breached their duty to reasonably accommodate Casterline. Thus, the EEOC has stated plausible Title I disability discrimination claims as to Casterline.

## 1. The EEOC Has Sufficiently Alleged that Casterline is a "Qualified Individual."

As Defendants correctly point out, courts look to the ADA's definition of "qualified individual" and the EEOC's guidance on the "qualified individual" inquiry to determine whether this element of a disability discrimination claim has been sufficiently alleged. *See, e.g.*, *James v. N.J. Dep't of Health & Senior Servs.*, No. 20-3038, 2022 WL 1564191, at *1–2 (3d Cir. May 18, 2022); *Mundy v. City of Pittsburgh*, No. 22-cv-31, 2022 WL 2068586, at *4–5 (W.D. Pa. June 8, 2022). The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that

12

such individual holds or desires." 42 U.S.C. § 12111(8). The EEOC advises that "[t]he determination of whether an individual with a disability is 'qualified' should be made in two steps. The first step is to determine if the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc. . . . The second step is to determine whether . . . the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." 29 C.F.R. pt. 1630, app. § 1630.2(m); *see* 29 C.F.R. § 1630.2(m).

Defendants argue that the Amended Complaint falls short on both steps of the "qualified individual" determination. As to step one, Defendants assert that the Amended Complaint contains threadbare, purely conclusory allegations that Casterline was qualified for her former ophthalmology nursing position as well as the other nursing positions for which she applied. (*See* Doc. No. 57-2 at 14–16; Doc. No. 60 at 4–5 ("[T]he EEOC cannot point to one factual averment that even hinted at the prerequisites of her position or those of any of the other nursing positions Casterline allegedly applied for but was not selected.").) And as to step two, Defendants contend that the EEOC has failed to plead any factual allegations describing any function—let alone an essential function—of Casterline's former ophthalmology nursing position or any of the other nursing positions for which she applied. (*See* Doc. No. 57-2 at 14–16; Doc. No. 60 at 5–6.)

Though Defendants cite several cases to support their argument that the EEOC has failed to comply with "the law requiring the EEOC plead plausible factual predicate *on par* for a case this complex and fact intensive," the Court finds that those cases are inapt. (*See* Doc. No. 57-2 at 13; Doc. No. 60 at 2–4.) Those cases involved EEOC complaints that contained far fewer factual allegations than the EEOC's Amended Complaint in this action includes. For example, in

*EEOC v. Ruby Tuesday*, 919 F. Supp. 2d 587 (W.D. Pa. 2013), the complaint merely alleged that "[s]ince at least January 1, 2005, Defendant has subjected a class of aggrieved applicants for server, host/hostess, bartender, and other publicly visible positions to an ongoing pattern or practice of discriminatory failure to hire such persons because of their age, 40 years and older." Complaint ¶ 8(a), *Ruby Tuesday*, 919 F. Supp. 2d 587 (No. 09-cv-01330). Understandably, the court determined that this language was "pure conclusory boilerplate, containing only generic 'failure to hire' allegations" in support of a class-wide failure to hire claim under the ADEA. *Ruby Tuesday*, 919 F. Supp. 2d at 593. The court then cautioned the EEOC that "it acts at its peril" when it tries to proceed with sparse factual allegations, especially given the "recognition by our Court of Appeals that in more complex and fact intensive cases, the level of that 'plausible factual predicate' notably rises." *Id.* at 594.

Likewise, the Court in *EEOC v. UPS, Inc.*, No. 09-cv-5291, 2010 WL 3700704 (N.D. Ill. Sept. 10, 2020) ("*UPS I*"), determined that the EEOC's complaint was deficient. As in *Ruby Tuesday*, the EEOC's complaint in *UPS I* simply alleged that "UPS terminated the employment of Trudi Momsen, an employee suffering from multiple sclerosis, rather than accommodating her by extending her leave or by returning her to work in an available position which she could have performed . . . . The effect of [these] practices . . . has been to deprive Trudi Momsen of equal employment opportunities and otherwise adversely affect her status as an employee because of her disabilities." Complaint ¶¶ 8, 9, *UPS I*, 2010 WL 3700704 (No. 09-cv-5291). The court ruled that the complaint was deficient because it was "so threadbare, conclusory, and formulaic that it does not even allow the [c]ourt to reasonably infer that [the charging party] or proposed class members have a plausible basis for claiming to be otherwise qualified to perform the

essential functions of the job with or without reasonable accommodation." *UPS I*, 2010 WL 3700704, at *3.

Unlike the complaints in *Ruby Tuesday* and *UPS I*, the Amended Complaint here is not "so threadbare, conclusory, and formulaic that it does not even allow the Court to reasonably infer that" Casterline has "a plausible basis for claiming to be" a qualified individual. *Id.* Although neither the prerequisites for nor the essential functions of Casterline's own position or the positions to which she sought reassignment are described at length in the Amended Complaint, they are sufficiently alleged to raise the plausible inference that Casterline is a "qualified individual" as to both her former ophthalmology nursing position and the other nursing positions for which she applied.

Under step one of the "qualified individual" determination, the Court agrees with the EEOC that the Court can reasonably infer that Casterline satisfied the prerequisites for her own ophthalmology nursing position at Geisinger Wyoming Valley Medical Center and the other Geisinger nursing positions for which she applied from the following allegations:

- Casterline worked as a nurse in various positions at Geisinger Wyoming Valley Medical Center for over 30 years, including in the ophthalmology and cardiac care departments;

- Casterline repeatedly asked *Geisinger's recruiter* to refer her to vacant positions for which she would be qualified, including at least 19 nursing positions; and

- Casterline applied for at least some of positions to which *Geisinger's recruiter* referred her; and *Geisinger's recruiter* confirmed that Casterline was qualified for the positions for which she applied.

(*See* Doc. No. 41 ¶¶ 54, 81–83 (emphasis added).) *See Fowler*, 578 F.3d at 208, 212 (after acknowledging that plaintiff's complaint "is not as rich with detail as some might prefer," holding that plaintiff plausibly stated a Rehabilitation Act claim for failure "to transfer a disabled employee to vacant positions for which she is qualified where necessary to accommodate her disability" based on allegations that plaintiff was released by her doctor to perform sedentary

work, that she was given a light-duty clerical position, that upon learning of the elimination of this clerical position, she applied for a telephone operator position with defendant but never received any response, and that she contacted defendant's human resources consultant regarding a number of vacant sedentary jobs but never received any response);[6] *Scott v. Blossburg Borough*, No. 21-cv-01985, 2022 WL 16855580, at *4 (M.D. Pa. Nov. 10, 2022) ("Considering [plaintiff's] averments that he attempted to return to work because he felt his mental health issues were resolved, his long record with [defendant] without any performance issues due to his mental health, and the medical clearances he obtained in order to enable his return to work, the complaint clearly alleges that Scott was qualified to perform the essential functions of his job with [defendant]."); *Horton v. Virtual Officeware Healthcare Sols.*, No. 22-cv-1219, 2022 WL 16966716, at *4 (W.D. Pa. Nov. 16, 2022) (finding that plaintiff sufficiently alleged that she is qualified to perform the essential functions of her job as part of her ADA disability discrimination claim based on allegations that during her tenure, she received high praise for her job performance from management and coworkers); *see also James*, 2022 WL 1564191, at *2 ("Absent [plaintiff's] ability to credibly allege that discovery might reveal that he was qualified to participate in the [Medical Marijuana Program], the discrimination claims [premised on

---

[6] Defendants criticize the EEOC for its reliance on *Fowler*, arguing that *Fowler* is inapposite because it concerned a failure-to-transfer claim under the Rehabilitation Act rather than an ADA disability discrimination claim, and that it was "not a complex fact intensive class-wide case involving various positions at different health care facilities including skilled nursing positions," thus the sufficiency of the allegations in *Fowler* was inherently different and comparatively less than what is required here. (Doc. No. 60 at 4–5.) *Fowler* is not inapplicable because it analyzed the sufficiency of a complaint filed pursuant to the Rehabilitation Act as opposed to the ADA, since, as the Third Circuit recognized in *Fowler*, the standards for determining whether employment discrimination has occurred in violation of the Rehabilitation Act are "coextensive with the standards for determining whether a covered employer has violated the ADA." 578 F.3d at 208. While the factual and legal issues in this case are more complex than those at issue in *Fowler*, *Fowler* remains a precedential opinion from the Third Circuit—in fact, the only precedential opinion the parties have cited—on the requisite showing to plead the "qualified individual" element of an ADA discrimination claim. It is thus relevant and controlling to that issue as considered here.

plaintiff's disqualification from participation in the program as a referring physician because of his disability] were properly dismissed.").

Under step two of the "qualified individual" determination, the Court also agrees with the EEOC that the Court can reasonably infer that Casterline could perform the essential functions of her own ophthalmology nursing position at Geisinger Wyoming Valley Medical Center, with the reasonable accommodation of job-protected medical leave, and the other Geisinger nursing positions for which she applied, without reasonable accommodation, based on the following allegations:

- Casterline worked as a nurse in various positions at Geisinger Wyoming Valley Medical Center for over 30 years, including in the ophthalmology and cardiac care departments;

- At all relevant times, including while she was employed as an ophthalmology nurse, Casterline suffered from shoulder conditions that have substantially limited her abilities to lift, reach, bear weight with her arms, dress herself, and maintain her household through activities such as doing laundry and grocery shopping;

- Casterline continued to work in her ophthalmology nursing position with the aforementioned shoulder conditions between the approved medical leaves she took for her October 2017 surgery and her October 2018 surgery;

- In December 2018, Casterline requested an additional four weeks of job-protected medical leave;

- On January 25, 2019, Casterline was medically cleared to work effective January 28, 2019 and requested to return to work as an ophthalmology nurse consistent with her medical clearance;

- Casterline repeatedly asked Geisinger's recruiter to refer her to vacant positions for which she would be qualified, including at least 19 nursing positions;

- Casterline applied for at least some of positions to which Geisinger's recruiter referred her; and

- Geisinger's recruiter confirmed that Casterline was qualified for the positions for which she applied.

(*See* Doc. No. 41 ¶¶ 54, 56–57, 60–62, 64, 67–68, 71, 81-83.)  *See Fowler*, 578 F.3d at 208, 212;

*Massey v. Focke & Co., Inc.*, No. 24-cv-2, 2025 WL 713910, at *5 (M.D.N.C. Mar. 5, 2025)

(finding that the specifics of plaintiff's duties of his prior position, while "not exhaustively detailed," are adequately alleged based on allegations that plaintiff could perform all of the duties of his prior position at the level of defendant's expectations upon returning to work after surgery); *Scott*, 2022 WL 16855580, at *4; *EEOC v. Advanced Home Care, Inc.*, 305 F. Supp. 3d 672, 676 (M.D.N.C. 2018) (determining that the duties of the charging party's position, "though not described in depth," were sufficiently alleged based on allegations that she is a case manager and spends part of her time on the phone, and that the EEOC alleged sufficient factual detail for the court to reasonably infer that the charging party could have performed the essential functions of her position with her requested accommodation based on allegations that she requested the accommodation of telework, that some of her work required her to be on the telephone, and that she could perform that work with the requested accommodation); *Mahouski v. City of Pittsburgh*, No. 18-cv-864, 2018 WL 5723139, at *4 (W.D. Pa. Nov. 1, 2018) ("In Plaintiff's Complaint, he alleges that his treating neurologist released him to return to work without restriction and that he was able to perform the essential functions of his position with or without reasonable accommodations.  At this initial stage of the case, viewing these allegations of fact as true and drawing all inferences therefrom in the light most favorable to Plaintiff, the allegations are sufficient to establish that Plaintiff was otherwise qualified to perform the essential functions of the job."); cf. *Williams v. Pinnacle Health Family Care Middletown*, 852 F. App'x 678, 680 (3d Cir. 2021)("[I]t is undisputed that [plaintiff's] doctor never gave her clearance to return to work, and no accommodation has been shown that would have allowed her to work.  Therefore, she could not perform the essential functions of her employment with or without reasonable accommodation.").

The Court thus finds that, while the Amended Complaint is by no means a model pleading in this regard, the EEOC has adequately pleaded that Casterline is a qualified individual for her former ophthalmology nursing position, as well as the other nursing positions for which Geisinger's recruiter confirmed she was qualified and to which she subsequently sought reassignment.

      2.      **The EEOC Has Sufficiently Alleged that Defendants Breached Their Duty to Reasonably Accommodate Casterline.**

As explained above, to state a *prima facie* disability discrimination claim under Title I, the EEOC must plead factual allegations that raise a reasonable expectation that discovery will reveal evidence that Casterline: (1) is disabled within the meaning of the ADA; (2) is otherwise qualified for the job, with or without reasonable accommodations; and (3) was subjected to an adverse employment decision as a result of discrimination. *See Sulima*, 602 F.3d at 185. Where, as here, the disability discrimination claim is premised on a failure to accommodate, the EEOC must also plead that Defendants "failed to satisfy [their ADA] obligations to engage in the interactive process" with Casterline once she requested a reasonable accommodation. *See Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 39–41 (3d Cir. 2018) ("To summarize, the allegations in the complaint raised three plausible inferences: (1) Ruggiero was a qualified individual with a disability; (2) MNMC was on notice of Ruggiero's alleged disability and request for an accommodation; and (3) MNMC failed to satisfy its obligations to engage in the interactive process. At the pleadings stage, these inferences are sufficient to allow the failure to accommodate claim to proceed.");[7] *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311 (3d Cir.

---

[7] The EEOC claims that "Geisinger urges the Court to hold EEOC to a higher pleading standard requiring it also to 'establish' that Geisinger 'did not properly engage in the interactive process' by 'demonstrat[ing]' that 'the employer did not make a good faith effort to assist the employee in seeking accommodations' and that 'the employee could have been accommodated but for the employer's lack of good faith' . . . but the Third Circuit has never required any of that at the pleading stage." (*See* Doc. No.

1999) ("Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." (quoting 29 C.F.R. pt. 1630, app. § 1630.9)).

Here, the EEOC has adequately pleaded that Defendants failed to satisfy their ADA obligations to engage in the interactive process with Casterline.  It alleges that:  (1) Casterline was disabled and her employer knew it; (2) she requested an accommodation or assistance; (3) her employer did not make a good faith effort to assist; (4) she could have been reasonably accommodated.  *See Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017); *Baylis v. Scantek, Inc.*, No. 24-cv-828, 2024 WL 4216458, at *2 (E.D. Pa. Sept. 17, 2024); *Gerber v. Dauphin Cnty. Tech. Sch.*, No. 23-cv-2039, 2024 WL 1520965, at *6 (M.D. Pa. Apr. 8, 2024) ("To establish that the defendant did not properly engage in the interactive process, plaintiff must demonstrate that: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for [ ] her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." (internal quotations omitted)).

Defendants resist this conclusion, arguing that the Amended Complaint lacks any factual allegations that Defendants failed to engage with Casterline in good faith.  (Doc. No. 57-2 at 18–19.)  Defendants further argue for the dismissal of the failure-to-accommodate claim as a matter of law based on the EEOC's "inherently contradictory" allegations as to Casterline's requests for

---

59 at 20–21.)  The Court finds that the EEOC has no basis for this claim in light of the Third Circuit's holding in *Ruggerio*.

reasonable accommodations, which establish that there was not a lack of good faith on

Defendants' part and that Defendants could not have reasonably accommodated Casterline.  (*Id.*

at 17–20.)  Neither argument persuades.

Defendants ask this Court to draw several "reasonable" inferences in their favor, which

the Court cannot do at this stage.  (*See, e.g.*, Doc. No. 57-2 at 18 ("[T]he EEOC alleges

Geisinger refused to provide Casterline with additional job-protected leave in December 2018

and informed her that it would not hold her position; yet, the EEOC also pleads Casterline

remained employed until March 28, 2019.  Thus, implicit in these allegations is an admission

that Geisinger did in fact provide Casterline with her requested additional leave in December

2018.  Moreover, the EEOC's claim that Geisinger's inability to hold Casterline's position after

she had been out in excess of a year is not reasonable."); *id.* at 18–19 ("Noticeably absent is any

pleading that Geisinger ever re-posted Casterline's position.  Instead, the EEOC pleads

Casterline continued to apply for positions beginning in February 2019 and continuing into July

2019.  The EEOC cannot plead Geisinger's removal of the post was a lack of good faith when

there is not a single fact alleged that Geisinger ever re-posted the position.").)  *See Iqbal*, 556

U.S. at 678; *see also Ruggiero*, 736 F. App'x 35 at 39–40 (reversing district court's dismissal of

reasonable accommodation claim,, rejecting the district court's determination that the allegations

demonstrated that defendant had satisfied its ADA obligations to engage in an interactive process

with plaintiff as a matter of law, and finding instead, that the allegations plausibly suggested that

the defendant "prematurely ceased the interactive process").

Instead, accepting the EEOC's allegations as true, the Court agrees with the EEOC that

its allegations "raise the plausible inference that [Defendants] failed to properly engage in the

interactive process" with Casterline.  *See Ruggiero*, 736 F. App'x 35 at 40.  (*See* Doc. No. 59 at

24–25.)  The EEOC alleges that in December 2018, Casterline sought four weeks of job-protected medical leave to recover from surgery complications with her left shoulder, which were causing her to experience increased limitations on the use of her left arm and shoulder. (Doc. No. 41 ¶¶ 63–64.)  Defendants refused to provide her with job-protected leave and informed her that they would not hold her position open while she took additional leave.  (*Id.* ¶ 64.)  But Defendants did not post Casterline's position as vacant until approximately January 18, 2019, shortly before Casterline was expected to return from leave.  (*Id.* ¶ 66.)

On January 25, Casterline informed Defendants that she was medically cleared to return to work effective January 28.  (*Id.* ¶¶ 59, 68–69.)  But also on or about January 25, Defendants removed the posting for Casterline's position from their website at the request of management, and the next day, management expressed disinterest in returning Casterline to that position because of how much medical leave she had taken since 2017.  (*Id.* ¶¶ 74–75.)

Defendants then told Casterline that they would not reopen her position or otherwise permit her to return to that position.  (*Id.* ¶¶ 74, 76–77.)  Instead, Casterline would have to apply and be selected for another position within a limited period or face termination, even though her original position allegedly had not been filled.  (*Id.* ¶¶ 74, 76–79.)  With the help of Geisinger's recruiter, Casterline proceeded to apply for various vacant nursing positions with Defendants, but she was not selected for any of them.  (*Id.* ¶¶ 80–87, 92.)  While she was applying for these other vacant positions, Casterline repeatedly communicated with Defendants' human resources personnel and her union about the allegedly discriminatory treatment that she faced.  (*Id.* ¶¶ 88–89.)

Together, these allegations raise the inference that Defendants did not engage in the interactive process with Casterline as required under the ADA and thus breached their duty to

reasonably accommodate her. *See Ruggiero*, 736 F. App'x at 40 (finding that allegations that plaintiff requested an accommodation and proposed two accommodations to defendant, both of which were rejected by defendant without proposing an alternative, plausibly suggested that defendant "barred [plaintiff] from the individualized inquiry to which she was entitled under the ADA"); *Baylis*, 2024 WL 4216458, at *2–3 (finding that plaintiff sufficiently pled that defendant "did not participate in a good faith negotiation process" based on allegations that plaintiff's manager stated he would move her back to the second floor, he failed to do so within the relevant period, and plaintiff was aware that her manager had previously failed to act on requests for accommodations by a coworker); *see also McFadden v. Biomedical Sys. Corp.*, No. 13-cv-4487, 2014 WL 80717, at *5 (E.D. Pa. Jan. 9, 2014) (holding that plaintiff stated a plausible failure-to-accommodate claim by pleading that defendant, his employer, "refused to make reasonable accommodations to his known physical or mental limitations" from allegations that defendant denied plaintiff's request for a reasonable accommodation, which was medical leave to undergo surgery).

***

For the reasons stated above, the Court finds that the EEOC has sufficiently alleged that Casterline is a "qualified individual" for purposes of the EEOC's disability discrimination claims and that Defendants breached their duty to provide a reasonable accommodation to Casterline for purposes of the EEOC's discrimination claim premised on a failure to accommodate. Because Defendants have raised no other challenges as to these claims, the Court thus finds that the EEOC has pleaded plausible disability discrimination claims under Title I of the ADA as to Casterline. Accordingly, the Court denies Defendants' motion to dismiss the EEOC's disability discrimination claims as to Casterline.

**B.     The EEOC Has Pleaded Plausible Retaliation and Interference Claims under Title V of the ADA as to Casterline.**

Defendants argue that the EEOC has failed to plead retaliation and interference claims under Title V of the ADA because the EEOC has not sufficiently alleged that Casterline or any of the other four identified individuals—Britton, Carpenter, Glynn, and Ngassa—are qualified individuals under the ADA.  (Doc. No. 57-2 at 27–29.)  In light of the Court's previous finding that the EEOC has sufficiently alleged that Casterline is a qualified individual, this argument fails.  Because Defendants do not challenge any other aspect of these claims (*see id.*; Mar. 13, 2025 Rough Hr'g Tr. ("Hr'g Tr.") 36:3–19), the Court denies Defendants' motion to dismiss the EEOC's retaliation and interference claims as to Casterline.[8]

**C.     The EEOC Has Sufficiently Identified a Class of Aggrieved Persons.**

In its Amended Complaint, the EEOC seeks relief for a class of aggrieved current and former employees of Defendants who are qualified individuals with a disability under the ADA and who were either (1) "denied the opportunity to return to work in their own positions after twelve weeks of FMLA leave relating to their disabilities or eight or more weeks of non-FMLA leave relating to their disabilities" or (2) "unable to continue working or return to work in their own positions (because Geisinger did not accommodate them or because no accommodations would permit such continuation or return) and were denied reassignment to, transfer to, or hire/rehire in vacant positions for which they were qualified with or without an accommodation." (Doc. No. 41 ¶ 41.)

---

[8] The Court also notes that the Court previously ruled that the EEOC sufficiently pleaded an ADA interference claim in its original Complaint and thus denied Defendants' first motion to dismiss as to that claim.  (Doc. No. 38 at 33–35.)

Defendants challenge the sufficiency of the EEOC's class claims.[9]  (*See* Doc. No. 57-2 at

23–27.)  They argue that the EEOC's claim on behalf of a putative aggrieved class of "qualified

individuals under the ADA" "does not rise beyond a mere speculative level" because the EEOC

has not alleged that any identified class member—Casterline or the four other identified

individuals—is a "qualified individual."  (*Id.*)  Defendants further assert that the EEOC has not

pleaded sufficient facts to identify the "general outlines of membership of the class" of

unidentified aggrieved individuals.  (*Id.* at 26–27.)  Because Defendants' first argument is

foreclosed by the Court's determination that the EEOC has sufficiently alleged that Casterline is

a qualified individual under the ADA, the Court addresses only Defendants' second argument.

As Defendants acknowledge, the EEOC is not required to identify or name every

potential class member in its complaint.  *See U.S. Steel Corp.*, 2012 WL 3017869, at *9–10.  Nor

is the EEOC required "to plead detailed factual allegations supporting the individual claims of

every potential member of a class."  *EEOC v. UPS, Inc.*, No. 9-cv-5291, 2013 WL 140604, at *6

(N.D. Ill. Jan. 11, 2013) ("*UPS II*").  Courts have found *Twombly/Iqbal* and Federal Rule of Civil

Procedure 8 satisfied where the EEOC's complaint identifies:  (1) the statutes that the employer

allegedly violated; (2) the time frame in which the alleged violations occurred; (3) the names of

at least one presently identified victim; (4) a general description of the class of aggrieved

persons; (5) the specific claims alleged and their elements as to the charging party and the class

of aggrieved persons; (6) the types of conduct to which the named claimants and the identified

---

[9] Defendants also argue that the EEOC's failure to plead Casterline is a qualified individual under the ADA "strips the EEOC's authority to assert any class claim arising out of Casterline's Charge."  (Doc. No. 57-2 at 20–23; Doc. No. 60 at 7–9.)  In response, the EEOC asserts that its authority to bring a class-wide enforcement action against Defendants does not depend on plausibly stating a claim for the charging party.  (Doc. No. 59 at 8–12; Doc. No. 61 at 5–7.)  Having already determined that the EEOC has plausibly pleaded that Casterline is a qualified individual under the ADA, the Court need not address this standing argument.

class members were subjected; and (7) the remedies being sought.  *See, e.g.*, *EEOC v. JBS USA, LLC*, 481 F. Supp. 3d 1204, 1216 (D. Colo. 2020); *UPS II*, 2013 WL 140604, at *6; *EEOC v. 5042 Holdings Ltd.*, No. 09-cv-61, 2010 WL 148085, at *2 (N.D. W. Va. Jan. 11, 2010); *see also EEOC v. Il Fornaio (Am.) LLC*, No. 22-cv-05992, 2024 WL 4003318, at *4 (C.D. Cal. Apr. 3, 2024).

For example, in *UPS II*, the EEOC alleged that UPS "maintained an inflexible 12-month leave policy which [did] not provide for reasonable accommodation of qualified individuals with disabilities and which instead provide[d] for termination of their employment in violation of [the ADA]."  2013 WL 140604, at *5.  The EEOC also "offer[ed] detailed factual allegations as to how the policy affected two employees . . . and alleged that the same policy was applied across the board to other employees."  *Id.*  In deciding that the allegations for the unidentified class members were sufficient, the court found that the EEOC's amended complaint "identifie[d] the statutes that UPS allegedly violated; the time frame in which the alleged violations occurred; the names of two presently identified victims; a general description of the class of aggrieved persons; the specific claims alleged and their elements as to the charging party and the class of aggrieved persons; the types of conduct to which the named claimants and the unidentified class were subjected; and the remedies being sought."  *Id.* at *6.  Based "[o]n the face of the facts pleaded in EEOC's amended complaint," the court ruled that it could "reasonably infer that UPS discriminated against other 'qualified individuals' when it enforced its leave policy."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Defendants contend that "[t]he same cannot be said for the EEOC's [Amended Complaint] in this case."  (Doc. No. 57-2 at 26.)  The Court disagrees.  The EEOC has adequately "identif[ied] the general outlines of membership of the class" by sufficiently alleging

in its Amended Complaint: the statutes that Defendants allegedly violated (Doc. No. 41 ¶ 40); the time frame in which the alleged discrimination occurred (*id.* at 28–29 ¶¶ C–F);[10] the names of at least one aggrieved party (*id.* ¶¶ 53–54, 95, 112, 132, 142); a general description of the class of aggrieved persons (*id.* ¶¶ 40, 94, 156–166); the specific claims alleged and their elements as to the charging party and the class of aggrieved individuals (*id.* ¶¶ 53–166); the types of conduct to which the named claimants and the identified class members were subjected (*id.* ¶¶ 53–92, 95–155); and the remedies sought (*id.* at 31 ¶¶ A–H). Based on these allegations, the Court can reasonably infer that Defendants discriminated against other qualified individuals with a disability, retaliated against other persons who engaged in protected activity, and interfered with the ADA rights of other persons in the ways outlined in the Amended Complaint. (*See* Doc. No. 41 ¶¶ 94, 159–60, 163.) *See EEOC v. JBS USA, LLC*, 481 F. Supp. 3d at 1216 ("Similar to *UPS*, the EEOC has alleged the statutes under which its claims are brought; the time frame in which the discrimination and harassment allegedly occurred; the names of the aggrieved parties; the bases upon which the aggrieved parties were allegedly discriminated; the types of conduct to which the aggrieved parties were subjected; and the remedies sought. The Court finds that these allegations are sufficient to put defendant on notice of the EEOC's claims." (internal citations omitted)); *UPS II*, 2013 WL 140604, at *6; *5042 Holdings Ltd.*, 2010 WL 148085, at *2; *see also Il Fornaio (Am.) LLC*, 2024 WL 4003318, at *4.

---

[10] While the EEOC alleges that Defendants have violated Title I and Title V of the ADA "[s]ince at least January 1, 2018" (Doc. No. 41 ¶ 40), it seeks damages limited to the period of March 26, 2019 through the present (*id.* at 28–29 ¶¶ C–F), consistent with this Court's prior ruling that the EEOC is time-barred from asserting class claims based on activity prior to March 26, 2019 (Doc. No. 38 at 37–44). During oral argument on the instant motion, the EEOC confirmed that it is not bringing class claims based on activity prior to March 26, 2019. (Hr'g Tr. 69:12–70:4.)

The Court thus finds that the EEOC has sufficiently identified a class of aggrieved persons in its Amended Complaint.  Accordingly, the Court dismisses Defendants' motion to dismiss the EEOC's class claims.

### D.    The EEOC Has Not Properly Exhausted Administrative Remedies as to All Defendants.

Last, Defendants argue for the dismissal of the Geisinger entities that were not named as Respondents in the ALOD (Doc. No. 57-2 at 30–31).[11]

The ADA incorporates, by reference, Section 706 of Title VII of the Civil Rights Act of 1964.  42 U.S.C. § 12117(a); *see also U.S. Steel Corp.*, 2012 WL 3017869, at *3.  Under Section 706, the EEOC may sue on behalf of one or more persons aggrieved by an unlawful employment practice, as it has done here.  42 U.S.C. § 2000(e)–5(f)(1); *see also U.S. Steel Corp.*, 2012 WL 3017869, at *3.  "When EEOC sues in its own name, it may litigate only those claims which have been subjected to the complete administrative processing required by Title VII."  *U.S. Steel Corp.*, 2012 WL 3017869, at *10 (cleaned up).

Before the EEOC can initiate suit, it must:  "(1) receive a charge from an individual and notify the employer of the charge; (2) investigate that charge and related charges; (3) determine

---

[11] The Court previously granted Defendants' motion to dismiss the Geisinger entities named as Defendants in the Complaint that were not named as Respondents in the ALOD.  (Doc. No. 38 at 9–16.)  Based on the arguments raised in the parties' briefing on Defendants' motion to dismiss the original Complaint, the Court previously analyzed the issue of exhaustion as to the Geisinger entities that were not named in the ALOD using the "single employer" test set forth in *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72 (3d Cir. 2003).  (*See* Doc. No. 38 at 9–16.)  The Court dismissed those entities from the EEOC's original Complaint after finding that the EEOC had insufficiently alleged that those entities, together with the other named Defendants, constituted a "single employer" under *Nesbit*.  (*Id.* at 15–16.)

But now the EEOC opposes the dismissal of these entities based on *Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir. 1980), *vacated on other grounds sub nom. Retail, Wholesale & Dep't Store Union, AFL-CIO v. G.C Murphy Co.*, 451 U.S. 935 (1981).  (*See* Doc. No. 59 at 30–31.)  Upon further review, the Court has determined that the *Glus* test is applicable here, where the EEOC has brought a Title VII action against certain Geisinger entities that were not named in the ALOD.  Accordingly, the Court now analyzes the issue of exhaustion as to these entities under *Glus*.

that reasonable cause exists to believe that discrimination occurred; and (4) attempt conciliation of all charges against the employer." *Id.* (citing 42 U.S.C. § 2000(e)–5(b)). "Every step in the statutory scheme, including notice, investigation, determination and conciliation is intended to be a condition precedent to the following step and, ultimately, to suit." *Id.* (cleaned up).

Defendants contend that the EEOC named only two Geisinger entities in its ALOD—Geisinger Wyoming Valley Medical Center and Geisinger Health. (Doc. No. 57-2 at 30.) The ALOD lists "Geisinger Health/Geisinger Health System" as a Respondent (Doc. No. 57-5 at 1), and the Amended Complaint names Geisinger Health System Foundation d/b/a Geisinger Health System ("Geisinger Health System") as a Defendant (Doc. No. 41 ¶ 5). Defendants claim there are no legal entities registered with the Commonwealth of Pennsylvania named "Geisinger Health System Foundation," "Geisinger Health System Foundation D/B/A Geisinger Health System," or "Geisinger Health System." (Doc. No. 57 at 1 n.1.) In essence, Defendants argue for the dismissal of Geisinger Health System from this action because it is a nonexistent entity. The Court cannot dismiss Geisinger Health System on this basis because the EEOC alleges that Geisinger Health System has been incorporated and continuously doing business in Pennsylvania at all relevant times (Doc. No. 41 ¶ 5), and the Court must accept that allegation as true at this stage.

Thus, in the Amended Complaint there are four Geisinger entities named as Defendants—Geisinger Clinic, Geisinger Health Plan, Geisinger Medical Center, and Geisinger Holy Spirit Hospital—that Defendants argue must be dismissed because they were not named in the ALOD and cannot be construed as a single employer or integrated enterprise along with the other three Geisinger Defendants based on the EEOC's conclusory allegations. (Doc. No. 57-2 at 30–31; *see, e.g.*, Doc. No. 41 ¶ 14 ("At all relevant times, Geisinger Health/Geisinger Health

System and its affiliates, subsidiaries, and entities, including but not limited to the other named Defendants, have operated in such a manner as to constitute an integrated enterprise or a single employer.").)

As noted, even when the EEOC is the party bringing suit, "[a] Title VII action ordinarily may be brought only against a party previously named in" the relevant administrative proceeding. *Schafer v. Bd. of Pub. Educ.*, 903 F.2d 243, 251 (3d Cir. 1990); *see also Smith v. Del. River Stevedores*, No. 07-cv-1864, 2008 WL 4890135, at *3 (E.D. Pa. Nov. 10, 2008) ("To properly exhaust administrative remedies with respect to a particular defendant, that defendant must ordinarily have been named in the EEOC's charge."). However, the Third Circuit "recognizes an exception when the unnamed party received notice and when there is a shared commonality of interest with the named party." *Schafer*, 903 F.2d at 252 (citing *Glus*, 629 F.2d at 251). In *Glus*, the Third Circuit established a four-factor test to determine whether a named defendant and an unnamed defendant share a "commonality of interest":

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

629 F.2d at 251 (cleaned up).[12] This test "is not a mechanical one; no single factor is decisive. Instead each factor should be evaluated in light of the statutory purposes of Title VII and the interests of both parties." *Id.*

---

[12] The exception as described in *Schafer* has been interpreted as a "streamlined" version of the four-factor test in *Glus*, wherein the *Glus* factors are considered to determine whether there is a "shared

1.    **Notice**

The Court starts with the question of whether the four Geisinger entity Defendants at issue received notice of the operative EEOC charge filed by Casterline.  The EEOC argues that these Defendants received actual notice of the charge before conciliation because the ALOD copied Defendants' "common attorney" and implicated all facilities where the allegedly discriminatory policies and practices apply.  (Doc. No. 59 at 30–31; *see* Doc. No. 57-5 at 2 ("Respondent has subjected a class of aggrieved persons who are protected from discrimination by the ADA to an ongoing pattern or practice of discrimination in violation of the Act . . . at its facilities at which the above referenced policy or practice apply.").)  *See Christaldi-Smith v. JDJ, Inc.*, 367 F. Supp. 2d 756, 764 (E.D. Pa. Apr. 26, 2005) ("The Third Circuit has construed 'received notice' to require a showing that the unnamed party had actual knowledge of the EEOC complaint." (citing *Schafer*, 903 F.2d at 252)).

The Court questions, however, whether the ALOD is the appropriate starting point for determining whether the notice requirement was satisfied.  Although both parties seem to assume that it is, both the language of the four-factor test announced in *Glus* and the application of that test by the Third Circuit and courts in this district suggest that the pertinent timeframe for analyzing whether unnamed defendants received notice of the allegations is at the time the EEOC charge is filed—not when the EEOC, after investigating the charge, determines that unlawful employment practices have occurred.  *See, e.g.*, *Glus*, 629 F.2d at 251; *Schafer*, 903 F.2d at 252 (finding the *Glus* exception inapplicable in part because "Schafer failed to name the Federation in his initial complaint before the EEOC, although he named the Board");

---

commonality of interest" between the named and unnamed defendants.  *See Ford-Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 605 n.5 (E.D. Pa. 2015) (internal quotations omitted).

*Middlebrooks v. Teva Pharms. USA, Inc.*, No. 17-cv-00412, 2018 WL 705058, at *5 (E.D. Pa.

Feb. 5, 2018) (determining that unnamed defendant, Teva Israel, "had sufficient notice of the

EEOC complaint" as "[t]he discriminatory charge included repeated references to the alleged

discriminatory acts of . . . Israeli team members, all of whom were based in the Teva Israel

global headquarters"); *Ford-Greene*, 106 F. Supp. 3d at 606 ("In applying *Glus,* several courts in

this district have determined that where a defendant is not named as a defendant in the caption of

the administrative proceeding, but is named in the body of the complaint, that defendant has

sufficient notice to satisfy the general rule." (internal quotations omitted) (collecting cases)).

Casterline's charge filed with the EEOC names and references *only* Geisinger Wyoming Valley

Medical Center.  (Doc. No. 25-1.)

   And even assuming that the ALOD can be the operative document, the Court is not

convinced that the EEOC's reference in the ALOD to Respondent's "facilities at which the

above referenced policy or practice apply" satisfies the notice requirement.  (*See* Doc. No. 57-5

at 2.)  The Court understands the "above referenced policy or practice" to refer to the policy or

practice that the EEOC concludes the Respondent maintained in the prior paragraph of the

ALOD, i.e., "a policy or practice that violates the ADA in that Respondent fails to provide

reasonable accommodations, such as reassignment or other employment opportunities, and that

Respondent unlawfully requires disabled persons to compete for reassignments or such

opportunities."  (*See id.*)  But this description is merely a conclusory allegation, and the ALOD

does not otherwise contain sufficiently specific information to frame this policy or practice in a

way that Defendants can identify to which "facilities" the EEOC is referring.  *See Dulgiyer v.

DePuy Synthes*, No. 23-cv-3889, 2024 WL 944220, at *6–7 (E.D. Pa. Mar. 5, 2024) (finding that

plaintiff failed to put Johnson & Johnson on notice of the claims arising from plaintiff's first

EEOC charge, as a statement in the body of the administrative complaint that "[Respondent] is part of the Johnson & Johnson Family Companies" "hardly puts Johnson & Johnson on notice that it engaged in any discriminatory conduct," but that plaintiff did put Johnson & Johnson on notice of plaintiff's retaliation claims in plaintiff's second EEOC charge because the body of that charge named Johnson & Johnson as one of plaintiff's prior employers and alleged that plaintiff was retaliated against by Respondent "and other entities," that "agreements and contracts involving liabilities" existed "throughout the purchases and buyouts of [plaintiff's] employers," and that there was "an interest in extinguishing [discrimination] claims and retaliating against employees for bringing such claims that passed, transferred, and continued to exist throughout [plaintiff's] employment" (internal quotations omitted)); *Meyers v. Cal. Univ. of Pa.*, No. 12-cv-1258, 2013 WL 795059, at \*12 (W.D. Pa. Mar. 4, 2013) (finding that plaintiff's EEOC charge against his employer "hardly put" the unnamed employee defendants on notice that they engaged in any alleged discriminatory conduct, where the charge contained "one fleeting reference" that those defendants planned to "'get rid of' [p]laintiff after he would not allow them to violate the applicable search committee procedures" and another allegation that one defendant commented that he did not consider the 80 hours plaintiff spent renovating a classroom to be "service"). And without a sufficiently clear identification of the other "facilities" referenced in the ALOD, it is of no consequence that the ALOD copied the "common attorney" that ultimately represented all named Defendants in this civil action.

Nevertheless, Defendants' motion for reconsideration filed with the EEOC in response to the ALOD explicitly references and attaches three Geisinger policies, each of which lists the entities to which the policies apply. (*See* Doc. No. 25-5.) While the Court is wary of the sufficiency of the notice at that point in time under *Schafer*, 903 F.2d at 252, this leads the Court

to reasonably infer that Defendants had notice of the operative charge either when or shortly

after the EEOC issued its ALOD.  The Court need not ultimately decide the notice issue,

however, because even if the Court concludes the notice requirement was satisfied as to the four

unnamed Defendants, the Court finds that the EEOC has failed to plausibly allege that these

entities share a commonality of interest with the named Defendants based on the *Glus* factors.

The Court addresses these factors in turn.

### 2.    **First *Glus* Factor**

The first factor asks whether the roles of the unnamed parties could, through reasonable

effort by the complainant, be ascertained at the time of the filing of the EEOC complaint.  *Glus*,

629 F.2d at 251.  Because the EEOC asserts that notice was provided at the time it issued its

ALOD, the Court considers whether, at that time, the EEOC could have ascertained the roles of

the four unnamed Defendants through reasonable effort.  Geisinger's allegedly discriminatory

leave and reassignment policies and practices to which the class was subjected are partially

reflected in written policy documents that explicitly state that they apply to Geisinger Health,

Geisinger Wyoming Valley Medical Center, and the four Defendants not named in the ALOD.

(Doc. No. 41 ¶¶ 17, 22.)  When Casterline, the charging party, worked with a Geisinger recruiter

to identify vacant positions after Defendants refused to hold her ophthalmology nursing position

open during her last medical leave, Geisinger's recruiter referred her to positions at Geisinger

Wyoming Valley Medical Center, where she had most recently worked, and at other Geisinger

entities, including at least one of the unnamed Defendants, Geisinger Health Plan.  (*Id.* ¶ 26.)

These allegations, in combination with the references to the discriminatory "policy or practice"

and Respondent's failure to reassign Casterline to a comparable position, lead the Court to infer

that the EEOC could have reasonably ascertained the roles of the unnamed Defendants when it

issued the ALOD.  This first factor thus weighs in Defendants' favor.

34

### 3.    Second *Glus* Factor

With respect to the second factor, the Court considers whether, under the circumstances, the interests of the named parties are so similar to those of the unnamed parties that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed parties in the EEOC proceedings.  *Glus*, 629 F.2d at 251.  As alleged in the Amended Complaint, Geisinger Health/Geisinger Health System is the corporate parent to all of its affiliates, subsidiaries, and entities, which include all of the other Defendants.  (Doc. No. 41 ¶ 42.)  Geisinger Health and its subsidiaries, affiliates, and entities, (including various combinations of the other Defendants) share common officers—e.g., Geisinger Health, Geisinger Wyoming Valley Medical Center, Geisinger Medical Center, and Geisinger Clinic share a president, and Geisinger Health's vice president serves as secretary of Geisinger Wyoming Valley Medical Center, Geisinger Medical Center, Geisinger Clinic, and Geisinger Health Plan.  (*Id.* ¶¶ 28–33.)  All Defendants share a corporate address.  (*Id.* ¶¶ 34–35.)  Geisinger presents itself, both internally and externally, as a single entity, based on:  written company policies; the Geisinger.org and Geisinger job application websites; common forms for employees seeking disability accommodations; the use of a single compliance hotline number; and the use of a single email address from which to send job application confirmations and rejections.  (*Id.* ¶¶ 17–19, 21–25, 27.)

Further, Geisinger Health/Geisinger Health System requires the other Defendants to comply with its policies and practices relating to leave and reassignment that, as previously discussed, are applicable to the other Defendants as stated in the relevant policy documents.  (*Id.* ¶¶ 15–18, 22–23.)  And "Geisinger Health and its subsidiaries, affiliates, and entities also share the same personnel, forms, and resources to manage employee requests for reasonable

accommodations, complaints of discrimination or retaliation, and recruiting and hiring." (*Id.* ¶ 20.)

Defendants, in turn, argue that these allegations present a "sanitized mischaracterization of public information," that Geisinger Health and its subsidiaries, affiliates, and members are all individual, legally distinct corporate entities, and that the EEOC's allegations of common management and *de minimis* coordination are insufficient bases to disregard Defendants' separate corporate forms. (Doc. No. 57-2 at 31.)

Aside from Geisinger Health as the "parent company," the Court cannot ascertain the nature of the corporate structures of any other Defendant or the relationship between the Defendants—i.e., whether they operate as separate and distinct entities—based on the allegations in the Amended Complaint. *See Middlebrooks*, 2018 WL 705058, at *4 ("Despite defendant's attempt to portray these two companies as separate and distinct, they have undeniably similar interests for purposes of voluntary conciliation and compliance. Teva USA [named defendant] is "100% owned" by Teva Israel [unnamed defendant], and Teva USA is listed as one of Teva Israel's 'principal facilities and properties.'"); *Concha v. Perfecseal, Inc.*, No. 13-cv-5709, 2014 WL 4634965, at *2 (E.D. Pa. Sept. 15, 2014) ("Bemis represented in [its] letter [to the EEOC] that its participation in the proceeding was to be through Perfecseal, the named party. Bemis refers to itself as 'Bemis Company, Inc. (dba Perfecseal).' As the parent company, Bemis' interests are similar and aligned with those of Perfecseal."); *Lowenstein v. Catholic Health East*, 820 F. Supp. 2d 639, 646 (E.D. Pa. 2011) (finding that the second *Glus* factor favors plaintiff because although plaintiff's charge against plaintiff's employer did not name plaintiff's colleague, plaintiff's employer and colleague shared a common interest in defending against

plaintiff's allegations since the employer can be held liable for its employees' discriminatory conduct).

Nevertheless, the EEOC's allegations that Geisinger Health required all named Defendants' compliance with the allegedly discriminatory policies and practices and that all Defendants share the same human resources personnel plausibly "establish[ ] an element of control over business operations" that defeats Defendants' argument that the Defendants are separate and distinct corporate entities. *See Middlebrooks*, 2018 WL 705058, at *4. These allegations are sufficient enough to persuade the Court that both the named and unnamed Defendants have "undeniably similar interests for purposes of voluntary conciliation and compliance" with the EEOC. *Middlebrooks*, 2018 WL 705058, at *4 (determining the second *Glus* factor weighs in plaintiff's favor based on allegations that plaintiff, an employee of the named defendant in plaintiff's EEOC complaint (Teva USA), was supervised by an employee of the unnamed defendant (Teva Israel), that plaintiff's supervisor discriminated against him, and that human resources' investigation of plaintiff's discrimination complaints included an assessment of "the working relationships between the Global Facilities Management team in the United States and the Leadership Team in Israel"); *see Williams v. Carson Concrete Corp.*, No. 20-cv-5569, 2021 WL 1546455, at *2 (E.D. Pa. Apr. 20, 2021) ("[Plaintiff] offers only one allegation suggestive of a 'commonality of interest' between Carco and Carson:  The two corporations share a corporate address.  The Complaint contains no other substantive allegations regarding Carco's relationship with Carson or its involvement in the alleged discriminatory conduct.  This single allegation does not support a plausible inference that these Defendants share a commonality of interest with respect to Plaintiff's EEOC proceedings.").  Though a close call, the Court finds this factor weighs in favor of the EEOC.

### 4. __Third *Glus* Factor__

The third factor asks whether their absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed parties. *Glus*, 629 F.2d at 251. Though Defendants have not argued any such actual prejudice, the Court can reasonably infer prejudice based on the EEOC's reasonable cause findings made against the named Defendants. (*See* Doc. No. 57-5.) *Cf. Fang v. WuXi Biologics USA LLC*, No. 24-cv-172, 2024 WL 3696477, at *6 (E.D. Pa. Aug. 7, 2024) ("It appears, from the dismissal of Plaintiff's EEOC Charge, that WuXi Cayman was not prejudiced by its absence from the EEOC proceedings."); *see also Middlebrooks*, 2018 WL 705058, at *5 ("Teva Israel sets forth only conclusory allegations that it was prejudiced. Absent an allegation of actual prejudice, this factor militates against defendant. In addition, the EEOC proceedings resolved in Teva USA's favor, and there were no cause findings."). Thus, this factor also weighs in favor of Defendants.

### 5. __Fourth *Glus* Factor__

Regarding the fourth and final factor, the Court considers whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. *Glus*, 629 F.2d at 251. This factor weighs in favor of Defendants no matter whether the Court considers the relationship between the unnamed Defendants and Casterline or the unnamed Defendants and the EEOC.

With respect to Casterline, the Amended Complaint contains one allegation that Casterline applied to at least one job at Geisinger Health Plan as part of her efforts to seek reassignment following her return from her last medical leave. (Doc. No. 41 ¶ 26.) The Court cannot reasonably infer from this singular allegation that Geisinger Health Plan represented to Casterline that its relationship with her was through one of the named Defendants, even against the backdrop of the allegation that Casterline "received all confirmations of her applications and

all rejection notices from the same email address, regardless of which entity she had applied with." (*See id.* ¶ 27.) *Cf. Kern v. Phoenixville Hosp., LLC*, 342 F.R.D. 324, 329 (E.D. Pa. 2022) ("Plaintiff also alleges that her 'employment offer letter was signed by [TH]' on behalf of Defendant [(Plaintiff's employer)], and that TH issued certain employment policies that were enacted by Defendant—both signs that TH intended its relationship with Plaintiff to be conducted in part through Defendant."). There are otherwise no allegations in the Amended Complaint linking Casterline to any of the other three unnamed Defendants.

The same reasoning applies to the relationship between the unnamed Defendants and the EEOC as the complainant. There are no allegations linking any of the other identified individuals to the unnamed Defendants. Indeed, the Amended Complaint is devoid of non-conclusory, factual allegations as to any discriminatory conduct on the part of any unnamed Defendant. And none of the materials relating to the EEOC proceedings that the Court may consider at this stage of the litigation indicate how, if at all, the unnamed Defendants represented themselves to the EEOC.

***

On balance, the *Glus* factors weigh against concluding that the four unnamed Geisinger entity Defendants are excused from the exhaustion requirement because they share a commonality of interest with the named Defendants. Accordingly, the Court finds that the EEOC has failed to exhaust its administrative remedies as to Defendants Geisinger Clinic, Geisinger Health Plan, Geisinger Medical Center, and Geisinger Holy Spirit Hospital and dismisses those Defendants without prejudice.

## V.    Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss. An appropriate Order follows.